| | |
|---|---|
| JEFF WITHROW AND KEVIN NESTOR, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US LLC, F/K/A CHRYSLER GROUP, A DELAWARE CORPORATION; FIAT CHRYSLER AUTOMOBILES, N.V.; FCA NORTH AMERICA HOLDINGS, LLC,<br><br>Defendants. | Cause No. _____<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

I. INTRODUCTION.................................................................................................................1

I. PARTIES.........................................................................................................................4

    A. The Plaintiffs .........................................................................................................4

    B. The Defendants .......................................................................................................9

III. VENUE AND JURISDICTION........................................................................................11

IV. FACTUAL ALLEGATIONS...........................................................................................12

    A. The Class Vehicles Contain CP4-Equipped EcoDiesel® Engines...............................12

    B. FCA Profits from the Rise of Diesel Vehicles in the United States ............................12

    C. FCA Knew of the Incompatibility, Defectiveness, and Failures
       Associated with Bosch's CP4 Pump When Used with American Diesel
       Fuel Before Deciding to Use It in the Class Vehicles ..................................................14

    D. Pre-Class Period Failures are Quickly Followed by Failures in the
       Earlies FCA Manugactured CP4 Class Vehicles .......................................................21

    E. Model Year 2014: FCA Equips its EcoDiesel® Engines with
       Incompatible Bosch CP4 Pump .................................................................................27

    F. The CP4 Defect Poses an Inherent Risk to Vehicle Occupant Safety
       and Renders the Class Vehicles *Per Se* Defective .......................................................30

    G. Supposed "Remedies" are Insufficient and Costly.....................................................45

    H. In Falsely Trumpeting the Quality, Performance, and Dependability of
       its EcoDiesel® Engine Vehicles to Consumers, FCA Concealed—
       Both Affirmatively and Via Omission—the Defective Nature of the
       CP4 Fuel Pump .......................................................................................................49

    I. FCA Designed, Manufactured, Distributed and Sold Vehicles It Knew
       Would Experience Catastrophic Failures Which FCA Would Not
       Honor Under Its Warranties.......................................................................................54

    J. Allegations Establishing Agency Relationship Between Manufacturer
       FCA and FCA Dealerships ........................................................................................55

V. TOLLING OF THE STATUTE OF LIMITATIONS ............................................................. 58

V. CLASS ACTION ALLEGATIONS ..................................................................................... 61

VII. CAUSES OF ACTION ....................................................................................................... 65

    A. Multi-State Claims............................................................................................................ 65

    B. Claims Brought on Behalf of the Alabama Class Members ........................................ 69

    C. Claims brought on Behalf of the Alaska Class Members ............................................ 78

    D. Claims Brought on Behalf of the Arizona Class Members ......................................... 86

    E. Claims Brought on Behalf of the Arkansas Class Members........................................ 96

    F. Claims Brought on Behalf of the California Class Members..................................... 107

    G. Claims Brought on Behalf of the Colorado Class Members ..................................... 122

    H. Claims Brought on Behalf of the Connecticut Class Members................................. 135

    I. Claims Brought on Behalf of the District of Columbia (D.C.) Class
       Members ......................................................................................................................... 146

    J. Claims Brought on Behalf of the Delaware Class Members ...................................... 157

    K. Claims Brought on Behalf of the Florida Class Members......................................... 168

    L. Claims Brought on Behalf of the Georgia Class Members........................................ 181

    M. Claims Brought on Behalf of the Hawaii Class Members ........................................ 192

    N. Claims brought on behalf of the Idaho Class Members ............................................ 203

    O. Claims Brought on Behalf of the Illinois Class Members......................................... 214

    P. Claims Brought on Behalf of the Indiana Class Members......................................... 227

    Q. Claims Brought on Behalf of the Iowa Class Members ............................................ 236

    R. Claims Brought on Behalf of the Kansas Class Members......................................... 246

    S. Claims Brought on Behalf of the Kentucky Class Members ..................................... 257

T. Claims Brought on Behalf of the Louisaina Class Members ................................ 267

U. Claims Brought on Behalf of the Maine Class Members ..................................... 278

V. Claims Brought on Behalf of the Maryland Class Members ................................ 286

W. Claims Brought on Behalf of the Massachusetts Class Members......................... 297

X. Claims Brought on Behalf of the Michigan Class Members ................................ 305

Y. Claims Brought on Behalf of the Minnesota Class Members............................... 317

Z. Claims Brought on Behalf of the Mississippi Class Members.............................. 329

AA. Claims Brought on Behalf of the Missouri Class Members .............................. 336

BB. Claims Brought on Behalf of the Montana Class Members ............................... 349

CC. Claims brought on Behalf of the Nebraska Class Members............................... 360

DD. Claims Brought on Behalf of the Nevada Class Members ................................ 371

EE. Claims Brought on Behalf of the New Hampshire Class Members ................... 382

FF. Claims Brought on Behalf of the New Jersey Class Members ........................... 394

GG. Claims Brought on Behalf of the New Mexico Class Members ........................ 405

HH. Claims Brought on Behalf of the New York Class Members ............................ 416

II. Claims Brought on Behalf of the North Carolina Class Members........................ 432

JJ. Claims Brought on Behalf of the North Dakota Class Members ........................ 443

KK. Claims Brought on Behalf of the Ohio Class Members..................................... 454

LL. Claims Brought on Behalf of the Oklahoma Class Members ............................ 465

MM. Claims Brought on Behalf of the Oregon Class Members ............................... 476

NN. Claims brought on behalf of the Pennsylvania Class Members......................... 487

OO. Claims Brought on Behalf of the Rhode Island Class Members ....................... 500

PP. Claims Brought on Behalf of the South Carolina Class Members...................... 513

QQ. Claims Brought on Behalf of the South Dakota Class Members........................525

RR. Claims Brought on Behalf of the Tennessee Class Members ............................535

SS. Claims Brought on Behalf of the Utah Class Members ......................................546

TT. Claims Brought on Behalf of the Vermont Class Members ...............................557

UU. Claims Brought on Behalf of the Virginia Class Members ...............................569

VV. Claims Brought on Behalf of the Washington Class Members .........................580

WW. Claims Brought Behalf of the West Virginia Class Members ........................585

XX. Claims Brought on Behalf of the Wisconsin Class Members...........................592

YY. Claims Brought on Behalf of the Wyoming Class Members............................601

PRAYER FOR RELIEF ..........................................................................................612

JEFF WITHROW AND KEVIN NESTOR, each individually and on behalf of all others similarly situated ("the Class"), file this suit against Defendants FCA US LLC, F/K/A Chrysler Group; Fiat Chrysler Automobiles, N.V.; and FCA North America Holdings, LLC. This lawsuit is based upon the investigation of counsel, the review of scientific and automotive industry papers, and the investigation of experts with relevant education and experience. In support thereof, Plaintiffs state as follows:

## I. INTRODUCTION

1.      Since at least 2013 (and up through 2018), Defendants FCA US LLC, F/K/A Chrysler Group; FCA North America Holdings, LLC; and Fiat Chrysler Automobiles, N.V. (collectively, "FCA"), designed, manufactured, distributed, and sold hundreds of thousands of Jeep Grand Cherokee and Dodge Ram 1500 vehicles with 3.0L EcoDiesel® engines, all of which contain grossly defective high-pressure fuel injection pump systems. The damning truth about these integral systems, however, remained wholly unknown to American consumers, who unsuspectingly trusted that they would receive what they bargained for.

2.      FCA promotes its EcoDiesel® technology as the best of both worlds: a "green" alternative to gasoline with reduced emissions coupled with diesel's benefits of greater torque, power, and fuel efficiency. FCA then extracts a premium for these EcoDiesel® vehicles, selling them for thousands of dollars more than the cost of otherwise-comparable gasoline vehicles. The undermining culprit component part in these EcoDiesel® vehicles, however, is the Bosch-supplied CP4 high-pressure fuel injection pump, which, unbeknownst to consumers, is a ticking time bomb when used in American vehicles. As FCA was aware, Bosch's CP4 pump design has *never* been compatible with American diesel fuel standards. The CP4 pump is not built to withstand the specifications for U.S. diesel fuel in terms of lubrication or water

content, and it struggles to lift a volume of fuel sufficient to lubricate itself. As a result, the pump is forced to run dry and destroy itself as air bubbles allow metal to rub against metal. The pump deposits metal shavings and debris throughout the fuel injection system and the engine until it suddenly and cataclysmically fails without warning, further contaminating the fuel delivery system with larger pieces of metal. The "catastrophic" (i.e., complete and total) pump failure can occur as early as mile one, as the fuel injection disintegration process begins at the very first fill of the tank and start of the engine, with pump components beginning to deteriorate and dispersing metal shavings throughout the internal engine components and fuel supply system. Further, such catastrophic failure often causes the vehicle to shut-off while in motion and renders it unable to be restarted, because the vehicle's fuel injection system and engine component parts have been completely contaminated with metal shards. The sudden and unexpected shutoff of the vehicle's engine while it is in motion (and subsequent inability to restart the vehicle) present an inherent and substantial risk to consumer safety—one which FCA itself has recognized in the past—and one which Plaintiffs were not aware of prior to purchasing the Class Vehicles.

3. What's more, this total fuel injection system failure and consequential engine shutdown results in an outrageously expensive repair, a repair which is seemingly in vain because the repairs will not truly ameliorate the issue so long as the vehicle is being filled with U.S. diesel fuel.

4. FCA's frequent company line is to blame catastrophic failures on "fuel contamination," something which is not covered under warranty because it is "not caused by" FCA. Consumers are left with repair bills that on average range from $8,000 to $20,000 per vehicle, and may even exceed this amount. Some victims of FCA's grand scam are American

businesses who own several vehicles and have suffered multiple failures. Others have spent several hundred or several thousand dollars attempting to remediate and/or mitigate the effects of the condition. Moreover, the Class Vehicles come with a hefty price tag, as these CP4-equipped vehicles can range in price from approximately $42,000 to $67,000 if purchased new and approximately $16,000 to $42,000 if purchased used. Diesel fans pay so much more for their vehicles because diesel engines are traditionally expected to last for a range of 500,000–800,000 miles, given their frequent application to work-related road time.

5.      FCA saw Bosch's CP4 fuel injection pump as another way to make money—to take advantage of consumers' desire to drive diesel vehicles that were ostensibly reliable, durable, fuel-efficient, and powerful. Beyond the reputational "business goodwill" of the automobile manufacturing brands comprising FCA, the concept of "diesel" itself more broadly conveys reliability, durability, and power.

6.      Well before FCA ever chose to implement the CP4 component part (as incorporated in the diesel engines of the subject Class Vehicles), the issue of U.S. diesel fuel consistency and lubrication was well-known, but nonetheless was totally disregarded in the respective design, manufacture, marketing, and sales or leases of their Class Vehicles. This is further evidenced by the fact that FCA, as well as its fellow domestically-hubbed automotive manufacturers (e.g., Ford and GM), had industry-wide experience with catastrophic fuel injection pump failures when cleaner diesel standards were first implemented in the 1990s. By 2002, the Truck & Engine Manufacturers Association ("EMA")—of which FCA is a member company[1]—acknowledged that the lower lubricity of American diesel could cause catastrophic failure in high-pressure fuel injection system components that are made to European diesel

specifications. Not only did FCA fail to inform American consumers and fail to stop touting the fabricated benefits of the vehicles containing CP4 pumps, they actively attempted to shift the blame to the American consumers. For instance, FCA has claimed it is *consumers'* improper use of contaminated or substandard fuels that damages the vehicles' fuel system, even when FCA knew that the malfunction was *actually* the result of the CP4 fuel injection pump design, which was simply not fit for American diesel fuel.[2]

7.     Just as Class Vehicle engines equipped with the Bosch-supplied CP4 fuel injection pumps are not compatible with American fuel, so, too, FCA's conduct is not compatible with American law. FCA and its affiliates knowingly and intentionally deceived American consumers through its individual representations to respective consumers in a successful-but-unfair effort to increase revenues and profits at the expense of consumers.

8.     Plaintiffs—indeed, *no* reasonable consumer—would have bought these vehicles if FCA's dealings had been materially truthful. These consumers are entitled to be reimbursed for the many millions of dollars FCA fraudulently obtained from them, and to be compensated for their actual losses.

## II. PARTIES

### A.  The Plaintiffs.

9.     For ease of reference, the following chart identifies the Representative Plaintiffs and their vehicles:

| Representative Plaintiff | Make | Model | Model Year |
|---|---|---|---|
| Jeff Withrow | Dodge | Ram | 2016 |

---

[1]  *See* Truck & Engine Manufacturers Association (EMA) membership webpage, http://www.truckandenginemanufacturers.org/companies/ (last accessed Nov. 20, 2018).
[2]  *See, e.g.*, *infra* ¶¶ 88-89, 91 (discussing instances of FCA blaming consumers for "misfueling" or "fuel contamination").

| Representative Plaintiff | Make | Model | Model Year |
|---|---|---|---|
| Kevin Nestor | Jeep | Grand Cherokee | 2014 |

**Plaintiff Jeff Withrow**

10.     Plaintiff Jeff Withrow (for the purpose of this paragraph and the following paragraph, "Plaintiff") is a citizen of the State of Connecticut, and domiciled in Trumbull, Connecticut. On or about November 22, 2017, Plaintiff purchased a used 2016 Ram EcoDiesel®, VIN 1C6RR7NM9GS126140 (for the purpose of this paragraph, the "Class Vehicle") for approximately $41,000 from Autoland in Springfield, New Jersey. At the time of purchase, the Class Vehicle had approximately 19,000 miles on it and was still under factory warranty. In November 2018 Plaintiff experienced a catastrophic failure of his 2016 Ram's CP4 fuel pump system. Plaintiff was on a four hour drive on the highway going approximately 70 miles per hour, there was no check engine light or warning, and the Class Vehicle just quit in the middle of the road.  Plaintiff was able to coast to the side of the highway to a stop. Plaintiff had his vehicle towed to a FCA US dealership located in Danbury, Connecticut, for diagnosis and repair. The dealer service center stated that the fuel pump was not functioning and there was metal debris found in the fuel pump. The repairs were done at Wetmore's Chrysler Jeep Dodge Ram dealership in New Milford, Connecticut. Said dealership was authorized to make repairs under the FCA manufacturer's warranty. At the time of the catastrophic failure, Plaintiff's Class Vehicle was still under an FCA-backed 5-year/100,000-mile manufacturer's warranty. Plaintiff's 2016 Ram only had 31,500 miles on it at the time of catastrophic failure, and still now only has approximately 48,000 miles. Plaintiff incurred

approximately $12,000 worth of repair costs as a result of this failure due to the defective CP4 fuel pump.

11.     Prior to purchasing the Class Vehicle, Plaintiff had been looking for an automobile that was durable, powerful, reliable, and could obtain the high mileage per gallon of a diesel vehicle. In contemplating his needs, i.e., the need to purchase a vehicle fit for daily use, and occasionally, for pulling a small trailer and/or speedboat, Plaintiff observed FCA's television commercials, radio advertisements, and printed brochures and advertisements wherein FCA claimed the Dodge Ram EcoDiesel®—the Class Vehicle Plaintiff would subsequently purchase—had greater fuel economy, superior horsepower, more environmentally friendly emissions, and enhanced durability compared to other comparable vehicles on the American market. FCA's advertisements show cars driving in *America* which implies that the Class Vehicles are compatible with American diesel fuel, when clearly they are not. On the date that Plaintiff purchased the Class Vehicle, and in connection with his purchasing the Class Vehicle, Plaintiff reasonably relied—to his detriment—on the representations by FCA that the Class Vehicle was compatible with American diesel fuel, durable, and reliable. Plaintiff, absent these representations, would not have purchased the vehicle and/or would have paid less for it. There is a substantial difference in the market value of the vehicle promised by Defendant and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

### Plaintiff Kevin Nestor

12.     Plaintiff Kevin Nestor (for the purpose of this paragraph and the immediately following paragraph, "Plaintiff") is a citizen of the State of California, and domiciled in Valencia, California. On or about April 29, 2014, Plaintiff purchased a new 2014 Jeep Grand

Cherokee EcoDiesel®, VIN 1C4RJFBM9EC304232 (for the purpose of this paragraph, the "Class Vehicle") for approximately $44,964 from Shaver Chrysler Dodge Jeep Ram, an authorized FCA dealership in Thousand Oaks, California. Plaintiff purchased the vehicle for use in driving to-and-from work and for his regular daily activities, and the vehicle currently has approximately 72,000 miles on it. Plaintiff was in Santa Clarissa, California when the Class Vehicle experienced a catastrophic failure of his 2014 Jeep Grand Cherokee's CP4 fuel pump system on or around April 22, 2019. His Class Vehicle shut off without warning and would not restart. The 2014 Jeep Grand Cherokee was taken to an FCA-authorized dealership in Valencia, California for repair. Said dealership was authorized to make repairs under the FCA manufacturer's warranty. The dealership service center advised Plaintiff that metal shavings from the fuel pump failure had introduced metal shavings throughout the entire fuel system, and that the repair would be nearly $7,000. At the time of the catastrophic failure, Plaintiff's Class Vehicle was still under an FCA-backed 5-year/100,000 mile manufacturer's warranty. Plaintiff's 2014 Jeep Grand Cherokee only had 68,000 miles on it at the time of the catastrophic failure. FCA denied coverage under the warranty based on alleged fuel contamination. Plaintiff ultimately incurred approximately $7,600 worth of repair costs as a result of this catastrophic failure due to the defective CP4 fuel pump.

13.     Prior to purchasing the Class Vehicle, Plaintiff had been looking for a truck that was durable, powerful, reliable, and could obtain the high mileage per gallon of a diesel vehicle. In contemplating his needs, i.e., the need to purchase a vehicle fit for daily use, Plaintiff observed FCA's television commercials, radio advertisements, and printed brochures and advertisements wherein FCA claimed the diesel-fueled Jeep Grand Cherokee—the Class Vehicle Plaintiff would subsequently purchase—had greater fuel economy, superior

horsepower, more environmentally friendly emissions, and enhanced durability compared to other comparable vehicles on the American market. On the date that Plaintiff purchased the Class Vehicle, and in connection with his purchasing the Class Vehicle, Plaintiff reasonably relied—to his detriment—on the additional representations by FCA dealership representatives that the Class Vehicle was, as had been advertised, compatible with American diesel fuel, durable, and reliable. Absent these misrepresentations and omissions by FCA, Plaintiff would not have purchased the vehicle and/or would have paid less for it. There is a substantial difference in the market value of the vehicle promised by Defendant and the market value of the vehicle received by Plaintiff. Plaintiff did not receive the benefit of the bargain, but received less than what was bargained for.

## **Plaintiffs' Individual and Class-Wide Bases for Suit**

14.    Although Plaintiffs were considering other vehicles, Plaintiffs decided on their subject Class Vehicles because they reasonably relied upon FCA's claims touting the Class Vehicles' durability, longevity, efficiency, fuel economy, power and performance, by way of media marketing campaigns and other forms of advertisement described further herein. FCA's advertisements show their vehicles driving in America which implies that their cars are compatible with American diesel fuel. These misrepresentations and omissions, in combination with the representation and understanding that the vehicle would retain all of its promised fuel economy and performance throughout its useful life, and (obviously) the representation and understanding that the vehicle was fit for its intended use with American diesel fuel, induced Plaintiffs to purchase the Class Vehicles.

15.    Unbeknownst to named Plaintiffs and other Class members, at their respective times of Class Vehicle acquisition, the FCA-made Class Vehicles contained the defective

Bosch-supplied CP4 high-pressure fuel injection pump that was inherently defective and incompatible with U.S. diesel fuel—the material truth of which was never disclosed to American consumers. Consequently, the vehicle was not fit for ordinary use and could not deliver the advertised combination of durability, power, reliability, and fuel efficiency of diesel that Plaintiffs reasonably relied upon. Plaintiffs and each Class member suffered concrete injury as a direct and proximate result of FCA's conduct, and would not have purchased the Class Vehicle and/or would have paid less for it, had FCA not concealed the defective nature of the Class Vehicles. As deemed appropriate, named Plaintiffs' and each other Class member's ascertainable losses include, but are not limited to, paying a high premium for the Class Vehicles compared to what they would have paid for non-defective vehicles, out-of-pocket losses suffered by overpaying for the vehicles at the time of purchase (or lease), decreased performance of the vehicles, and diminished value of the vehicles. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain. Plaintiffs thusly bring claims individually and as representatives of the Class.

16. Each named Plaintiff and/or Class member expected that FCA, via its authorized dealers or through its advertising campaigns, would disclose material facts about the durability, fuel economy, and longevity of its vehicles and the existence of any defect that will result in expensive and non-ordinary repairs.

**B. The Defendants.**

17. Defendant FCA US LLC, formerly known as Chrysler Group and renamed FCA US LLC, is a company organized and existing under the laws of Delaware, having a principal place of business in this district at 1000 Chrysler Dr., Auburn Hills, MI 48326. Defendant FCA US LLC regularly conducts and transacts business in this jurisdiction and throughout all fifty

U.S. states, either itself or through one or more subsidiaries, affiliates, business divisions, or business units.

18.     Defendant Fiat Chrysler Automobiles N.V., the corporate parent of FCA, is a Dutch corporation headquartered in London, United Kingdom. Defendant Fiat Chrysler Automobiles N.V.'s predecessor, Fiat S.p.A., began its acquisition of FCA's predecessor, Chrysler Group LLC, in 2009 and completed it in 2014, at which time Chrysler Group LLC became a wholly-owned subsidiary of Fiat and was renamed FCA US LLC. FCA's principal place of business and headquarters is located at 1000 Chrysler Drive, Auburn Hills, Michigan 48326.

19.     Defendant FCA North America Holdings LLC is a company organized and existing under the laws of Delaware, having a principal place of business at 1000 Chrysler Drive, Auburn Hills, Michigan 48326. Defendant FCA North America Holdings LLC was formerly known as Fiat North America LLC and changed its name to FCA North America Holdings LLC in December 2014, and now operates as a subsidiary of Fiat Chrysler Automobiles N.V. Defendant FCA North America Holdings LLC, both itself and through its corporate subsidiaries, manufactures and sells automobiles and light commercial vehicles in this jurisdiction and throughout all fifty U.S. states.

20.     Defendant FCA US LLC, Defendant Fiat Chrysler Automobiles, N.V., and Defendant FCA North America Holdings, LLC are collectively referred to as "FCA" throughout this Class Action Complaint.

21.     FCA, through its various entities, designs, manufactures, markets, distributes, sells, and leases FCA automobiles in this District and multiple other locations in the United States and worldwide under the Jeep, Dodge, Chrysler, and Fiat brand names. FCA, and/or its

agents and subsidiaries, designed, manufactured, distributed, offered for sale, sold, and installed the engine systems in the Class Vehicles. FCA also developed and disseminated the materially misrepresentative owners' manuals, warranty booklets, product brochures, advertisements, and other intentionally unreasonable and deceptive promotional materials relating to the Class Vehicles, with the intent that such documents should be purposely distributed throughout all fifty states. FCA is engaged in interstate commerce, selling vehicles through its network in every state of the United States.

22.     FCA-authorized automobile dealerships act as FCA's agents in selling automobiles under the FCA name and disseminating vehicle information provided by FCA to customers. At all relevant times, FCA's dealerships were its agents for motor vehicle repairs and warranty issues because they performed repairs, replacements, and adjustments covered by Defendants' manufacturer's warranty pursuant to the contracts between FCA and its dozens of authorized dealerships in this District and nationwide.

### III. VENUE AND JURISDICTION

23.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 & 1332. There is also complete diversity of citizenship in this case because the FCA Defendants are citizens of a different state than any of the Plaintiffs, and the amount in controversy exceeds the sum of $75,000. 28 U.S.C. § 1332. This Court also has supplemental jurisdiction over the state law claims because those claims are integrally related to the federal claims and form part of the same case and controversy under 28 U.S.C. § 1367.

24.     More specifically, the Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from the Defendant, there are more than 100 Class members, and the

aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs. Subject-matter jurisdiction also arises under the Magnuson-Moss Warranty Act claims asserted under 15 U.S.C. § 2301, *et seq*.

25.     This Court has personal jurisdiction over the FCA Defendants by virtue of its transacting and doing business in this district and because FCA is registered to do business in Michigan. FCA has transacted and done business in the State of Michigan and in this district and has engaged in statutory violations and common law tortious conduct in Michigan and in this district.

26.     Venue is proper pursuant to 28 U.S.C. § 1391(a) & (b) because a substantial part of the events or omissions giving rise to the claims occurred in this district. Venue is proper pursuant to 18 U.S.C. § 1965(a) & (b) because the FCA Defendants transact affairs in this district, and the ends of justice require it. Venue is also proper in this district under 28 U.S.C. § 1391(b)(1) because the FCA Defendants reside in this judicial district for venue purposes.

## IV. FACTUAL ALLEGATIONS

### A. The Class Vehicles Contain CP4-Equipped EcoDiesel® Engines.

27.     For purposes of this Complaint, the "Class Vehicles" consist of FCA-manufactured diesel-fueled automobiles equipped with a 3.0L EcoDiesel® engine, ranging from the 2014–present model years of Dodge Ram 1500 pick-up trucks and Jeep Grand Cherokee SUVs. All vehicles falling under this Class Vehicle group were manufactured with the defective CP4 fuel injection pump.

### B. FCA Profits from the Rise of Diesel Vehicles in the United States.

28.     Diesel engines have long enjoyed a loyal following in some U.S. market segments because of their reliability, fuel efficiency, and power. Diesel engines produce higher

torque, even at low revolutions per minute ("RPM"), making them popular in buses, heavy-duty pick-ups, and vans, including commercial vehicles, farm trucks, and ambulances.

29.     With the invention of common-rail systems, diesel fuel was injected at higher pressure, forming a finer mist that increases fuel efficiency and power. Common-rail systems also made diesel engines burn cleaner and with less noise. While diesel had long been popular overseas, these advances fueled a growing market here in the U.S. for diesel trucks, and even diesel passenger cars.

30.     From the outset, FCA was in competition with fellow "Big Three" auto manufacturers, Ford and GM, each racing to dominate the growing American diesel vehicle market. FCA looked to international automotive parts supplier Bosch to increase the fuel efficiency and power of its diesel engines. The heart of this diesel revolution would be powered by Bosch's reputationally durable CP3 fuel injection pump, the predecessor to the CP4 fuel injection pump at issue in this suit. The CP3 pump was one of Bosch's high-pressure fuel injection pumps. The reliability of the CP3 became key to the "million-mile" performance reputation of diesel truck engines in the U.S. Not surprisingly, American trust in diesel technology grew.

31.     Americans paid a premium for the increased reliability, fuel efficiency, and power of diesel—and, Bosch promised to continue to deliver advances and continued improvements. The CP4 would purportedly maintain reliability while also increasing fuel efficiency and power. The over-simplified design of the CP4 rendered it cheaper to manufacture, but also increased its need for high lubricity fuel, and increased the likelihood that the ultimate failure would be catastrophic.

32.     However, much like what occurred in the nationwide Volkswagen emissions scandal involving Bosch, reliance on Bosch's expertise in the design of the CP4 high pressure fuel pump would lead FCA into a course of action it should now regret. The heart of FCA's success under increasingly competitive fuel efficiencies was Bosch's cheaper, substandard CP4 fuel injection pump. Bosch had the technical know-how to do what needed to be done to get ahead; unfortunately for the American public, the easiest way for FCA to succeed was to cheat American consumers on durability and overall vehicle functionality by equipping the Class Vehicles with this ticking time bomb of a fuel injection pump that dooms the EcoDiesel® diesel engine system from day one.

**C.  FCA Knew of the Incompatibility, Defectiveness, and Failures Associated with Bosch's CP4 Pump When Used with American Diesel Fuel Before Deciding to Use It in the Class Vehicles.**

33.     The Bosch CP4 pump operates at higher pressures than its predecessor, the CP3, and has inherently higher Hertz contact stresses than the CP3, which exacerbates the wearing of the roller pin, follower and camshaft within the pump itself. In theory, the CP4 achieves greater fuel efficiency by pumping less fuel through the engine. The Bosch CP4 Pump had marginal success in Europe, but it is simply not compatible with American diesel fuel.

34.     The CP4 relies on diesel fuel itself to maintain lubrication. The lubricity of diesel in Europe is more standardized than American diesel, but European diesel is also dirtier. Because the sulfur in diesel exhaust is a major cause of smog and acid rain, in 2007, the EPA required diesel fuel sold in the U.S. to have less than 15 ppm of sulfur. This is known as Ultra Low Sulfur Diesel ("ULSD"). It is produced through a refinery process known as hydrodesulfurization ("HDS"). Sulfur provides some of the lubricity needed for the pump to operate. But more importantly, the refinery process required to produce low sulfur diesel destroys a variety of important nitrogen and oxygen based polar and organic compounds that

give diesel fuel its lubricity. Indeed, ULSD fuel is considered to be very 'dry' and incapable of lubricating vital diesel fuel delivery components, specifically high-pressure fuel pumps and injectors; as a result, American diesel does not contain the lubrication necessary for the Bosch CP4 Pump to operate durably, and these fuel injection system components "are at risk of premature and even catastrophic failure when ULSD fuel is introduced to the system."[3]

35.    Low sulfur diesel fuel first appeared in American markets in the 1990s, with fewer than 500 ppm of sulfur. It is estimated that 65 million fuel injection pumps failed as a result. It was thought that the pumps failed at the equivalent of 100–200 hours of operation. Thus, the critical importance of lubricity for diesel injection pumps was well known to all auto manufacturers for a decade or more before the Class Vehicles were designed or introduced into the market.

36.    Engine manufacturers were well aware of the mismatch between engine part specifications that require a maximum of 460 wear scar, and the lower lubricity specifications of Ultra Low Sulphur American diesel fuel:

> Lubricity describes the ability of a fluid to minimize friction between, and damage to, surfaces relative to motion under loaded conditions. Diesel fuel injection equipment relies on the lubricating properties of fuel. Shortened life of engine components such as fuel injection pumps and unit injectors can usually be attributed to lack of fuel lubricity and, hence, lubricity is of concern to engine manufacturers. This property is not addressed adequately by ASTM D 975.

---

[3] Arlen Spicer, *Diesel Fuel Lubricity Additives: Study Results*, THE DIESEL PLACE, Aug. 26, 2007, available at http://www.jatonkam35s.com/DeuceTechnicalManuals/Diesel_fuel_additive_test.pdf (last accessed Oct. 31, 2019).

4/22/2002 Truck & Engine Manufacturers' Association ("EMA"), Position Statement titled, "EMA Consensus Position Pump Grade Specification." FCA is a member of the EMA.[4]

37.     Further, the EMA made clear:

> Regardless of the fuel sulfur level, ASTM D975 currently requires lubricity specified as a maximum wear scar diameter of 520 micrometers using the HFRR test method (ASTM D6079) at a temperature of 60°C. Based on testing conducted on ULSD fuels, however, fuel injection equipment manufacturers have required that ULSD fuels have a maximum wear scar diameter of 460 micrometers. EMA recommends that the lubricity specification be consistent with the fuel injection equipment manufacturers' recommendation.

8/8/2005 Engine Manufacturers Association, Position Paper titled "North American Ultra Low Sulfur Diesel Fuel Properties."

38.     In 2005, the EPA instituted a lubricity requirement for the lower sulfur diesel sold in the U.S. It required sellers of diesel to ensure the fuel meets a minimum lubricity level of a maximum wear scar diameter of 520 microns based on the testing and standard propounded by the American Society for Testing and Materials ("ASTM") D-975.[5]

39.     By 2007, on-road diesel fuel in the U.S. for highway vehicles was uniformly ULSD, which has an allowable sulfur content much lower (15 ppm) than the previous U.S. on-highway standard for low sulfur diesel (500 ppm)."[6]

---

[4]   *See* Truck & Engine Manufacturers Association (EMA) membership webpage, http://www.truckandenginemanufacturers.org/companies/ (last accessed Oct. 31, 2019).
[5]   *See also* https://www.epa.gov/diesel-fuel-standards/diesel-fuel-standards-and-rulemakings.
[6]   *See New Ultra Low Sulfur Diesel fuel and new engines and vehicles with advanced emissions control systems offer significant air quality improvement*, Clean Diesel Fuel Alliance, Feb. 25, 2017, available at https://web.archive.org/web/20170225141751/http://www.ct.gov/deep/lib/deep/air/ultra_low_sulfur_diesel/ulsdfs.pdf (last accessed Oct. 31, 2019); *see also* J. Thijssen, LLC, *The Impact of Future Diesel Fuel Specifications and Engine Emissions Standards on SOFC*, U.S. DEPT. OF ENERGY, NAT'L ENERGY TECHNOLOGY LABORATORY, Jun. 29, 2004, at I, available at

40.     Moreover, in reality, U.S. diesel frequently contains even less than 15 ppm, a truth that is widely known within the U.S. automotive industry. For example, according to a 2014 Infineum Worldwide Winter Diesel Fuel Quality Survey in which 341 diesel fuel samples were tested from around the world, **all** diesel fuel samples that the organization collected and tested from the U.S. and Canada contained 10 ppm S or less.[7]

41.     A reasonable, prudent manufacturer has a commercially-imposed duty to design or select a fuel injection pump designed for the fuel of the country in which the vehicle is to be sold. Yet, FCA had Bosch supply its inherently incompatible CP4 fuel injection pump for use in its EcoDiesel®-equipped Jeep Grand Cherokees and Dodge Ram 1500s, beginning in the 2014 model year. It was no secret to them that the Bosch CP4 Pump is inappropriate for diesel vehicles in the U.S. The Bosch CP4 Pump specifications for fuel lubricity allow for a maximum of 460 wear scar. By definition, the 520 wear scar specification of American diesel fuel is inadequate to lubricate the Bosch CP4 Pump.

42.     In order to reduce cost and increase fuel efficiency, FCA sold vehicles with a fuel injection pump that was clearly out of specification, having inadequate lubrication for the U.S. market.

43.     The adverse effects of ULSD on high-pressure fuel pump injection systems have been acknowledged within the automotive industry. For example, in a September 2009 Common Position Statement published by the Joint Diesel Fuel Injection Equipment Manufacturers (or "Joint FIE Manufacturers") regarding Fuel Requirements for Diesel Fuel

---

https://www.netl.doe.gov/File%20Library/research/coal/energy%20systems/fuel%20cells/DOE-Diesel-Final-040629.pdf (last accessed Oct. 31, 2019).

[7] *Infineum Worldwide Winter Diesel Fuel Quality Survey 2014*, Infineum Int'l Ltd., available at https://www.infineum.com/media/80722/wdfs-2014-full-screen.pdf (last accessed Oct. 31, 2019), at 6-7.

Injection Systems, the Joint FIE Manufacturers expressed the following comments to their colleagues in the automotive industry:

> "The continuous world-wide tendency to increase engine performance and reduce emissions has necessitated the development of new generations of enhanced diesel fuel injection equipment, supporting the achievement of stringent legislation targets. Rising injection pressures and multiple injections result in higher operating temperatures, increased contract pressures and reduced clearances . . . . Alterations to fuel quality, e.g., by increasingly severe refinery hydroprocessing being introduced to remove Sulphur also reduce the content of aromatics and destroy surface active compounds and antioxidants. ***Removal of these beneficial compounds effects boundary lubrication, commonly known as lubricity, and inherent oxidation stability and must be compensated for.*** Fuel parameters such as cetane number, viscosity, density, lubricity, oxidation stability, sulfur and aroma content, together with the absence of free water and dirt contamination, are key parameters required to ensure performance of equipment in the field.

> "Biofuels are becoming increasingly available to end-users [including] in the United States of America . . . . It must be recognized that the physical and chemical characteristics of bio components are significantly different to conventional fuels and that care must be taken in their specification and use.
> "Diesel fuel injection equipment (FIE) manufacturers fully support the development of alternative sources of fuel . . . . ***However, many vehicles, engines and equipment are not designed to run on them. It is recommended to refer to the vehicle and engine manufacturers 'Limitations of Use' documents for guidance.***"[8]

44.     Likewise, in a July 2014 study on the use of fuel injection equipment with global diesel fuels, Parker Racor, the leading global supplier of diesel fuel filtration systems, explained the following:

---

[8] Joint FIE Manufacturers, *Fuel Requirements for Diesel Fuel Injection Systems: Diesel Fuel Injection Equipment Manufacturers: Common Position Statement 2009*, Sept. 2009, available at http://www.globaldenso.com/en/topics/files/common_position_paper.pdf (last accessed Oct. 31, 2019) (emphasis added).

"The increase in system pressures in diesel engines has a significant effect on filtration requirements. These systems are highly vulnerable to many forms of contaminants and the need for robust high efficiency filtration has never been higher. . . . An analysis of global diesel fuel quality shows that although the fuel quality in the developed markets has improved, significant quality concerns still remain. Levels of water and contaminants remain at levels that can cause long term issues to the latest fuel injection systems. Specifically, the levels of contaminants smaller than 5 microns remain very high. These particles can be small enough to pass into the internal clearances of high pressure fuel injection systems and can lead to erosion and wear of critical areas leading to a loss in system performance and eventually system malfunction. Diesel filtration balances pressure drop, useful life and efficiency. ***However the real long term effect on fuel system life is often not adequately considered[,] as much of the engine durability testing performed is done using high quality fuel that doesn't represent the range of fuels seen in the market***. Consideration of filtration performance under less than ideal conditions is necessary to develop an acceptable level of protection."

Steven Hardison & Adam Pearce, *July 2014 Summary of Fuel Injection Equipment with Respect to Diesel Fuel Filtration*, Parker Racor & AVL, Jan. 7, 2015, available at https://www.parker.com/literature/Racor/RSL0194%20Rev%20-%20(TAP_AVL-Fuel-Study-Racor).pdf (last accessed Oct. 31, 2019), at i; *see also id.* at 13 ("Careful monitoring of fuel quality and filter performance is needed to protect sensitive diesel engine injection systems"); *id.* at 29 ("To avoid costly engine and fuel system components damages, advanced multi-stage filtration is recommended"); *id.* at 31 ("Modern high pressure diesel fuel injection systems contain very small internal clearances and are vulnerable to any build-up of deposits on these components. . . . This issue has become a significant concern in the industry").

45. Indeed, the automotive industry knew of the consequences of this early-on. For example, in May 2010, after analyzing foreign particles found in the fuel filter of a failed Audi diesel engine and determining that the biodiesel used in the subject engine was "insufficient[ly]

cleans[ed]" resulting in deposit formation "which is not conducive to establishing the lubricating film in the [fuel pump] roller support," Bosch noted that, "When [diesel fuel] viscosity is too low, the lubricating film is not established properly and mixed friction and surface contact occurs = bad."[9] The CP4 is, by its own specifications, expected to fail quickly when used in the U.S.

46.     The Bosch CP4 Pump multiplies the diesel fuel problem in ways that are catastrophic. FCA chose the Bosch CP4 Pump because it was cheaper to manufacture and was supposed to improve fuel efficiency by using less fuel. The Bosch CP4 Pump struggles to adequately lubricate itself with a lower volume of fuel and at the speed and high pressure at which it operates.

47.     The combination of the low volume of fuel, which is under constant suction, and the low lubricity of the fuel, allows cavitation of the fuel. Air pockets form inside the pump during operation. These air bubbles allow metal to rub against metal. FCA had achieved greater fuel efficiency at the expense of running the pump dry.

48.     As the Bosch CP4 Pump wears, it sends metal shavings and sometimes even larger particles throughout the fuel system. As the shavings disperse and contaminate the engine and the high-pressure fuel system, the fuse of the proverbial CP4 "time bomb" has been lit, and it is only a matter of time before the entire engine system fails. The failure of a CP4 pump requires repair or replacement of the entire high-pressure fuel system, including the pump, fuel injectors, fuel rails, and injection lines. Repair costs when a CP4 pump fails often average between $8,000 and $20,000 per failure.

---

[9] Jul. 27, 2012 Bosch submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59345P.pdf," at 12-14 (May 26, 2010 email chain between Audi and Bosch representatives re: "Particle analyses, fuel filter").

49.     As Diesel Tech Magazine, an industry publication, aptly explained in its December 2017 article entitled, "Common Problems: The CP4 Time Bomb[:]"

> "It's always frustrating to finally get your hands on a brand-new truck (or at least, new to you) and find out there's something wrong with it. It's even more frustrating to learn that not only are you not alone in your suffering, but that it's a common problem to your vehicle . . . . To kick things off, we're going to look at something that's very near and dear to our hearts: the CP4 injection pump . . . . Boy, where to begin? People have taken a somewhat hyperbolic approach and refer to the CP4 as a time bomb, among other colorful terms. The thing is, they're not too far from the truth. Even if you have a 100 percent stock pickup, there's a *really* good chance that you're going to be on the receiving end of a $10,000 bill when it finally goes out on you and destroys your entire fuel system."[10]

### D. Pre-Class Period Failures are Quickly Followed by Failures in the Earliest FCA Manufactured CP4 Class Vehicles

50.     The Bosch CP4 fuel injection pump was defective and incompatible with U.S. diesel fuel from the get-go, even prior to its usage in the Class Vehicles. CP4-based failures began running rampant in American Audi and Volkswagen vehicles at least as early as 2008.[11] These failures echo the very failures that continue to occur in the Class Vehicles to this day, and from late 2011 through early 2012, documentation regarding these widespread CP4

---

[10] Trevor Mason, *Common Problems: The CP4 Time Bomb*, DIESEL TECH, Dec. 2017, available at https://www.dieseltechmag.com/2017/12/common-problems-the-cp4-time (last accessed Oct. 31, 2019) (internal punctuation omitted).

[11] *See, e.g.*, Jul. 7, 2008 email between Audi and Bosch representatives re: "Performance drop AU716 98017 with shavings in the HPP," discussing how "[s]omething is disintegrating" in the Audi 716 fuel pump and that "[w]e are a bit speechless" about "[t]he shavings, or whatever it is"), submitted as part of Bosch's May 2012 responses to NHTSA ODI Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59334P.pdf," at 6; *id.* at 27 (Jul. 31, 2008 email from Audi representative re: "Fuel quality in [**REDACTED**]," stating that, "With our [Audi's] V6TDI with the high-pressure pump CP4.2 we have significantly higher failure rates in [**REDACTED**] (higher by a factor of approx. 30 than the average of all markets) . . . . Have you any information suggesting that such a thing could be possible with this country-specific diesel fuel?"); *id.* at 28-31 (Feb.-May 2011 email chain between Audi, Volkswagen and Bosch

failures was publicly provided by Bosch, Audi, and Volkswagen to the National Highway Traffic Safety Administration ("NHTSA") in connection with NHTSA's Office of Defect Investigations ("ODI") Inquiry No. INRD-EA11003, an investigation which FCA was involved in as well.[12]

51.     This documentation demonstrates the nature of the CP4 defect that would ultimately come to exist in the Class Vehicles. For example, in August 2009, Audi sent Bosch a failed CP4 fuel pump for analysis after "[t]he high pressure fuel pump failed catastrophically shedding metal shavings throughout the entire fuel system . . . . This car will require a complete new fuel system from tank to injectors and everything in between. This will be a very lengthy repair (weeks) . . . . We need to determine if component failure or bad fuel is to blame." March 7, 2011 Bosch submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59347P.pdf," at 35. Thereafter, on September 1, 2009, Bosch responded to Audi with the following flippant analysis note from their failed pump inspection: "Gentleman, [t]he pump mentioned below was analyzed. The result of the finding is sand-like particles in the fuel. ***Defect caused by customer***." *Id.* at 38 (emphasis added).[13]

---

representatives re: "Status CP4 USA," in which the parties discuss the substantial increase in warranty claims with the implementation of the CP4 in vehicles in the U.S. market).

[12] *See, e.g., infra* ¶ 62 and corresponding footnotes (discussing FCA's responses to NHTSA's requests pursuant to ODI Inquiry No. INRD-EA11003).

[13] *See also* March 7, 2011 Bosch submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59347P.pdf," at 21 (Mar. 31, 2008 email from Volkswagen to Bosch re: "Radio: Drivetrain damage failure US07 (Jetta)," in which the parties are discussing an HPFP failure in a 2007 Jetta and the Volkswagen representative frustratedly states, "Can you (panel of experts) explain to us how the failure mechanism was after this mileage? . . . . We will certainly not accept a failure because of fuel quality! . . . . We also see a big risk here for our BIN5 pump, which has to manage with the same fuel in USA"); May 2012 Bosch submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59334P.pdf," at 9-10 (Jul. 4, 2008 email from Audi to Bosch re: "CP4 BIN5

52. Thus, even early on, it was well known in the U.S. automotive industry that there were serious U.S. diesel incompatibility issues that now run rampant in the Class Vehicles due to the defective CP4 pump.

53. Likewise, in September 2009, Bosch, at the time supplying the defective CP4 fuel pump to Audi and Volkswagen, received a notice from Audi about a "3rd HPP failure" in the U.S., explaining, "I'm afraid there's bad news from the U.S.: After 2 failures in the field . . . the 3rd HPP failure has now occurred in the EC endurance run."[14] Photos attached to the email show the failed Bosch CP4 fuel pump, replete with metal shavings in the gasket:[15]

---

3rd and 4th failure in USA," analyzing root cause of CP4 field failures and positing, "Why is it that EC pumps do not fail? Because of a different fuel?"); *id.* at 13-14 (Jul. 11, 2008 email between Audi and Bosch representatives re: "W19 BIN5 pump failure" in which Audi writes, "For the zero error meeting in FeP on Tuesday we expect the information discussed at the error meeting on endurance testing of fuels with 'poor lubricity, containing water etc.' and all failures, drivetrain damage in all component, system and other endurance runs of Bosch and all customers"); Jul. 27, 2012 Bosch submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59345P.pdf," at 7 (emphasis added) (Jun. 30, 2009 email between Bosch and Audi representatives re: "ANS: HPP measures/ USE," in which the Audi representative writes, "I don't think you're reading my mails anymore! Please look at the failure curves specifically, then you'll see that ***we only have a problem in certain markets[.] . . . Depending on how poor the fuel currently on the market is***"); *id.* ("I'd prefer to have a more robust pump").

[14] Sept. 2, 2009, email from Audi representative to Bosch representatives regarding "3rd HPP Failure USA," produced in response to NHTSA Inquiry EA11003EN-00639[0], available at https://static.nhtsa.gov/odi/inv/2011/INRD-EA11003-59428P.PDF (last accessed Oct. 31, 2019), at 146.

[15] *Id.* at 148–50.









54.     In June 2011, Bosch received a report from Volkswagen regarding a CP4 pump

failure in a 2.0L Volkswagen TDI in which the Volkswagen representative explained, "I have

here a pump from [sic] a 2.0L TDI. I have been testing a lot of these this week and many have an amount of 'metal Debris' or other metallic particles in them."[16]

55.     Indeed, Bosch CP4 failures in U.S. Audi and Volkswagen vehicles were widespread and catastrophic by the end of 2011. *See, e.g.*, Jul. 27, 2012 Bosch submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59345P.pdf," at 69 (Sept. 15, 2011 email from Volkswagen to Bosch re: "080211_Status_CP4.1_Bosch," in which the Volkswagen representative notes, "***I think the [CP4] failures are well known***. It is also important to know that not only the high-pressure fuel pump, but the entire injection system is to be replaced in case of damage to a HPP with a cost >[**REDACTED**] caused by chip contamination") (emphasis added).[17]

56.     Notably, on December 10, 2011, FCA submitted to NHTSA responses regarding Inquiry No. INRD-EA11003, in which NHTSA requested FCA provide information and documents regarding "peer vehicles" of Volkswagen and Audi diesel vehicles using high-pressure fuel pumps and potential U.S. fuel compatibility issues, to which FCA responded that "Chrysler does conduct vehicle level durability/reliability testing with fuels representing the specific markets that it is sold in."); *id*. at 22–23. Further, in response to NHTSA's inquiry requesting that FCA produce copies of all recommendations and warnings regarding diesel fuel quality that FCA had in its possession, FCA stated:

---

[16] Mar. 7, 2011 Bosch submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59347P.pdf," at 12 (Jun. 9, 2011 email from Volkswagen Group of America, Inc. to Bosch re: "2.0L TDI Fuel Pump").

[17] *See also* Mar. 22, 2011, email from Bosch employee to Volkswagen employees regarding analysis of failing CP4 fuel pumps, produced in response to NHTSA Inquiry EA11003EN-00639[0], available at https://static.nhtsa.gov/odi/inv/2011/INRD-EA11003-59428P.PDF (last accessed Oct. 31, 2019), at 11 (showing that, by March 2011, Bosch was continuing to receive "a respectable number" of CP4 "mechanical breakdowns" in the U.S.); *id*. at 19-22 (spreadsheet

Chrysler has in its possession diesel fuel surveys from the American Automobile Manufactures' Association ("AAMA"), International Fuel Surveys which contain fuel survey data for the United States. Chrysler also has diesel fuel survey data provided to Chrysler by Infineum.[18]

57.     Yet FCA went on to commission Bosch's CP4 fuel pump for use in its 2014–18 EcoDiesel® engines, having been enticed by the prospect of a cheaper fuel injection pump than the CP4's predecessor, the better-reputed CP3.

### E.   Model Year 2014: FCA Equips its EcoDiesel® Engines with the Incompatible Bosch CP4 Pump.

58.     As part of a strategy to expand its North American presence, in 2009, Fiat began its acquisition of one of the "Big Three" U.S. automakers, Chrysler. In November of that year, then-FCA CEO Sergio Marchionne unveiled an ambitious 5-year plan to, among other things, roll out "more diesel variants" under the Jeep brand and to give Ram's "Light duty (1500)" pickup truck a "refresh/facelift."[19]

59.     By July 2010, FCA began investigating strategies to develop and market diesel vehicles in the North American market. As early as February 2012, Chrysler had already commissioned and presented research to understand how to market the diesel vehicles to consumers.

60.     In approximately 2011, VM Motori announced a new diesel engine: a V6, 3.0-liter displacement engine intended for inclusion in SUVs, trucks, and large sedans. This engine

---

showing results of Bosch's pre-analysis of HPFP failures in Volkswagen/Audi vehicles where "metal chips found in fuel system").

[18] *See id.* at 20. (listing the following resources: (1) Worldwide Winter Diesel Fuel Quality Survey 2004; (2) Diesel Fuel Quality Trends 2005; (3) North American Diesel Fuel Trends 2007; (4) Worldwide Winter Diesel Fuel Quality Survey 2008; North American Diesel Fuel Trends 2009; and (5) Worldwide Winter Diesel Fuel Quality Survey 2010.)

[19] Todd Lassa, *Fiatapolooza! Chrysler's Five-Year Plan, MotorTrend* (Nov. 6, 2009),

had been under development for use in a General Motors automobile for the European market.[20] However, Fiat acquired 50% of VM Italy in 2011, and began working with VM Motori to develop the engine for use in FCA vehicles to be sold in the United States.

61. By 2014, Fiat had become Fiat Chrysler Automobiles, Chrysler had become FCA, and VM Motori, a long-time engine supplier, was now part of the Fiat Chrysler sprawling family of affiliated companies. In May of that year, FCA announced another five-year plan at the Auburn Hills, Michigan headquarters to increase Fiat Chrysler's competitiveness against global auto giants, such as Toyota, Volkswagen, and General Motors, by increasing annual sales to 7 million vehicles by 2018, up from 4.4 million in 2013.[21] Integral to the strategy was the expansion of the "Jeep portfolio" and updates to the "bread-and-butter Ram 1500," including "diesel engines."[22]

62. In the years preceding the now-infamous (and worldwide) diesel emissions scandals, Mr. Marchionne, as the CEO of FCA N.V. and FCA US, is alleged to have been a champion of leveraging FCA N.V.'s strength in diesel engines to promote the sale of light-duty diesel engine vehicles in the United States. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Products Liab. Litig.,* 295 F.Supp.3d 927, 976 (E.D. Mich. 2018) (citing plaintiffs' first amended complaint). "He made the sale of light-duty diesel-engine vehicles in the United States a part of his 2009 and 2014 five-year plans to increase the FCA Defendants'

---

http://www.motortrend.com/news/chrysler-five-year-plan/.
[20] Chad Westfall, *An Inside Look At The Ram 1500 3.0L EcoDiesel, Engine Labs* (Jan. 11, 2015), http://www.enginelabs.com/engine-tech/an-inside-look-at-the-ram-1500-3-0l-ecodiesel/.
[21] Jerry Hirsch and David Undercoffler, *Fiat Chrysler Unveils Aggressive Five-Year Plan, Los Angeles Times* (May 6, 2014), http://www.latimes.com/business/la-fi-chrysler-revamp-20140507-story.html.
[22] Christian Seabaugh, *Ram and Ferrari's Place in Fiat Chrysler's Five-Year Plan*, MotorTrend (May 6, 2014), http://www.motortrend.com/news/ram-and-ferraris-place-in-fiat-chryslers-five-year-plan/.

sales and market share." *Id.* (citing same). "He also made numerous public statements on behalf of Fiat Chrysler concerning the Class Vehicles, their EcoDiesel® engines, and their emissions and performance characteristics." *Id.* (internal quotations and citations omitted). "With respect to emissions, he specifically noted in 2012 that he was still 'optimistic about the potential of light-duty diesels in the U.S. despite significant emissions challenges.'" *Id.* (quoting former FCA CEO Sergio Marchionne).

63. When FCA's EcoDiesel® first hit the U.S. market for the 2014 model year, FCA Chief Engineer for RAM Truck Brands, Mike Cairns, proclaimed the following:

> "We know there is a lot of interest [for diesels]. For years we have had customers asking, why not a light duty diesel? There is a lot of interest. People know they will get great fuel economy, great durability, and reliability with a diesel. It has always been a difficult business case because diesels are expensive, and there is a lot to developing a diesel engine . . . .

> "We were fortunate at this point in time that our partners at Fiat owned half of VM Motori, who makes this diesel engine. As well as working with our Jeep brethren on the diesel for the Grand Cherokee. We combined resources and developed them together. That cut the engineering cost down, and made us able to bring this to market. So, it really isn't a big risk . . . .

> "Unlike diesels of the past that were really heavy, this [CGI] is very efficient, but gets the structural requirements you need for a diesel. So, it [the complete engine] actually weighs a little more than a Hemi engine but provides great diesel performance and fuel economy."[23]

64. FCA also touted the EcoDiesel®'s "optimized" Bosch CP4 fuel injection pump, with market-wide representations about the pump's ability "to maintain 2,000 bar (roughly 29,000 psi) in both fuel rails," and about how FCA engineers "optimized the firing order to

---

[23] Chad Westfall, *An Inside Look at the Ram 1500 3.0L EcoDiesel*, DIESELARMY, Jan. 11, 2015, available at https://www.enginelabs.com/engine-tech/engine/an-inside-look-at-the-ram-1500-3-0l-ecodiesel/ (last accessed Oct. 31, 2019).

manage the inertia and firing loads eliminating any need for a balance shaft, common to many V6 engines."[24]

65.     The EcoDiesel® engine originally was developed for use in Europe, where diesel fuel standards allowed for higher lubricity and more favorable viscosity than those in the U.S. Rather than make the engine compatible with U.S. diesel fuel standards, FCA opted to circumvent its commercial obligations of fairness and honesty to American consumers, effectively implementing an incompatible component fuel pump system, which—to this day— falls short of U.S.-based performance specifications. In reality, FCA sought to unfairly grab a piece of the U.S. diesel market beyond its existing heavy-duty diesel trucks and, in late 2013, it introduced both the light-duty 2014 Ram 1500 "EcoDiesel®" and 2014 Jeep Grand Cherokee "EcoDiesel®" Class Vehicles. Subsequent model years have continued to come mal-equipped with the CP4 fuel pump systems.

66.     Indeed, FCA doubled-down on its wager to escape accountability for its conscious decision to use the non-compliant CP4 pump as the "beating heart" of its EcoDiesel® engine systems. Rather than admit faulty design, and responsibly pay to redesign and replace and its defective fuel pump systems, FCA has educated dealerships on how to deceive customers by convincing them that the devastating failures were caused instead by anything from cold weather to hot weather to contaminated fuel.

**F.  The CP4 Defect Poses an Inherent Risk to Vehicle Occupant Safety and Renders the Class Vehicles *Per Se* Defective.**

67.     The federal Safety Act and related regulations require the quarterly submission to NHTSA of "early warning reporting" data, including claims relating to property damage received by the automotive manufacturer, warranty claims paid by the automotive

---

[24] *Id.*

manufacturer, consumer complaints, incidents involving injury or death, and field reports prepared by the automotive manufacturer's employees or representatives concerning failure, malfunction, lack of durability, or other performance issues. 49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21.

68.    The Safety Act further requires immediate action when a manufacturer determines or should determine that a safety defect exists. *See United States v. General Motors Corp.*, 574 F. Supp. 1047, 1050 (D.D.C. 1983). A safety defect is defined by regulation to include any defect that creates an "unreasonable risk of accidents occurring because of the design, construction, or performance of a motor vehicle" or "unreasonable risk of death or injury in an accident." 49 U.S.C. § 30102(a)(8). Within five (5) days of learning about a safety defect, a manufacturer must notify NHTSA and provide a description of the vehicles potentially containing the defect, including "make, line, model year, [and] the inclusive dates (month and year) of manufacture," a description of how these vehicles differ from similar vehicles not included in the recall, and "a summary of all warranty claims, field or service reports, and other information" that formed the basis of the determination that the defect was safety related. 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)–(c). Then, "within a reasonable time" after deciding that a safety issue exists, the manufacturer must notify the owners of the defective vehicles. 49 C.F.R. §§ 577.5(a), 577.7(a). Violating these notification requirements can result in a maximum civil penalty of $15,000,000. 49 U.S.C. § 30165(a)(1).

69.    FCA has violated the Safety Act, and moreover violated basic design guidelines in designing, manufacturing, and distributing vehicles which are not compatible with American

diesel fuel and which can cause a moving stall, thereby presenting an inherent risk to occupant safety that FCA itself has recognized in the past.[25]

70. To be sure, FCA has seen *scores* of consumer complaints regarding the now-notorious CP4 pump failure.

71. For example, on August 20, 2014, the owner of a three-month-old 2014 Jeep Grand Cherokee EcoDiesel® posted the following in the "Jeep Grand Cherokee Diesel Forum" of DieselJeeps.com under the heading, "3 Months Old—Fuel Pump Implosion:"

> "[L]oved my limited GC ED [Grand Cherokee EcoDiesel®] for the first 3 months, no issues, great mileage. On way home from first [o]il change at dealer, car violently started shaking, then shut down after 'low oil pressure' light flashed on (over the span of 3-5 seconds as I tried to pull over). We are now in the 4th week of this car being in the show still... ***Dealer has showed me pictures and a sample of the metal shavings that were released when the high pressure fuel pump failed,*** very strange... I wonder what Jeep will do to make this right?"[26]

72. Two days later, another user responded:

> "This is a known issue. The Bosch CP4.0 HPFP on the GC [Grand Cherokee] is very sensitive to fuel impurities. It is self-lubricating by the diesel and if the fuel does not have enough lubricity or is contaminated with water or gasoline the pump will cease and send metal shavings throughout the entire fuel system. This happened to many VW Jetta's that use the same new pump. The previous Bosch CP3.2 was much more resilient in that aspect. The repair will be very expensive so Chrysler will probably request a test of your fuel. If possible, get a fuel sample and test it yourself. Make sure you have your latest refueling receipts available. Many new CRD owners (me included) use lubricity

---

[25] *See, e.g.*, Jan. 11, 2018, NHTSA FCA Part 573 Safety Recall Acknowledgment Letter regarding NHTSA Recall No. 18V-049, available at https://static.nhtsa.gov/odi/rcl/2018/RCAK-18V049-8191.pdf (last accessed Oct. 31, 2019) (FCA acknowledging that the risk of moving stalls in the 2017 Chrysler Pacifica "increase[s] the risk of a crash").

[26] Aug. 20, 2014, DieselJeeps.com forum post re: "3 Months Old—Fuel Pump Implosion," available at https://www.dieseljeeps.com/threads/3-months-old-fuel-pump-implosion.830/ (last accessed Oct. 31, 2019) (emphasis added) (ellipses in original).

additively to make sure the diesel will properly lubricate the engine as US diesel lubricity quality is questionable."[27]

73.     Likewise, on October 28, 2014, the owner of a 2014 Dodge Ram EcoDiesel® posted the following on DieselRamForum.com which, as discussed below,[28] further demonstrates how there is no true fix to the problem:

> "I picked up my brand new ED [EcoDiesel®] on 9/17/14 after about 4 months of research into this new flavor of ram . . . .

> "1700 miles and three weeks into my new ownership, I parked the truck in a parking lot, and when I got in about 10 minutes later the truck wouldn't start. The starter would engage, but no fire. Tried several times, and finally had it towed in.

> "Dealer had it for over a week scratching their head before star told them to replace the injector pump. After that, the truck still would                              not                              start.

> "Star told them to get some sort of diagnostic tool to tell them which injector was bleeding off pressure, but nobody actually seems to have this tool except the training centers. I started feeling like I was about to be trapped in a 6.0 powerstroke scenario already.

> "Mechanic has been fantastic throughout this whole mess, and finally got tired of waiting for star. **So he pulled an injector and guess what? Metal.** He showed me where he had cleaned it out on a white napkin and the metal is like a very fine sand consistency. **So he did a little digging and found out that apparently they had a              bad              run              of injector pumps.**

> "So now, he is telling me that they are ordering new everything forward of the injector pump and *hoping* that replacing those components will fix the problem.

> "My main concern is this: What are the chances that this metal

---

[27] Aug. 22, 2014, DieselJeeps.com forum post re: "3 Months Old—Fuel Pump Implosion," available at https://www.dieseljeeps.com/threads/3-months-old-fuel-pump-implosion.830/ (last accessed Oct. 31, 2019).
[28] *See infra* § IV.G. (discussing supposed "remedies" which are inadequate because the CP4 pump will continue to be incompatible with U.S. diesel).

could have caused damage inside the **cylinders**? The dealership seems resistant to my request to have the cylinders inspected (In fact, their answer was 'If it starts and runs ok, then we are done[']). I am not so comfortable just accepting this answer and driving off . . . . So far, the dealership has had my truck two days less than I actually had it on the road."[29]

74.    In December 2015, the owner of a 2014 Dodge Ram 1500 EcoDiesel® opened a thread entitled, *"Anyone have to have their fuel system completely rebuilt on their EcoDiesel?"* on the Ram1500Diesel.com online forum, in which he explained the following:

"As the post title says, has anyone had to have their fuel system rebuilt?

[. . .]

This is just the latest problem in a laundry list of issues I've had with my truck. I'll give a basic run down of the latest problem.

About 2-3 weeks to this error I started getting the dreaded Electronic Throttle Control Error . . . . The first and second time I got this error I was able to clear it. The third time I was able to clear the code but it malfunctioned (truck was essentially limited to about 40 or 45 mph) so I had the truck towed. The shop was unable to duplicate the issue or find any error reports since I cleared the code.

About a week or so later, my check engine light came on so I took the truck to the shop. My truck had 2 faulty sensors that needed repaired (probably why I lost 3-4 mpg's). One needed ordered so I had to wait two days to get my truck back. After I picked my truck, not even 2 miles down the road, I got the Electronic Throttle Control Error. I went back to the garage (and luckily made it right before closing) and they ran the truck through their computers and got the same error code I was getting before. I waited about an hour for Enterprise to get there with a rental truck . . . .

This happened Friday afternoon. I was originally told everything

---

[29]  Oct. 28, 2014, DieselRamForum.com post re: "Major Fuel Problem," available at https://www.dieselramforum.com/forum/2014-ram-1500-ecodiesel-troubleshooting/6330-major-fuel-problem.html (last accessed Oct. 31, 2019).

should be done by the following Friday (12/11). On Monday, I found out that this was going to a much more involved repair than they originally thought. My entire fuel system has to be rebuilt because it got contaminated while the truck was being manufactured. Parts are backordered so I have no idea when I'll actually get the truck back.

This makes me ask, if this got contaminated, what else got contaminated? Quite frankly, I'm scared to see my repair bills after this truck falls out warranty. I closed on the truck the day before Thanksgiving 2014. It has 20k miles on it and I'd estimate its been in the shop for 1-2 months (after this repair) with all my issues. I'm speaking to an attorney tomorrow about my options as I have no faith in the reliability of my EcoDiesel. . . ."[30]

75.    Less than ten minutes later, another forum user responded, "Talked to my diesel tech at the dealership this morning. He's done one & said it was a REAL PITA ['pain in the ass'] . . . metal shavings everywhere. Believe an injector went. I'll quiz him a little more when I pick up my truck this evening."[31]

76.    Shortly thereafter, a third user responded:

"Google Bosch CP4.2 HPFP problems. May be the source of your contamination. My 2015 has been in the shop for two weeks with metal shavings in the fuel. Bigger problem may be that those shavings end up in the entire fuel system all the way back to the tank. This may require replacing all fuel system components[.]"[32]

77.    Notably, after the original thread-initiator stated that his dealership represented that the problem was due to supplier factory contamination, another user aptly responded that,

"It[']s absolutely impossible to have factory contamination and run 20K miles. When HPCR

---

[30]  RAM1500DIESEL.COM, forum thread entitled, "Anyone have to have their fuel system completely rebuilt on their EcoDiesel?," Dec. 21, 2015, available at https://www.ram1500diesel.com/forum/ram-1-500-diesel-mechanical/9347-anyone-have-have-their-fuel-system-completely-rebuilt-their-ecodiesel.html (last accessed Oct. 31, 2019).
[31]  *Id.*
[32]  *Id.*

*[High Pressure Common Rail] systems see any type of contaminates they last seconds before failure or performance problems*."[33]

78.     Our original thread poster naively . . . responds, "That[']s what seems odd to me, *but that[']s what the RAM dealer told me was the issue. [They] confirmed it with corporate . . . . Tomorrow makes day 18 in the shop*."[34]

79.     Two weeks later, *another* owner of a 2014 EcoDiesel® wrote, "My 2014 ED [EcoDiesel®], 31,000 mi[,] is in the shop now . . . . Determined that fuel pump had [a] catastrophic failure and aluminum shards throughout fuel system . . . . I am a bit concerned about the metal reaching the engine . . . ."[35]

80.     Similarly, on February 26, 2016, the owner of a 2015 Dodge Ram submitted the following complaint to NHTSA regarding the defective condition:

> "THE VM MOTOR HAS NUMEROUS FAILURES RESULTING FROM THE CAMSHAFT GEAR ON THE FUEL PUMP SIDE OF THE MOTOR SLIPPING AND CAUSING CATASTROPHIC ENGINE FAILURE. THESE PROBLEMS WILL OCCUR GENERALLY AFTER 70K MILES . . . . ECODIESEL OWNERS PAID A PREMIUM FOR THE DIESEL UPGRADE SINCE DIESEL MOTORS ARE RENOWN FOR THEIR LONGEVITY. THIS ACHILLES HEAL MARRING THE RELIABILITY AND CAUSING AN UNSAFE TIME BOMB SHOULD HAVE BEEN ADDRESSED BY THE MANUFACTURER TO RECALL THE VEHICLES. THUS FAR RAM HAS NOT TAKEN ACTION . . . ."[36]

81.     On April 7, 2016, the owner of a 2014 Dodge Ram Lonestar Crewcab with only 21,000 miles relayed the following CP4-pump-implosion experience on the Ram1500Diesel.com forum:

---

[33] *Id.* (emphasis added).
[34] *Id.* (emphasis added).
[35] *Id.*

"Earlier this week, with just over 21000 miles on the truck, the engine began to sputter, the check engine light came on, 'Electronic Throttle Control' message appeared, then the engine shut down completely. Fortunately, this happened only a mile from the house. After a tow to the dealer, and a couple of days for diagnostics, the dealer concluded the high pressure fuel pump failed. They replaced the pump, and the truck failed to start. At this point, they performed an autopsy on the old pump and discovered it was full of metal shavings. The dealer then contacted Chrysler. Chrysler recommended a 'complete fuel system replacement.' The dealer explained a 'complete fuel system replacement' means dropping, draining and cleaning the tank, replacing the in-tank pump, fuel filter housing, fuel filter, various lines, injectors, etc..., and 'flushing the entire system.' Not really confident in the dealer's approach as they said the high pressure pump that was replaced in beginning would be fine. Seems to me that if metal shavings are contaminating the entire fuels system, the new HPFP would now be contaminated as well."[37]

82. As one of many instances of FCA blaming the consumer for the failure of its

defective vehicles, the following was posted on CarComplaints.com by the owner of a 2016

Dodge Ram EcoDiesel®:

"On August 26, 2016, a beautiful sunny day, I was driving to work and my new truck started to buck and sputter. It was fairly obvious at the time that there was a fuel delivery problem. I limped the truck to the local dealer in the city where I work and explained the problem to the service desk. I was told later that day that there was a misfire in Cylinder #3 and that the injector was 'bad'. The dealer replaced the injector (more on that later). [Two days later,] I needed to hook the truck up to my trailer in preparation for our trip. I turned the engine over—the truck bucked like a horse (a very obvious misfire). The truck continued to idle, quite roughly, but would not budge. I learned later that the truck was now in safe mode—which means it will not move. Disappointed, slightly angry, and somewhat confused as to what was happening to my new truck—I called roadside assistance to tow the truck to dealer [from] whom it was purchased. . . .

[36] NHTSA ID No. 10838539.
[37] Dec. 6, 2017, Ram1500Diesel.com forum post re: "High Pressure Fuel Pump Implosion," available at https://www.ram1500diesel.com/forum/ram-1-500-diesel-mechanical/11039-high-pressure-fuel-pump-implosion.html (last accessed Oct. 31, 2019).

Incidentally, FCA does not supply rental vehicles for warranty repairs unless you have purchased and extended warranty package—which I did not . . . . So what has happened over the last 5 weeks? Again—thanks for asking! Almost nothing. The first fix suggested by FCA was to replace a check valve in the fuel line between the low pressure and high pressure pump . . . . After replacing the check valve the dealer took the truck for a road test. I am not sure if he or she actually made it off of the lot—but suffice it to say the truck failed that test . . . . Fast forward 1 week while FCA mulled over the issue (I have an image in my head of a cow chewing cud). Alas, they could not seem to come up with a solution—*So they took the next logical step and blamed me*. I received a call from the dealers' service desk, and with some sorrow, and sympathy, like he was telling me that my dog had just died—*I was told that FCA believes that 'You are running bad diesel'*. REALLY!! . . . . My tractor is diesel—and I run this same fuel without issue. I live in a rural area, where there are plenty of diesel trucks filling up at this station all of the time (it is an independent station) and do not seem to be having issues . . . . So daily calls to the dealer to discuss my dilemma with the chap at the service desk . . . . More nothing, and more nothing. I am becoming quite concerned. On the advice of the chap at the service desk I open a file with FCA Canada Customer care. This way they can track my issues and compare it with other issues that are happening around North America to try to solve my very perplexing problem. Thursday September 15—I have been communicating with FCA daily—please let me clarify communicate—I call you 5 times, you push me to voicemail every time and almost never call me back. And when you do call me back—you tell me you are waiting for information from the dealer, and that the good folks at tech-line have been enlisted to solve my mystifying problem. That is funny—because I called the dealer this morning and they were waiting on you. Has there been a breakdown in communication? I drive to the dealer to pop in on them just to check. I am ushered out to the service bay where I get to talk to the diesel specialist. 'Now we are getting somewhere' I say to myself. The diesel specialist then shows me six things. 1. The high pressure regulator—*This is obviously completely clogged with shards of metal. Little tiny bits of shiny, silver metal. It is obviously beyond repair. 'Well there is the problem' I say. The specialist agrees*. 2. The fuel filter. I expected, being a diesel filter that it would be black. It did have a tinge of grey however looked remarkably clean. 'Nothing wrong with that filter' I say to the diesel specialist. He agrees. 'Looking good.' 3. The high pressure fuel pump . . . . A bad one looks the same as a good one, but I have already deduced that this is the most obvious

source of the little bits of metal that are clogging the regulator . . . . . 6. A little beaker of fuel- perhaps 200ml—and the diesel specialist says with a shrug of his shoulders– and I quote—'That is your diesel. We have tested it for water and it came back negative'. 'Well that's a relief' I say to the diesel specialist. I will have to remember to tell my local fueling spot that their diesel is good . . . . Friday September 24—The dealer calls. 11:57am. '*They are not covering anything under warranty*' he says. I am stunned. 'What do you mean', I ask, getting agitated. '*They say you have water in your fuel and that it has caused rust which has destroyed your fuel system. The entire fuel system needs to be replaced and they will not cover any of it*.' 'Bull*%$@' I say. 'You tested the fuel and didn't find water' . . . . 'Doesn't matter" he says. 'That's what they say. Maybe you can go through insurance or something . . . . *You're going to have to pay for the truck to[o],' he adds. 'You know. The rental. They have rejected everything*.' 'You have got to be kidding me'. I am still in shock. I start to think and ask. 'Please explain to me how water in the fuel, causes rust in the tank, that destroys the entire fuel system to the point where everything needs to be replaced, *on a 6 month old truck with 10,000km on it*. Particularly, when there is a water separator on the truck - which should separate the water- a 4 micron filter that is white, not rusty colored, AND there are water sensors on the truck that are supposed to detect and warn of water in the fuel - exactly this.' 'I can't' was all he could offer. 'I need to get the truck off my hoist. What do you want to do'. 'Nothing'. I responded. 'I am not paying one red cent for anything! This is unconscionable!!' I called my case manager at FCA about 15 times yesterday. Left her a voicemail every time. She did call back . . . [and] left me a voicemail [saying] that [they] were 'waiting for feedback from the dealer.' As if!! So here I sit. Saturday September 24, My wife's birthday (happy Bday baby). Confused, a little mad, kind of sad, but overall I am just completely disappointed with the human race. These are the kinds of things I watch on marketplace, shake my head and tsk at the injustice of it all . . . ."[38]

83. On September 20, 2016, a 2015 Dodge Ram EcoDiesel® owner posted the

following CP4-facilitated failure:

---

[38] Sept. 24, 2016, posting on CarComplaints.com forum re: "2016 Ram 1500 Owner Comments," available at

"I have a 2015 Lonestar 4X4 with little under 20,000 miles. I just put in shop last week to do Service electronic throttle, the bright red lightening bolt, the low oil pressure and engine light coming on and oh yeah it would not restart. So they are saying the high pressure diesel pump imploded and sent metal shavings through the fuel system. They are checking now to see if that has gone into the engine. They are in talks with Chrysler on how to proceed with repairs."[39]

84.     On January 29, 2017, the owner of a 2014 Jeep Grand Cherokee reported the

following failure to NHTSA:

"SERVICE DEF CAME ON AT 34,000 MILES. DEALER SAID THAT THE DEF WAS CONTAMINATED WITH CRYSTALS AND THE PUMP NEEDED REPLACED. REFUSED TO COVER IT UNDER WARRANTY DUE TO CONTAMINATION. ONLY PEAK BLUE DEF WHICH MEETS ISO 22241 HAS BEEN USED IN THE VEHICLE. DEALERSHIP THEN TOLD US TO DRIVE THE VEHICLE UNTIL THE BACK ORDERED PART WAS AVAILABLE. WHEN QUERIED ABOUT THE VEHICLE GOING INTO "LIMP MODE" THEY AGREED IT WAS A POSSIBILITY. THEY WOULD NOT PROVIDE A LOANER VEHICLE UNTIL THE PART ARRIVED AND WILL NOT COVER UNDER WARRANTY. THERE ARE HUNDREDS OF CASES ON JEEP FORUMS WITH THE SAME ISSUE. IT IS A SAFETY ISSUE IF A DEALER TELLS YOU TO DRIVE A VEHICLE THEY KNOW WILL GO INTO LIMP MODE, ESPECIALLLY ON A FREEWAY. WE ALSO HAVE A 14[-]MONTH[-]OLD CHILD AND LIVE IN COLORADO, BREAKING DOWN ON THE SIDE OF THE ROAD IS NOT AN OPTION. THE DEALER DOES NOT RETURN PHONE CALLS AND CHRYSLER CUSTOMER CARE SIDED WITH THE DEALER AND PROVIDED NO ASSISTANCE."[40]

---

https://www.carcomplaints.com/Ram/1500/2016/fuel_system/entire_fuel_system_failure.shtml (last accessed Oct. 31, 2019) (emphasis added).
[39] Sept. 20, 2016, Ecodieselram.com forum thread entitled, "High Pressure Diesel Pump," available at https://www.ecodieselram.com/forum/threads/high-pressure-diesel-pump.1004/ (last accessed Oct. 31, 2019).
[40] NHTSA ID No. 10948341.

85.     On February 11, 2017, the owner of a 2014 Jeep Grand Cherokee 3.0L EcoDiesel® posted the following under the thread title, "Injector pump failure.....common?" on the Jeep enthusiasts' forum JeepGarage.org:

> "Yesterday, after my wife picked up the kids from daycare the Jeep decided to stall at a traffic light in a very busy intersection. No light or warnings, just died. She tried to restart to no avail. Got it towed to dealer.
>
> "Dealer called today and found ***the injector pump grenaded and sent metal shavings throughout the fuel system***."[41]

86.     This 2014 EcoDiesel® owner further noted that the dealership had informed him that the fuel injection pump was on backorder and there was no timeframe for its availability,[42] an issue that other consumers have experienced as well. (*See, e.g.*, Apr. 21, 2015 forum post on DieselRamForum.com, available at https://www.dieselramforum.com/forum/ram-1500-ecodiesel-general-discussion/8841-think-twice-before-buying-ecodiesel.html (last accessed Oct. 31, 2019) (EcoDiesel® owner posting a thread entitled, "Think twice before buying ECODIESEL!!!" and explaining that, after trading-in his 2013 Ram 1500 Hemi for a new Ram EcoDiesel® because he "wanted better gas mileage," he found himself broken down on the side of the road multiple times due to sudden engine stalling caused by fuel pump failure, then found out from his Dodge Ram dealer that the replacement pump was on backorder for two weeks).

---

[41] Feb. 11, 2017, JeepGarage.org forum post re: "Injector pump failure.....common?," available at https://jeepgarage.org/f222/injector-pump-failure-common-124178.html (last accessed Oct. 31, 2019) (emphasis added).

[42] *See* Feb. 14, 2017, JeepGarage.org forum post re: "Injector pump failure.....common?," available at https://jeepgarage.org/f222/injector-pump-failure-common-124178.html (last accessed Oct. 31, 2019) (emphasis added).

87. Similarly, on July 6, 2017, the owner of a 2014 Dodge RAM 1500 reported the following failure to NHTSA:

> CHECK ENGINE LIGHT ON WITH FUEL SYSTEM ERROR WARNING. HAD TO REPLACE FULE PUMP ASSEMBLY."[43]

88. On November 30, 2017, the driver of a 2016 Dodge Ram 1500 reported the following incident to NHTSA:

> "TRUCK SHUTDOWN WHILE DRIVING DOWN HIGHWAY @ 65 MPH WITHOUT ANY OTHER SYMPTOMS. HAD TO COAST TO SIDE OF BUSY ROAD. SERVICE ELECTRONIC THROTTLE CONTROL FLASHED AS WELL AS THE CHECK ENGINE LIGHT. THE TRUCK NEVER STUTTERED OR LOST ANY POWER PRIOR TO THIS. DEALERSHIP STATES THAT IT IS BAD DIESEL FUEL. REPLACED HPFP BUT TRUCK WILL STILL NOT START. CHRYSLER HAS INSTRUCTED DEALER TO REPLACE ENTIRE FUEL SYSTEM. THIS HAS NOT BEEN DONE YET BECAUSE CHRYSLER WILL NOT WARRANTY EVEN THOUGH THE TRUCK IS STILL UNDER WARRANTY."[44]

89. On December 6, 2017, the following customer complaint involving a 2016 Dodge Ram 1500 EcoDiesel® was posted on www.Ram1500Diesel.com under the thread titled, "HPFP Failure:"[45]

> "My 2016 Ecodiesel (31000 miles) quit while travelling down highway and had to coast to shoulder. Motor didn't shudder, loose power or any other symptom...CEL flashed and motor just down at 70 MPH. Dealer diagnosis is contaminated fuel caused the HPFP to 'clog'. They replaced HPFP and truck will still not start. That was 2 1/2 weeks ago and it's still at dealer. Chrysler recommends replacing entire fuel system but will not warranty because dealer states reason is contaminated fuel. They don't know what it's contaminated with only that the sample from the tank looks cloudy. Insurance inspector looked at it yesterday and discovered metal shavings in the old HPFP (insurance claim still pending).

---

[43] NHTSA ID No. 11003301.
[44] NHTSA ID No. 11051571.
[45] Dec. 6, 2017, Ram1500Diesel.com thread entitled, "HPFP Failure," available at https://www.ram1500diesel.com/forum/ram-1500-diesel-general-discussion/48217-hpfp-failure.html (last accessed Oct. 31, 2019).

> Dealer acknowledged today the metal shavings in the pump but said it could have been caused by contaminated fuel...[And] thus it is still not covered under warranty."

90. One CP4-failure-seasoned member aptly responded the next day, "Contaminated fuel was VW's first excuse for failing HPFP's [High Pressure Fuel Pumps]. So bogus."[46]

91. As another frustrated 2015 Dodge Ram 1500 EcoDiesel® owner noted in the same Ram1500Diesel.com forum, "Time for FCA to step up, and have a long-term solution to this debacle of an engine. I'm regretting my hasty purchase more and more. I don't mean to sound all negative, but this is my hard-earned daily driver, and I can't afford to trade it, just because I'm afraid of impending failure. Design or procure a reliable drop-in replacement . . . ."[47]

92. In fact, the failure is so frequent that consumers have complained about replacement parts constantly being on backorder.[48] For example, on July 22, 2015, a Dodge Ram EcoDiesel® owner posted, "Dealer called. Fuel pump has to be replaced. None in stock, so getting rental car."[49]

93. Even the famous vehicle-vetting guru, Dan Edmunds, experienced an engine failure in the EcoDiesel®-powered Dodge Ram 1500 that sounds eerily familiar. The following

---

[46] *Id.*

[47] Apr. 8, 2015, Ram1500Diesel.com thread entitled, "Edmund's Test Update, Uh Oh," available at https://www.ram1500diesel.com/forum/ram-1500-diesel-general-discussion/5492-edmunds-test-update-uh-oh.html (last accessed Oct. 31, 2019).

[48] *See supra* ¶¶ 85-86 (discussing Feb. 11-14, 2017, JeepGarage.org forum posts re: "Injector pump failure.....common?," available at https://jeepgarage.org/f222/injector-pump-failure-common-124178.html (last accessed Oct. 31, 2019).)

[49] Jan. 22, 2015, Ram1500diesel.com thread entitled, "Blown Fuel Pump Fuse," available at https://www.ram1500diesel.com/forum/ram-1500-diesel-electrical/6942-blown-fuel-pump-fuse.html#post91381 (last accessed Oct. 31, 2019).

March 2015 article from Mr. Edmunds speaks volumes about the magnitude of the defect (as well as FCA's ostensible chokehold on the automotive industry):

> Our 2014 Ram 1500 Ecodiesel is back in our hands after an extended stay at McPeek's Dodge of Anaheim, the dealership that was closest to the point at which it stalled abruptly. And by "extended stay" I mean 12 days.
>
> Why so long? The Ram engineering group in Detroit got involved. But not because I asked them to — I didn't. Maybe someone who knew someone saw the Tweet I'd sent out while I was waiting for the tow truck. Perhaps the problem description raised a red flag.
>
> As well it should. A stall while moving is a rare yet serious failure mode. I'm told they wanted to fully understand the circumstances in order to determine the root cause . . . . Twelve days without a truck does not feel like the red carpet treatment, even if the dealer did offer a loaner . . . . The work ticket also lists the original trouble codes as P0087 and P016F, which have to do with low fuel rail pressure. (Two fuel rails sit under[ ]hood and feed three fuel injectors each). The mechanic and the district service rep didn't suffer a stall during their test drives, but they did experience the long crank and observed sluggish response under heavy acceleration, a symptom I hadn't experienced because I hadn't been hauling cargo or hauling butt in the days leading up to the stall. But they found more than trouble codes. The measured fuel flow rate was low. ***And an inspection magnet latched on to a tiny piece of metallic debris in the high-pressure side of the fuel system***. I don't think they expected that.
>
> [. . .]
>
> They ruled out the possibility of contaminants in the tank or the fuel after they drained and inspected the tank.
>
> At this point the specific reason for the low rail pressure and source (and extent) of the debris in the high-pressure part of the fuel system remained unknown.
>
> [. . .]
>
> So they decided to remove and inspect the entire fuel system from the in-tank canister and its submerged feeder pump to the injector pump to the fuel rails and the injectors themselves.

94.     However, the Edmunds article ends with suspiciously exculpatory treatment of

FCA, *in toto* (the accompanying veracity of which is hard to believe):

> Now that it's back, everything appears normal and the truck runs
> great. It makes good power and torque, and the fuel economy
> seems to be right where it should be. ***It's worth noting that the***
> ***3.0-liter V6 turbodiesel engine itself was never implicated. Its***
> ***injector rails and fuel injectors were replaced only because of***
> ***their proximity to where the debris was found, but neither is***
> ***considered to be the source***.[50]

95.     In fact, on April 16, 2018, the "Fiat Chrysler 3.0-L V6 EcoDiesel" engine was

featured as one of the *Seven Engines to Avoid like The Plague*.[51] The review further noted that

"[t]he 3.0-L turbodiesel V6 'EcoDiesel' supplied by former Fiat affiliate VM Motori and made

available optionally on the Ram 1500 light-duty truck and Jeep Grand Cherokee can fail

relatively early in its service life. So much so that the Ram 1500 equipped with the EcoDiesel

engine has been branded a lemon by the Automobile Protection Association and *Lemon-*

*Aid* [by] author Phil Edmonston.[52]

**G. Supposed "Remedies" are Insufficient and Costly.**

96.     Because of its incompatibility with U.S. diesel fuel, CP4 pumps and

corresponding fuel injection systems, even when replaced or "fixed," will continue to fail in

the Class Vehicles. Indeed, in a June 2010 email chain between Bosch and representatives of

Audi and Volkswagen regarding the failure of a CP4 pump in a 2010 Audi A3 TDI, Audi

---

[50] Dan Edmunds, Director of Edmunds Vehicle Testing, *2014 Ram 1500 EcoDiesel Long-Term Road Test*, EDMUNDS.COM, Mar. 3, 2015, available at https://www.edmunds.com/ram/1500/2014/long-term-road-test/2014-ram-1500-ecodiesel-back-in-service.html (last accessed on Oct. 31, 2019) (emphasis added).
[51] Apr. 16, 2018, "Seven Engines to Avoid Like The Plague," MSN.COM, available at https://www.msn.com/en-ca/autos/research/seven-engines-to-avoid-like-the-plague/ar-AAvS762?li=AAggNb9#page=7 (last accessed Oct. 31, 2019).

asked Bosch, *"[W]hy are the defects mentioned below still present after replacing the high-pressure pump and the injector? What could the [dealer] have done wrong by way of incorrect repair so that such defects are appearing?"* Bosch responded that "[i]n this case the complete fuel system (HPFP, rail, injectors, **all** lines) need to be changed . . . . I assume that because of the 'cruncher,' the entire system is contaminated with chips, which are then pumped in circulation and can soon lead to the next failure! The rough running can be explained by the fact that a chip is already present before or in the injector and is impairing its function."[53]

97.  There is no true "fix" for these vehicles; assuming U.S. diesel fuel standards remain in effect, the failures will continue, as evidenced by the following incident posted on JeepGarage.Org in May 2014:

> Now . . . onto my Ecodiesel. On April 26th, it experienced a major meltdown accompanied by the flashing dash lights of death. All sorts of codes showed up on the EVIC screen... low oil pressure, service electronic throttle control, service 4 wheel drive system were the major ones along with a number of OBDII codes which I pulled with my code reader. I had it towed to a dealer and it has been there ever since.

> The original diagnosis was that the diesel injector pump failed and I was told it would be 30+ days before I saw it and the associated fuel metering valve assembly . . . .

> Parts actually showed up late last week, were installed over Thursday and Friday and the vehicle was restarted Friday afternoon. It ran for all of 30 seconds before shutting itself off. FWIW... the new injection pump assembly is listed at $3800.00.

> I am now told that the pump is only putting out 800psi or so and that there is a unacceptably high rate of fuel return going back to the tank. They are now convinced that the failed pump introduced metal

---

[52] *Id.*

[53] March 7, 2011 Bosch submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59347P.pdf," at 79-80 (Jun. 7-9, 2010 email chain between Bosch, Audi, and Volkswagen representatives regarding CP4 fuel pump failure falsely attributed to "misfuel").

contamination into the injector system and have ordered new injectors, filters and fuel rails. Those parts are supposed to be in later this week.

Yesterday I formally escalated this to a request for a new replacement vehicle as this is completely unacceptable. . . . IMO, they are throwing parts at it now in the hope that they can make it run so even if they are right about metal contamination and do get it to run, who wants to deal with that for the remainder of a vehicle's lifespan?

Chrysler Engineering is now investigating whether or not they have a supplier issue with the injector pump assembly . . . .[54]

98. The Bosch CP4 Pump problem is so prevalent that several aftermarket part manufacturers now provide kits for Chrysler, Ford, and GM vehicles equipped with the CP4 to mitigate the inevitable harm of a CP4 disaster. "Disaster Preventer Kits" or "bypass kits" usually refer to a fuel bypass system that does not prevent the failure, the loss of the expensive injection pump, or the need to clean metal shavings from the fuel system. But these kits are designed to redirect the lubricating fuel for the CP4 back to the fuel tank, so that it will be filtered before it returns to the engine. The bypass kit directs the fuel contaminated with metal shavings into the gas tank, which is less expensive to clean than the engine and high-pressure fuel system—in other words, a "Band-Aid" solution. These bypass kits are also less expensive than more complete remedies, requiring only $300–$400 in parts, and are marketed as having the ability to "[k]eep[] injectors/rails safe from CP4 pump failure debris." Many consumers have turned to this sort of remedy preemptively due to the known impending failures their vehicles are facing.

99. Another method of addressing the Bosch CP4 Pump failure is to modify the Class Vehicles to return to the older, more reliable technology of simply using more fuel. With

Duramax engines, the strategy may be simply to buy a predecessor CP3 pump from an independent automotive parts vendor and install it in place of the Bosch CP4 Pump. Indeed, the CP4 pump is so substandard that many Class Vehicle owners have opted to replace their CP4 pumps with CP3 pumps at a cost of at least $3,000 per vehicle for the replacement parts alone.[55] Resorting to this "remedy," however, fails to make consumers whole; they are simply not getting the fuel efficiency and/or performance promised with the Bosch CP4 Pump, and for which they paid a premium. Further, consumers are having to pay thousands of dollars out of pocket to essentially redesign a design flaw that was intentionally implemented by FCA in the Class Vehicles.

100.   Another potential "remedy" is to leave the CP4 in place on the Class Vehicle, but install a lift pump, an additional pump to assist the Bosch CP4 Pump and increase the fuel pressure.  But, again, this "remedy" deprives consumers of the fuel-efficiency for which they paid a premium.

101.   The added lift pump and CP3 pump options *partially* (and inadequately) attempt to remedy the problem by pumping and burning more fuel. Thus, in addition to the expense of buying a new, potentially warranty-voiding fuel injection pump, owners are further required to purchase much more fuel than originally advertised or anticipated in order to emulate the "ordinary use" of Class Vehicles as originally promised, expressly and impliedly.

---

[54] May 14, 2014, JeepGarage.Org forum thread entitled, "Major EcoDiesel Injector Pump Issue," available at https://jeepgarage.org/f222/major-ecodiesel-injector-pump-issue-75087.html (last accessed Oct. 31, 2019).
[55]   *See*, *e.g.*, http://www.engineered-diesel.com/lml-duramax-cp3-conversion-kit-with-re-calibrated-pump-50-state-carb-certified (selling "CP3 Conversion Kit with re-calibrated Pump[s]" for $3,000.00 and noting that the "[k]it is designed to replace the less reliable CP4 that comes stock on the LML").

102.    A fourth way to mitigate the damage is to spend money for fuel additives to increase the lubricity of the fuel. This approach may work best in conjunction with the previously discussed modifications, but even by itself, it can be expensive, and its effectiveness is unproven.

103.    In short, there is no known way to remedy or mitigate CP4 pump failure without decreasing the fuel efficiency promised to Plaintiffs and other Class members and without significant expense to Plaintiffs and other Class members.

**H. In Falsely Trumpeting the Quality, Performance, and Dependability of its EcoDiesel® Engine Vehicles to Consumers, FCA Concealed—Both Affirmatively and Via Omission—the Defective Nature of the CP4 Fuel Pump.**

104.    At least from 2013 through 2018, FCA has extensively advertised the performance benefits of the EcoDiesel® engine located within all of the subject the Class Vehicles. At all times relevant to this action, FCA omitted and/or concealed the CP4 fuel pump defect. Indeed, at no point during the time period relevant to this action did FCA inform buyers and/or lessees of the Class Vehicles that the Bosch-supplied CP4 fuel pump and accompanying fuel system components within the EcoDiesel® engine were incompatible with the ordinary use of American diesel fuel, or that the defective CP4 pump starts damaging the vehicle's fuel injection system and engine immediately upon the vehicle's first use. In fact, FCA advertisements represents that the Class Vehicles are fit for driving on *America roadways* which implies that American diesel fuel is being used in, and compatible with, the Class Vehicles, this is simply not true from day one.

105.    Likewise, FCA repeatedly told consumers that the Class Vehicles were dependable, long-lasting, and of the highest quality. In so doing, FCA led consumers, including Plaintiffs and other Class Members, to believe that the Class Vehicles would be free from

defects that result in fuel injection system failure and consequential engine shutdown which results in outrageously expensive repair costs.

106. In its brochures and advertisements for the Class Vehicles, FCA consistently touted the performance benefits of the EcoDiesel® engine.

107. For example, FCA's advertisement brochure for the 2014 Grand Jeep Cherokee touts the new 3.0L EcoDiesel® engine, claiming it "treats your fuel budget with respect," with "EFFICIENCY—30 MPG." FCA's promotion of the new diesel Jeep Cherokee was as being as tough as its predecessors, while adding "refinement." The efficiency of FCA's EcoDiesel®-equipped Ram trucks was promoted with the phrase, "SAY HELLO TO LOWER COST OF OWNERSHIP."[56]

108. FCA further claimed that its 2014 Dodge Ram EcoDiesel® vehicles were durable in spite of varying fuel quality, touting that "the available 3.0L EcoDiesel V6 utilizes dual-filtration technology for greater . . . durability."

109. The 2015–16 brochures for the Jeep Grand Cherokee also features the EcoDiesel® badge, which touts best-in-class fuel economy, range, horsepower, and torque.

110. In its EcoDiesel® advertising, FCA specifically targets consumers "who want to drive an efficient, environmentally friendly truck without sacrificing capability or

---

[56] 2016 Jeep Grand Cherokee EcoDiesel® Brochure (advertisement).

performance."[57] Indeed, it claims that the Ram 1500 EcoDiesel® was "the NAFTA market's first and only light-duty pickup powered by clean diesel technology."[58]

111. FCA also claims that the EcoDiesel® engines equip the Ram 1500 with the "best fuel economy of any full-size pick-up"[59] and the Jeep Grand Cherokee "with an incredible 730-mile highway driving range, you can find hundreds of miles of discovered roads and be confident you'll find your way back."[60]

112. Another theme of FCA's misleading advertising campaign is the Class Vehicles' power, including torque and towing capacity. FCA claims that the 2015 Jeep Grand Cherokee equipped with a 3.0-liter EcoDiese®l V6 engine has best-in-class towing capability of up to 7,400 pounds.[61] Similarly, FCA claims that the EcoDiesel® engine has best-in-class torque: "The EcoDiesel engine delivers best-in-class 420 lb-ft of torque. Paired with an impressive 240 horsepower, this engine has serious muscle."[62]

113. FCA's website claims that "[t]he 3.0-liter V-6 EcoDiesel engine available on the Jeep Grand Cherokee and Ram 1500 pickup has been listed among Ward's '10 Best Engines' for three consecutive years. On the Ram 1500, the engine delivers the highest fuel economy

---

[57] *The 2014 Ram 1500 with EcoDiesel Engine, Available Soon at a Dealer Near You*, Ram Zone (Ram trucks blog operated by FCA US LLC) (July 16, 2013), https://blog.ramtrucks.com/features/the-2014-ram-1500-with-ecodiesel-engine-available-soon-at-a-dealer-near-you/.

[58] Chrysler Group's 3.0-liter EcoDiesel V-6, 500e Battery-Electric Drive System Among Ward's 10 Best Engines for 2014, Chrysler Group LLC (FCA) (Dec. 12, 2013), http://www.fcanortham erica.com/ News/ChryslerDocuments/C hryslerGroupLLC_Sustain2013Dec12.pdf.

[59] EcoDiesel—Ram 1500 HFE, Ram Trucks (FCA), available at https://www.ramtrucks.com/en/ecodiesel/ (last accessed Oct. 31, 2019).

[60] *Id*.

[61] *See EcoDiesel*, Jeep (FCA), available at http://www.jeep.com/en/jeep-capabilities/eco-diesel-calculator/ (last accessed November 19, 2018).

[62] *The 2014 Ram 1500 with EcoDiesel Engine, Available Soon at a Dealer Near You*, Ram Zone (Ram trucks blog operated by FCA US LLC) (July 16, 2013),

among all full-size truck competitors—12% higher than the next-closest competitor. As for the Jeep Grand Cherokee, it offers fuel economy of 30 miles per gallon highway with a driving range of more than 730 miles."[63]

114. FCA also touts the power and performance of the EcoDiesel® engine on its website, noting that "[t]he EcoDiesel engine delivers best-in-class 420 lb-ft of torque. Paired with an impressive 240 horsepower, this engine has serious muscle."[64]

115. Other online advertisements proclaim that the Dodge Ram 1500 EcoDiesel® is "expected to deliver an outstanding combination of best-in-class fuel efficiency, best-in-class torque and impressive capability. This new EcoDiesel is among today's most advanced diesel engines. Has emissions that are 60% lower than those produced by diesel powertrains 25 years ago. The impressive combination of torque and fuel economy marks a new level of performance."[65]

116. FCA has touted the Dodge Ram Truck brand as "the most innovative lineup of full-size trucks on the market" and boasts of the vehicles' "durable engines and features that further enhance their capabilities."[66] Ironically, FCA notes in this same advertisement that, "Truck customers, from half-ton to commercial, have a demanding range of needs and require

---

https://blog.ramtrucks.com/features/the-2014-ram-1500-with-ecodiesel-engine-available-soon-at-a-dealer-near-you/.

[63] *Fuel Efficiency*, FCA US LLC, http://www.fcanorthamerica.com/Innovation/Pages/Fuel-Efficiency2.aspx (last accessed Oct. 31, 2019).

[64] *The 2014 Ram 1500 with EcoDiesel Engine, Available Soon at a Dealer Near You*, Ram Zone (Ram trucks blog operated by FCA US LLC) (July 16, 2013), available at https://blog.ramtrucks.com/features/the-2014-ram-1500-with-ecodiesel-engine-available-soon-at-a-dealer-near-you.

[65] https://www.yarkchryslerjeepdodgeram.com/2014-ram-1500-ecodiesel.htm (last accessed Oct. 31, 2019).

[66] *Id.*

their vehicles to provide high levels of capability. Ram trucks are designed to deliver the total package."[67]

117. FCA's advertising for the 2015 Dodge Ram 1500 EcoDiesel® includes the representation that the vehicle has "the best fuel economy of ANY full-size pickup," and that it "offer[s] advantages that separate you from the rest of the pack: exceptional torque and superior fuel-efficient performance, *welcome biodiesel (B20) capability* . . . and a zero-hassle DEF System."[68]

118. For the 2016 Dodge Ram 1500 EcoDiesel®, FCA similarly advertised that the "3.0L EcoDiesel V6 delivers biodiesel (B20) capability; a zero-hassle DEF System; clean dual-filtration technology; minimal $CO_2$ levels; and . . . . [t]he crowning touch? Its best-in-class 29 mpg highway fuel economy."[69]

119. FCA has represented in its television, internet, and printed advertisements that the Class Vehicles are fit for driving on American roadways, by featuring the Class Vehicles driving on American roadways. In these advertisements, numerous Class Vehicles are seen traveling all sorts of American terrain as if they are all adequately drivable and compatible with American diesel fuel, *but they are not.*

120. The Class Vehicle brochures and related marketing materials, seen and/or heard by Plaintiffs prior to purchase, are tied together by common themes and sometimes identical language. The specific language outlined above in FCA's marketing and advertising are false,

---

[67] *Id.*
[68] 2015 Dodge Ram 1500 Vehicle Brochure, at 6, available at http://autotrends.org/brochures/2015-ram-1500-brochure.pdf (last accessed Oct. 31, 2019) (emphasis added).
[69] 2016 Dodge Ram Vehicle Brochure, at 7, available at https://cdn.dealereprocess.net/cdn/brochures/ram/2016-1500.pdf (last accessed Oct. 31, 2019).

misleading, and deceptive, as are the demonstrations of the Class Vehicles driving in America which falsely represents that the vehicles are compatible with American diesel fuel.

## I.   FCA Designed, Manufactured, Distributed and Sold Vehicles It Knew Would Experience Catastrophic Failures Which FCA Would Not Honor Under Its Warranties.

121.   In addition to the aforementioned representations, FCA also provided an express 5-year/100,000-mile written warranty on the Class Vehicles it manufactured.[70] This Powertrain Limited Warranty specifically covers "Parts Covered – Diesel Engine…..fuel injection pump and injectors."

122.   On many occasions, however, FCA has refused to honor its warranties—even after its EcoDiesel® customers presented the same fuel pump system issue in the Class Vehicles two (or more) times for repair under warranty. In return, FCA has deviously claimed that the metal shavings and Class Vehicle failures are not caused by FCA and thus not covered under warranty.

123.   Despite the clear mis-match between the CP4 fuel pump and American diesel fuel, FCA has cleverly passed the average $8,000.00–$20,000.00 cost of catastrophic failure along to the consumer. The logic is that when the extremely simple CP4 self-destructs due to its sharp interface of surface to surface friction under high pressure and its usage of very little fuel incompletely maintaining lubrication, its innate incompatibility with American diesel produces metal shavings in the fuel, which is then launched into the high-pressure fuel system and the engine. Warranties do not cover the use of contaminated fuel. Because the fuel is now

---

[70]   *See* 2014 Dodge Ram Trucks Brochure, at 4, available at https://www.ramtrucks.com/assets/pdf/brochures/2014_ram_pickups.pdf (last accessed Oct. 31, 2019).

contaminated with metal from the pump, the repairs are for fuel contamination and are not covered by the warranties.

124. FCA induced Plaintiffs and other Class members to pay a premium for increased durability, performance and fuel efficiency, with a design it has long known would cause fuel contamination—a condition FCA now uses to absolve itself of the catastrophic and costly consequences to Plaintiffs and other Class members.

## J. Allegations Establishing Agency Relationship Between Manufacturer FCA and FCA Dealerships.

125. Upon information and belief, Manufacturer Defendant FCA has impliedly or expressly acknowledged that FCA-authorized dealerships are its sales agents, the dealers have accepted that undertaking, FCA has the ability to control authorized FCA dealers, and FCA acts as the principal in that relationship, as is shown by the following:

   i. Manufacturer FCA can terminate the relationship with its dealers at will;

   ii. The relationships are indefinite;

   iii. Manufacturer FCA is in the business of selling vehicles as are its dealers;

   iv. Manufacturer FCA provides tools and resources for FCA dealers to sell vehicles;

   v. Manufacturer FCA supervises its dealers regularly;

   vi. Without Manufacturer FCA, the relevant FCAs dealers would not exist;

   vii. Manufacturer Principal FCA requires the following of its dealers:

      1. Reporting of sales;

      2. Computer network connection with Manufacturer FCA;

      3. Training of dealers' sales and technical personnel;

      4. Use of Manufacturer FCA-supplied computer software;

      5. Participation in Manufacturer FCA's training programs;

      6. Establishment and maintenance of service departments in FCA dealerships;

7. Certify FCA pre-owned vehicles;

8. Reporting to Manufacturer FCA with respect to the car delivery, including reporting Plaintiffs' names, addresses, preferred titles, primary and business phone numbers, e-mail addresses, vehicle VIN numbers, delivery date, type of sale, lease/finance terms, factory incentive coding, if applicable, vehicles' odometer readings, extended service contract sale designations, if any, and names of delivering dealership employees; and

9. Displaying Manufacturer FCA logos on signs, literature, products, and brochures within FCA dealerships.

viii. Dealerships bind Manufacturer FCA with respect to:

1. Warranty repairs on the vehicles the dealers sell; and

2. Issuing service contracts administered by Manufacturer FCA.

ix. Manufacturer FCA further exercises control over its dealers with respect to:

1. Financial incentives given to FCA dealer employees;

2. Locations of dealers;

3. Testing and certification of dealership personnel to ensure compliance with Manufacturer FCA's policies and procedures; and

4. Customer satisfaction surveys, pursuant to which Manufacturer FCA allocates the number of FCA cars to each dealer, thereby directly controlling dealership profits.

x. FCA dealers sell FCA vehicles on Manufacturer FCA's behalf, pursuant to a "floor plan," and Manufacturer FCA does not receive payment for its cars until the dealerships sell them.

xi. Dealerships bear FCA's brand names, use FCA's logos in advertising and on warranty repair orders, post FCA-brand signs for the public to see, and enjoy a franchise to sell Manufacturer FCA's products, including the Class Vehicles.

xii. Manufacturer FCA requires FCA dealers to follow the rules and policies of Manufacturer FCA in conducting all aspects of dealer business, including the delivery of Manufacturer FCA's warranties described above, and the servicing of defective vehicles such as the Class Vehicles.

xiii. Manufacturer FCA requires its dealers to post FCA's brand names, logos, and signs at dealer locations, including dealer service departments, and to identify themselves and to the public as authorized FCA dealers and servicing outlets for Manufacturer FCA cars.

xiv. Manufacturer FCA requires its dealers to use service and repair forms containing Manufacturer FCA's brand names and logos.

xv. Manufacturer FCA requires FCA dealers to perform Manufacturer FCA's warranty diagnoses and repairs, and to do the diagnoses and repairs according to the procedures and policies set forth in writing by Manufacturer FCA.

xvi. Manufacturer FCA requires FCA dealers to use parts and tools either provided by Manufacturer FCA, or approved by Manufacturer FCA, and to inform FCA when dealers discover that unauthorized parts have been installed on one of Manufacturer FCA's vehicles.

xvii. Manufacturer FCA requires dealers' service and repair employees to be trained by FCA in the methods of repair of FCA-brand vehicles.

xviii. Manufacturer FCA audits FCA dealerships' sales and service departments and directly contacts the customers of said dealers to determine their level of satisfaction with the sale and repair services provided by the dealers; dealers are then granted financial incentives or reprimanded depending on the level of satisfaction.

xix. Manufacturer FCA requires its dealers to provide FCA with monthly statements and records pertaining, in part, to dealers' sales and servicing of Manufacturer FCA's vehicles.

xx.    Manufacturer FCA provides technical service bulletins and messages to its dealers detailing chronic defects present in product lines, and repair procedures to be followed for chronic defects.

xxi.    Manufacturer FCA provides its dealers with specially trained service and repair consultants with whom dealers are required by Manufacturer FCA to consult when dealers are unable to correct a vehicle defect on their own.

xxii.    Manufacturer FCA requires FCA-brand vehicle owners to go to authorized FCA dealers to obtain servicing under FCA warranties.

xxiii.    FCA dealers are required to notify Manufacturer FCA whenever a car is sold or put into warranty service.

## V.  TOLLING OF THE STATUTE OF LIMITATIONS

126.   As of the date of this Complaint, FCA continues to market its vehicles based on superior durability, performance, fuel efficiency, and compatibility with U.S. diesel fuel, despite their knowledge that the Class Vehicles are defective and have catastrophically failed or inevitably will catastrophically fail. In fact, FCA still has not disclosed and continues to conceal that the Class Vehicles are defective, incompatible with American diesel fuel, and will experience catastrophic and costly failure.

127.   Until shortly before the filing of this Complaint, Plaintiffs and other Class members had no way of knowing about FCA's wrongful and deceptive conduct with respect to their defective Class Vehicles.

128.   With respect to Class Vehicles that have not experienced a catastrophic CP4 pump failure, Plaintiffs and other Class members did not discover and could not reasonably have discovered prior to purchase that their Class Vehicles are defective, that their Class Vehicles are out of specification and incompatible with American diesel fuel, that this

incompatibility results in the breakdown of vehicle components and contamination of fuel caused by the defective CP4 fuel pump, that the durability and performance of their Class Vehicles is impaired by this defect and incompatibility and that such durability and performance is far less than FCA promised, or that, as a result of the foregoing, they overpaid for their vehicles, the value of their vehicles is diminished, and/or their vehicles will require costly modification to avoid a catastrophic, even more costly failure, and that any such modifications will impair other qualities of the Class Vehicles that formed a material part of the bargain between the parties in the purchase of the Class Vehicles by Plaintiffs and other Class members.

129.   With respect to Class Vehicles that have experienced a catastrophic CP4 pump failure prior to the filing of this Complaint, Plaintiffs and other Class members did not discover and could not reasonably have discovered that their CP4 pump failure was due to a defect known to FCA or that such failure was due to an incompatibility between the Class Vehicle and the fuel intended by FCA to be used in the Class Vehicles.

130.   Within the time period of any applicable statutes of limitation or repose, Plaintiffs and members of the proposed classes could not have discovered through the exercise of reasonable diligence that FCA was concealing the conduct complained of herein and misrepresenting the defective nature of the Class Vehicles.

131.   Plaintiffs and other Class members did not discover, and did not know of facts that would have caused a reasonable person to suspect that FCA did not report information within their knowledge to consumers, dealerships or relevant authorities; nor would a reasonable and diligent investigation have disclosed that FCA was aware of the non-conforming and defective nature of the CP4 fuel pump and the Class Vehicles in which it was

incorporated. Plaintiffs only learned of the defective nature of the CP4 fuel injection pump and their vehicles and of FCA's plot to design and sell such unfit defective vehicles only shortly before this action was filed.

132. All applicable statutes of limitation and repose have also been tolled by FCA's knowing, active, and fraudulent concealment, and denial of the facts alleged herein throughout the time period relevant to this action.

133. Instead of disclosing the defective nature of the CP4 fuel pumps to consumers, FCA has falsely represented that CP4 pump failure in the Class Vehicles is caused by Plaintiffs' or other Class members' conduct or by the use of contaminated fuel.

134. In reality, FCA's conduct in designing, manufacturing, marketing or selling Class Vehicles for use with American diesel fuel, with which FCA knew the Class Vehicles were incompatible, causes the "fuel contamination" that ultimately leads to a catastrophic CP4 pump failure.

135. FCA, with the purpose and intent of inducing Plaintiffs and other Class members to refrain from filing suit, pursuing warranty remedies, or taking other action with respect to FCA's conduct or the Class Vehicles, fraudulently concealed the true cause of CP4 pump failure by blaming Plaintiffs, Class members and/or other causes when FCA, even before the design, manufacture or sale of the Class Vehicles, knew that the defective nature of the Bosch CP4 Pump would and has caused fuel contamination and resulting catastrophic CP4 pump failure.

136. FCA was under a continuous duty to disclose to Plaintiffs and other Class members the true character, quality and nature of the durability and performance of Class Vehicles, the ongoing process of fuel contamination in Class Vehicles, CP4 pump failure, and

the true cause of CP4 pump failure. Instead, FCA knowingly, affirmatively, and actively concealed or recklessly disregarded the foregoing facts. As a result, FCA is estopped from relying on any statutes of limitation or repose as a defense in this action.

137. For the foregoing reasons, all applicable statutes of limitation and repose have been tolled by operation of the discovery rule and by FCA's fraudulent concealment with respect to all claims against FCA; and, FCA is estopped from asserting any such defenses in this action.

## VI. CLASS ACTION ALLEGATIONS

138. Throughout this Complaint, "Class Vehicle" is defined as any FCA-manufactured vehicle fitted at any time with a Bosch CP4 fuel pump.

139. Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of the following class (collectively, the "Class")

> All persons or entities who purchased or leased one or more of the "Class Vehicles" which include 2014–18 model year FCA-manufactured diesel vehicles equipped with an EcoDiesel® 3.0-Liter V6 engine.

140. Plaintiffs assert claims under the laws of each state set forth below.

141. Excluded from the Class are individuals who have personal injury claims resulting from a CP4 fuel injection pump failure. Also excluded from the Class are FCA and its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any entity in which FCA has a controlling interest. In addition, governmental entities and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff are excluded from the

Class. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

142. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

143. The Class Representatives are asserting claims that are typical of claims of the Class, and they will fairly and adequately represent and protect the interests of Class in that they have no interests antagonistic to those of the putative Class members.

144. The amount of damages suffered by each individual member of the Class, in light of the expense and burden of individual litigation, would make it difficult or impossible for individual Class members to redress the wrongs done to them. Plaintiffs and other members of the Class have all suffered harm and damages as a result of FCA's unlawful and wrongful conduct. Absent a class action, FCA will likely not have to compensate victims for FCA's wrongdoings and unlawful acts or omissions, and will continue to commit the same kinds of wrongful and unlawful acts or omissions in the future; indeed, upon information and belief, FCA continues to deny the faulty nature of its CP4-equipped EcoDiesel® vehicles.

145. **Numerosity under Federal Rule of Civil Procedure 23(a)(1):** The Class is so numerous that individual joinder of all of its members is impracticable. Due to the nature of the trade and commerce involved, Plaintiffs believe that the total number of Class Plaintiffs is at least in the thousands, and are numerous and geographically dispersed across the country. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, as well as by the notice Class members will receive by virtue of this litigation so that they may self-identify.

The disposition of the claims of Class members in a single class action will provide substantial benefits to all Parties and the Court. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice. The number of persons for whom this action is filed who are citizens of these United States effectively exhausts the membership of the class, with the potential exception of those represented in the separate action styled *Berry, et al. v. FCA US LLC*, No. 2:19-cv-00023 (S.D. Tex.).

146. **Commonality and Predominance under Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):** This action involves common questions of law and fact which predominate over any questions affecting individual Class members, including, without limitation:

a. Whether FCA engaged in the conduct alleged herein;

b. Whether FCA knew about the CP4 fuel pump defect and the inherent problems related thereto when said component part is used with American diesel fuel, and if so, how long FCA knew or should have known as much;

c. Whether FCA designed, advertised, marketed, distributed, leased, sold, or otherwise placed the defective Class Vehicles into the stream of commerce in the United States;

d. Whether the diesel engine systems that are the subject of this complaint are defective such that they are not fit for ordinary consumer use;

e. Whether FCA omitted material facts about the quality, durability, fuel economy, and vehicle longevity of the Class Vehicles;

f.    Whether FCA designed, manufactured, marketed, and distributed Class Vehicles with defective or otherwise inadequate fuel injection systems;

g.    Whether FCA's conduct violates states' consumer protection statutes, and constitutes breach of contract or warranty and fraudulent concealment, as asserted herein;

h.    Whether Plaintiffs and the other Class members overpaid for their vehicles at the point of sale or lease; and

i.    Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, what amount.

147.    **Typicality under Federal Rule of Civil Procedure 23(a)(3):** Plaintiffs' claims are typical of the other Class members' claims because all have been comparably injured through FCA's wrongful conduct as described above.

148.    **Adequacy of Representation under Federal Rule of Civil Procedure 23(a)(3):** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members they seek to represent. Additionally, Plaintiffs have retained counsel with substantial experience in handling complex class action and multi-district litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

149.    **Superiority of Class Action under Federal Rule of Civil Procedure 23(b)(3):** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The financial detriment suffered by Plaintiffs and the other members of the

Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against FCA. Accordingly, it would be impracticable for the members of the Class to individually seek redress for FCA's wrongful conduct. Even if members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII. CAUSES OF ACTION

### A. Multi-State Claims

### COUNT I

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et. seq.*

150. Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

151. Plaintiffs bring this Count on behalf of all persons who are members of the Class set forth in Section (VI.) above (collectively for purposes of this Count, the "Magnuson-Moss Class").

152. This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a)-(d).

153. The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). The Plaintiffs and Class members are

consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.

154. FCA is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

155. 15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

156. FCA provided Plaintiffs with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, FCA warranted that the Class Vehicles were fit for their ordinary purpose as safe, American-diesel-fuel-compatible motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

157. FCA breached its implied warranties, as described in more detail above, and is therefore liable to Plaintiffs pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Class Vehicles share a common defect in that they are all equipped with a Bosch CP4 high-pressure fuel injection pump which is not compatible with the lubricity of American diesel fuel. This incompatibility causes the Class Vehicles to suddenly fail during normal operation, leaving occupants of the Class Vehicles vulnerable to crashes, serious injury, and death. Even where death or serious injury does not occur, the CP4's incompatibility with American diesel fuel renders the Class Vehicles, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving in America with standard American diesel fuel.

158. In its capacity as warrantor, FCA had knowledge of the inherently defective nature of the high-pressure fuel-injection system in the Class Vehicles. Any effort by FCA to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit such liability is null and void.

159. Any limitations FCA might seek to impose on its warranties are procedurally unconscionable. There was unequal bargaining power between FCA and Plaintiffs, as, at the time of purchase and lease, Plaintiffs had no other options for purchasing warranty coverage other than directly from FCA.

160. Any limitations FCA might seek to impose on its warranties are substantively unconscionable. FCA knew that the Class Vehicles were defective and incompatible with U.S. diesel fuel, and that the Vehicles would fail when used as intend. Moreover, FCA knew the Class Vehicles would pose safety risks after the warranties purportedly expired. FCA failed to disclose this defect to Plaintiffs. Thus, FCA's enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

161. Plaintiffs have had sufficient direct dealings with either FCA or its agents (dealerships) to establish privity of contract between FCA and Plaintiffs. Nonetheless, privity is not required here because Plaintiffs are intended third-party beneficiaries of contracts between FCA and its dealers, and specifically, of FCA's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the aforementioned defect, as catastrophic CP4

fuel pump failure can cause the vehicle to stall while in motion and then subsequently become unable to be restarted, which increases the risk of a crash and presents an unreasonable risk to vehicle occupant safety.

162.   Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give FCA notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

163.   Plaintiffs would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because FCA is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Class Vehicles by retaining them.

164.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of all other Magnuson-Moss Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Magnuson-Moss Class members in connection with the commencement and prosecution of this action.

165. Plaintiffs also seek the establishment of a FCA-funded program for Plaintiffs and Magnuson-Moss Class Members to recover out of pocket costs incurred in attempting to rectify and/or mitigate the effects of the CP4 incompatibility defect in their Class Vehicles.

## B. Claims Brought on Behalf of the Alabama Class Members

### COUNT I

### VIOLATIONS OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT
### (ALA. CODE § 8-19-1, *et seq.*)

166. Plaintiffs (for purposes of all Alabama Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

167. Plaintiffs bring this Count on behalf of the Alabama Class members against FCA.

168. Plaintiffs and Alabama Class members are "consumers" within the meaning of ALA. CODE § 8-19-3(2).

169. Plaintiffs, Alabama Class members, and FCA are "persons" within the meaning of ALA. CODE § 8-19-3(5).

170. The Class Vehicles are "goods" within the meaning of ALA. CODE § 8-19-3(3).

171. Defendants were and are engaged in "trade or commerce" within the meaning of ALA. CODE § 8-19-3(8).

172. The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several specific actions to be unlawful, including: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." ALA. CODE § 8-19-5.

173. Plaintiffs intend to assert a claim under the Alabama DTPA. Plaintiffs will make a demand in satisfaction of ALA. CODE § 8-19-3 and may amend this Complaint to assert claims under the Alabama DTPA once the required 15 days have elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Alabama DTPA.

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON ALABAMA LAW)

174. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

175. Plaintiffs bring this Count on behalf of the Alabama Class members against FCA.

176. As set forth above, Plaintiffs and other Alabama Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendant and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

177. As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

178.    As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

179.    As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

180.    As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

181.    As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

182.    Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are

"best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

183. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

184. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

185. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

186. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

187. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

188. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

189. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

190. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

191. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

192.     Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

193.     FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

194.     FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

195.     Accordingly, FCA is liable to Plaintiffs and Alabama Class members for damages in an amount to be proved at trial.

196.     FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Alabama Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## UNJUST ENRICHMENT

197. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

198. Plaintiffs bring this Count on behalf of the Alabama Class Members against FCA.

199. This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class Members.

200. As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, FCA charged a higher price for the Class Vehicles than the Vehicles' true value and FCA, therefore, obtained monies that rightfully belong to Plaintiffs and other Class members.

201. FCA enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members, who paid a higher price for their vehicles that actually had lower values.

202. FCA has received and retained unjust benefits from the Plaintiffs and other Class members, and inequity has resulted.

203. Thus, all Plaintiffs and other Class members conferred a benefit on FCA.

204. It would be inequitable and unconscionable for FCA to retain these wrongfully obtained benefits.

205. Because FCA concealed its fraud and deception, Plaintiffs and other Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from FCA's misconduct.

206. FCA knowingly accepted and retained the unjust benefits of its fraudulent conduct.

207.    As a result of FCA's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class members, in an amount to be proven at trial. Plaintiffs and other Class members, therefore, seek an order establishing FCA as a constructive trustee of the profits unjustly obtained, plus interest.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY,
## (ALA. CODE § 7-2-314)

208.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

209.    Plaintiffs bring this Count on behalf of the Alabama Class members against FCA.

210.    FCA was a merchant with respect to motor vehicles within the meaning of ALA. CODE § 7-2-314.

211.    Under ALA. CODE § 7-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs or other Class members purchased or leased their Class vehicles.

212.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

213.    Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination,

ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

214. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

215. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and other Class members have been damaged in an amount to be proven at trial.

### C. Claims brought on Behalf of the Alaska Class Members

**COUNT I**
**VIOLATION OF THE ALASKA UNFAIR TRADE**
**PRACTICES AND CONSUMER PROTECTION ACT**
**(ALASKA STAT. ANN. 45.50.471, *et seq.*)**

216. Plaintiffs (for purposes of all Alaska Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

217. Plaintiffs bring this Count on behalf of the Alaska Class members against FCA.

218. The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA") proscribes unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, including: "(4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval status, affiliation, or connection that the person does not have;" "(6) representing that goods or services are of a particular standard,

quality, or grade, or that goods are of a particular style or model, if they are of another;" "(8) advertising goods or services with intent not to sell them as advertised;" or "(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged." ALASKA STAT. ANN. § 45.50.471.

219. Pursuant to ALASKA STAT. ANN. § 45.50.531, Plaintiffs will amend their Complaint to seek monetary relief against FCA measured as the greater of (a) three times the actual damages in an amount to be determined at trial or (b) $500 for each Plaintiff and Alaska Class member.

220. Plaintiffs will amend to seek an order enjoining FCA's unfair, unlawful, and/or deceptive trade practices pursuant to ALASKA STAT. ANN. § 45.50.535(b)(1), attorneys' fees, and any other just and proper relief available under the Alaska CPA.

221. Plaintiffs will make a demand in satisfaction of ALASKA STAT. ANN. § 45.50.535, and may amend this Complaint to assert claims under the Alaska CPA once the required notice period has elapsed. This paragraph is included for purposes of notice only and is no intended to actually assert a claim under the Alaska CPA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON ALASKA LAW)

222. Plaintiffs (for purposes of all Alaska Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

223. Plaintiffs bring this Count on behalf of the Alaska Class members against FCA.

224.    As set forth above, Plaintiffs and other Alaska Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendant and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

225.    As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

226.    As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

227.    As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

228.    As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the

required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

229.    As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

230.    Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

231.    The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the

CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

232. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

233. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

234. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an

internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

235. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

236. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

237. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

238. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class

members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

239. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

240. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

241. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure

of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

242. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

243. Accordingly, FCA is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

244. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (ALASKA STAT. ANN. § 45.02.314)

245. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

246. Plaintiffs bring this Count on behalf of the Alaska Class members against FCA.

247. FCA was a merchant with respect to motor vehicles within the meaning of ALASKA STAT. ANN. § 45.02.314.

248. Under ALASKA STAT. ANN. § 45.02.314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs or other Class Members purchased or leased their Class Vehicles from FCA.

249. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

250. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

251. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

252. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and other Class members have been damaged in an amount to be proven at trial.

D. **Claims Brought on Behalf of the Arizona Class Members**

### COUNT I

### VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT
### (ARIZ. REV. STAT. § 44-1521, *et seq.*)

253. Plaintiffs (for purposes of all Arizona Class member Counts) incorporate by reference all paragraphs as thought fully set forth herein.

254. Plaintiffs bring this Count on behalf of the Arizona Class members against FCA.

255. The Arizona Consumer Fraud Act ("Arizona CFA") provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, … misrepresentation, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." ARIZ. REV. STAT. § 44-1522(A).

256. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

257. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

258. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

259. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

260. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

261. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

262. Defendants knew or should have known that their conduct violated the Arizona CFA.

263. Defendant owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendant:

    a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b.     Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

c.     Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

264.    Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.  Longevity, durability, performance, and safety are material concerns to diesel truck consumers.  FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

265.    Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

266. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

267. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

268. Plaintiffs and the Class members seek monetary relief against Defendants in an amount to be determined at trial. Plaintiffs and the Class members also seek punitive damages because Defendants engaged in aggravated and outrageous conduct with an evil mind.

269. Plaintiffs also seek attorneys' fees and any other just and proper relief available.

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON ARIZONA LAW)

270. Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

271. Plaintiffs bring this claim on behalf of the Arizona Class members against FCA.

272. As set forth above, Plaintiffs and other Arizona Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendant and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

273.    As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

274.    As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

275.    As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

276.    As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

277.    As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

278. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

279. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

280. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do

not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

281.    As alleged   above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

282.    FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

283.    Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

284.    FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

285.    FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

286.    FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

287.    Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class

members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

288.    Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

289.    FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

290.    FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

291.    Accordingly, FCA is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

292.     FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### E.     Claims Brought on Behalf of the Arkansas Class Members

### COUNT I
### VIOLATIONS OF THE DECEPTVIE TRADE PRACTICE ACT
### (ARK. CODE ANN. § 4-88-101 *et seq.)*

293.     Plaintiffs (for purposes of all Arkansas Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

294.     Plaintiffs bring this Count on behalf of the Arkansas Class Members against FCA.

295.     FCA, Plaintiffs, and Arkansas Class members are "persons" within the meaning of the Arkansas Deceptive Trade Practices Act ("Arkansas DTPA"), ARK. CODE ANN. § 4-88-102(5).

296.     The "Class Vehicles" are "goods" within the meaning of ARK. CODE ANN. § 4-88-102(4).

297.     The Arkansas DTPA prohibits "[d]eceptive and unconscionable trade practices," which include, but are not limited to, a list of enumerated items, including "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." ARK. CODE ANN. § 4-88-107(a)(10).  The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." ARK. CODE ANN. § 4-88-108.

298.    In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

299.    In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

300.    Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations.  They had no way of knowing that Defendants' representations were false and gravely misleading.  As alleged herein, Defendants engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the

defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

301.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.

302.    Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

303.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

304.    Defendants knew or should have known that their conduct violated the Arkansas DTPA.

305.    Defendants owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

  a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

  b.  Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

  c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

306.    Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations

regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

307. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

308. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

309.     Defendants' violations present a continuing risk to Plaintiffs as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

310.     Plaintiffs and Arkansas Class members seek monetary relief against Defendants in an amount to be determined at trial.  Plaintiffs and Arkansas Class members also seek punitive damages because Defendants engaged in aggravated and outrageous conduct with an evil mind.

311.     Plaintiffs also seek attorneys' fees and any other just and proper relief available.

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON ARKANSAS LAW)

312.     Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

313.     Plaintiffs bring this claim on behalf of the Arkansas Class members against FCA.

314.     As set forth above, Plaintiffs and other Arkansas Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

315.     As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel

fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

316. As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

317. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

318. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

319. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

320. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with

U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

321.    The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

322.    Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

323. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

324. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

325. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

326. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

327. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

328. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

329. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

330.     Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

331.     FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

332.     FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

333.     Accordingly, FCA is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

334.     FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (ARK. CODE ANN. § 4-2-314)

335. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

336. Plaintiffs bring this Count on behalf of the Arkansas Class members.

337. FCA was a merchant with respect to motor vehicles within the meaning of the ARK. CODE ANN. § 4-2-314.

338. Under ARK. CODE ANN. § 4-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other Class members purchased or leased their Class Vehicles from FCA.

339. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

340. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

341. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

342. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Arkansas Class members have been damaged in an amount to be proven at trial.

### F. Claims Brought on Behalf of the California Class Members

### COUNT I

### VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT
### (CAL. CIV. CODE § 1750, *et seq.*)

343. Plaintiffs (for purposes of all California Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

344. Plaintiffs bring this Count on behalf of the California Class members against FCA.

345. FCA is a "person" under CAL. CIV. CODE § 1761(c).

346. Plaintiffs and California Class members are "consumers" as defined by CAL. CIV. CODE § 1761(d), who purchased or leased one or more Class Vehicles.

347. The California Legal Remedies Act ("CLRA") prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer…" CAL. CIV. CODE § 1770(a).

348. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump

and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

349. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

350. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

351. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

352. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

353. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

354. Defendants knew or should have known that their conduct violated the California CLRA.

355. Defendants owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

    a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

    b.    Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

    c.    Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

356. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that

failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

357. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

358. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

359. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

360. Under CAL. CIV. CODE § 1780(a), Plaintiffs and California Class Members seek monetary relief against FCA for the harm caused by FCA's violations of the CLRA as alleged herein.

361.     Under Cal. Civ. Code § 1780(b), Plaintiffs and California Class Members seek an additional award against FCA of up to $5,000 for each Plaintiff who qualifies as a "senior citizen" or "disabled person" under the CLRA. FCA knew or should have known that their conduct was directed to one or more Plaintiffs or Class Members who are senior citizens or disabled persons. FCA's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person. One or more Plaintiffs or Class Members who are senior citizens or disabled persons are substantially more vulnerable to FCA's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from FCA's conduct.

362.     Plaintiffs also seek punitive damages against FCA because their unlawful conduct constitutes malice, oppression, and fraud under Cal. Civ. Code § 3294.

363.     Plaintiffs and California Class Members seek an order enjoining FCA's unfair or deceptive acts or practices, restitution, costs of court, and attorneys' fees under Cal. Civ. Code § 1780(e). and any other just and proper relief available under CLRA.

## COUNT II

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, *et seq.*)

364.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

365.     Plaintiffs bring this Count on behalf of the California Class members against FCA.

366.     California Business and Professional Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices."

367.    In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

368.    In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

369.    Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations.  They had no way of knowing that Defendants' representations were false and gravely misleading.  As alleged herein, Defendants engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the

defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

370. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

371. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

372. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

373. Defendants knew or should have known that their conduct violated the California UCL.

374. Defendants owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

    a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

    b. Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

    c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

376. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance

on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

377. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

378. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

379. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

380.     Plaintiffs and California Class members seek monetary relief against Defendants in an amount to be determined at trial.  Plaintiffs and California Class members also seek punitive damages because Defendants engaged in aggravated and outrageous conduct with an evil mind.

381.     Plaintiffs also seek attorneys' fees and any other just and proper relief available.

## COUNT III

### FRAUDULENT CONCEALMENT
### (BASED ON CALIFORNIA LAW)

382.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

383.     Plaintiffs bring this Count on behalf of the California Class members against FCA.

384.     As set forth above, Plaintiffs and other California Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

385.     As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

386.     As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

387.     As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

388.     As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

389.     As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

390.     Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are

"best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

391. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

392. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

393. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

394. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

395. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

396. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

397.    FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

398.    FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

399.    Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

400.    Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

401.    FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

402.    FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

403.    Accordingly, FCA is liable to Plaintiffs and other Class members for damages, including disgorgement of any profits and restitution, in an amount to be proved at trial, and for such other relief as may be just and proper.

404.    FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA.

FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT IV

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (CAL. CIV. CODE §§ 1791.1 AND 1792)

405. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

406. Plaintiffs bring this Count on behalf of the California Class members against FCA.

407. Plaintiffs and California Class members are "buyers" within the meaning of the CAL. CIV. CODE § 1791(b).

408. The Class Vehicles are "consumer goods" within the meaning of CAL. CIV. CODE § 1791(a).

409. FCA is the "manufacturer" of the Class Vehicles within the meaning of CAL. CIV. CODE § 1791(j).

410. Under of CAL. CIV. CODE § 1791, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purposes for which such goods are used was implied by law in the transactions when Plaintiffs and California Class members purchased or leased their Class Vehicles from FCA.

411. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel

fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

412. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

413. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and California Class members have been damaged in an amount to be proven at trial.

**G. Claims Brought on Behalf of the Colorado Class Members**

**COUNT I**

**VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
(COLO. REV. STAT. § 6-1-101 *et seq.)***

414. Plaintiffs (for purposes of all Colorado Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

415. Plaintiffs bring this Count on behalf of the Colorado Class members against FCA.

416. Colorado's Consumer Protection Act (the "Colorado CPA") prohibits a person from engaging in a "deceptive trade practice," which includes knowingly making "a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods." COLO. REV. STAT. § 6-1-105(1)(b), (e). The Colorado CPA further prohibits "represent[ing] that goods … are of a particular standard, quality, or grade … if he knows or should know that they are of another," "advertis[ing] goods … with intent not to sell them as advertised," and "fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." COLO. REV. STAT. § 6-1-105(1)(g), (i), & (u).

417. Defendants are a "person" under § 6-1-102(6) of the Colorado CPA, COLO. REV. STAT. § 6-1-101 *et seq.*

418. Plaintiffs and Colorado Class members are "consumers" for the purpose of COLO. REV. STAT. § 6-1-113(1)(a) who purchased or leased one or more Class Vehicle.

419. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission

of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

420. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

421. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

422. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

423. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

424. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

425. Defendants knew or should have known that their conduct violated the Colorado CPA.

426. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b.  Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

427. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material

concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

428. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

429. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

430. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Specifically: (1) the number of consumers affected by FCA's deceptive practices are in the hundreds of thousands nation-wide; (2) FCA has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class Members; and (3) so long as the Class Vehicles continue to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant.

431. Defendants' widespread false and deceptive advertisement directed to the market generally implicates a significant public impact under Colorado law.[71]

432. Pursuant to COLO. REV. STAT. § 6-1-113, Plaintiffs and Colorado Class members seek monetary relief against Defendants measured as the greater of (a) actual damages in an

---

[71] *See Electrology Lab., Inc. v. Kunze,* 169 F.Supp.3d 1119, 1162 (D. Colo. 2016); *see also Hall v. Walter,* 969 P.2d 224, 235 (Colo. 1998).

amount to be determined at trial and the discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for Plaintiffs and each Colorado Class member.

433.     Plaintiffs and Colorado Class members seek declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON COLORADO LAW)

434.     Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

435.     Plaintiffs bring this claim on behalf of the Colorado Class members against FCA.

436.     As set forth above, Plaintiffs and other Colorado Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

437.     As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

438.     As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

439.     As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

440.     As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

441.     As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

442.     Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

443.     The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other

Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

444.    Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

445.    As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial

disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

446.    FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

447.    Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

448.    FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

449.    FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs

and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

450. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

451. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

452. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained

damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

453.    FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

454.    FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

455.    Accordingly, FCA is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

456.    FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (COLO. REV. STAT. § 4-2-314)

457.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

458. Plaintiffs bring this Count on behalf of the Colorado Class members against FCA.

459. FCA was a merchant with respect to motor vehicles within the meaning of the COLO. REV. STAT. § 4-2-314.

460. Under COLO. REV. STAT. § 4-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

461. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

462. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or

other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

463. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Colorado Class members have been damaged in an amount to be proven at trial.

## COUNT IV

## UNJUST ENRICHMENT

464. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

465. Plaintiffs bring this Count on behalf of the Colorado Class members against FCA.

466. This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class Members.

467. As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, FCA charged a higher price for the Class Vehicles than the Vehicles' true value and FCA, therefore, obtained monies that rightfully belong to Plaintiffs and other Class members.

468. FCA enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members, who paid a higher price for their vehicles that actually had lower values.

469. FCA has received and retained unjust benefits from the Plaintiffs and other Class members, and inequity has resulted.

470. Thus, all Plaintiffs and Class Members conferred a benefit on FCA.

471.    It would be inequitable and unconscionable for FCA to retain these wrongfully obtained benefits.

472.    Because FCA concealed its fraud and deception, Plaintiffs and other Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from FCA's misconduct.

473.    FCA knowingly accepted and retained the unjust benefits of its fraudulent conduct.

474.    As a result of FCA's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class members, in an amount to be proven at trial. Plaintiffs and other Class members, therefore, seek an order establishing FCA as a constructive trustee of the profits unjustly obtained, plus interest.

### H. Claims Brought on Behalf of the Connecticut Class Members

### COUNT I

### VIOLATIONS OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT (CONN. GEN. STAT. ANN. § 42-110A *et seq.*)

475.    Plaintiffs (for purposes of all Connecticut Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

476.    Plaintiffs brings this Count on behalf of the Connecticut Class members against FCA.

477.    Defendants and Plaintiffs and Connecticut Class members are each "persons" as defined by CONN. GEN. STAT. ANN. § 42-110a(3).

478.    The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. ANN. § 42-110b(a). The

Connecticut UTPA further provides a private right of action under CONN. GEN. STAT. ANN. § 42-110g(a).

479. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

480. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

481. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the

defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

482. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

483. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

484. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

485. Defendants knew or should have known that their conduct violated the Connecticut UTPA.

486. Defendants owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

    a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

    b. Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

    c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

487. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations

regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

488. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

489. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

490.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

491.    Plaintiffs and Connecticut Class members seek monetary relief against Defendants in amount to be determined at trial. Plaintiffs and Connecticut Class members are seek punitive damages because Defendants engaged in aggravated and outrageous conduct with an evil motive.

492.    Plaintiffs and Connecticut Class members seek attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON CONNECTICUT LAW)

493.    Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

494.    Plaintiffs bring this claim on behalf of the Connecticut Class members against FCA.

495.    As set forth above, Plaintiffs and other Connecticut Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

496.    As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and

(more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

497.     As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

498.     As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

499.     As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

500.     As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

501.     Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the

Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

502.	The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

503.	Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine

systems, and that Class members would be required to bear the cost of the damage to their vehicles.

504.    As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

505.    FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

506.    Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

507. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

508. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

509. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

510. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in

the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

511.    Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

512.    FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

513.    FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

514.    Accordingly, FCA is liable to Plaintiffs and Connecticut Class members for damages in an amount to be proved at trial.

515.    FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA.

FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## UNJUST ENRICHMENT

516.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

517.    Plaintiffs bring this Count on behalf of the Connecticut Class members against FCA.

518.    This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class Members.

519.    As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, FCA charged a higher price for the Class Vehicles than the Vehicles' true value and FCA, therefore, obtained monies that rightfully belong to Plaintiffs and other Class members.

520.    FCA enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members, who paid a higher price for their vehicles that actually had lower values.

521.    FCA has received and retained unjust benefits from the Plaintiffs and other Class members, and inequity has resulted.

522.    Thus, all Plaintiffs and Class Members conferred a benefit on FCA.

523.    It would be inequitable and unconscionable for FCA to retain these wrongfully obtained benefits.

524. Because FCA concealed its fraud and deception, Plaintiffs and other Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from FCA's misconduct.

525. FCA knowingly accepted and retained the unjust benefits of its fraudulent conduct.

526. As a result of FCA's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class members, in an amount to be proven at trial. Plaintiffs and other Class members, therefore, seek an order establishing FCA as a constructive trustee of the profits unjustly obtained, plus interest.

### I. Claims Brought on Behalf of the District of Columbia (D.C.) Class Members

### COUNT I

### VIOLATIONS OF THE CONSUMER PROTECTION PROCEDURES ACT
### (D.C. CODE § 28-3901, *et seq.*)

527. Plaintiffs (for purposes of all D.C. Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

528. Plaintiffs bring this Count on behalf of the D.C. Class members against FCA.

529. FCA is a "person" under the Consumer Protection Procedures Act ("D.C. CPPA") D.C. CODE § 28-3901 (a)(1).

530. Plaintiff and D.C. Class members are "consumers," as defined by D.C. CODE § 28-3901(1)(2), who purchased or leased one or more Class Vehicles.

531. FCA's actions as set forth herein constitute "trade practices" under D.C. CODE § 28-3901.

532. The D.C. CPPA deems it unlawful for "any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including to: (a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do

not have; . . . (d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another; (e) misrepresent as to a material fact which has a tendency to mislead; . . . (f) fail to state a material fact if such failure tends to mislead; . . . [or] (h) advertise or offer goods. . . without the intent to sell them as advertised or offered." D.C. CODE § 28-3904.

533.    In the course of Defendants' business, it willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Accordingly, Defendants engaged in unfair and deceptive trade practices because its conduct (1) offends public policy as it has been established by statutes, the common law or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers, competitors, or other business persons. The harm caused to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and Defendants fraudulently concealed the defective nature of the Class Vehicles from consumers.

534.    Defendants has also engaged in deceptive conduct because (1) it made representations, omissions, or engaged in other conduct likely to mislead consumers; (2) consumers interpret the message reasonably under the circumstances; and (3) the misleading representation, omission, or practice is material—that is, likely to affect consumer decisions or conduct, and did indeed affect said decisions.

535.    Particularly in light of Defendants' national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel

fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

536.    In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

537.    Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

538.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.

539.    Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

540.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

541. Defendants knew or should have known that their conduct violated the D.C. CPPA.

542. Defendants owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

543. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed

facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

544.    Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

545.    Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

546.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

547.    Plaintiffs and D.C. Class members seek monetary relief against Defendants in an amount to be determined at trial. Plaintiffs and D.C. Class members also seek punitive damages because Defendants engaged in aggravated and outrageous conduct with an evil motive.

548.    Plaintiffs and D.C. Class members seek attorneys' fees, and any other just and proper relief available under the D.C. CPPA.

**COUNT II**
**FRAUDULENT CONCEALMENT**
**(BASED ON D.C. LAW)**

549.     Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

550.     Plaintiffs bring this claim on behalf of the D.C. Class members against FCA.

551.     As set forth above, Plaintiffs and other D.C. Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

552.     As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

553.     As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

554.     As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

555.     As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

556.     As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

557.     Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

558.     The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material

concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

559.    Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

560.    As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

561.     FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

562.     Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

563.     FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

564.     FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

565.     FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent

scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

566.    Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

567.    Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

568.    FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement

of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

569.     FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

570.     Accordingly, FCA is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

571.     FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (D.C. CODE  § 28:2-314)

572.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

573.     Plaintiffs bring this Count on behalf of the D.C. Class members against FCA.

574.     FCA was a merchant with respect to motor vehicles within the meaning of the D.C. CODE § 28:2-104(1).

575.     Under D.C. CODE § 28:2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

576. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

577. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

578. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and D.C. Class members have been damaged in an amount to be proven at trial.

**J. Claims Brought on Behalf of the Delaware Class Members**

**COUNT I**

**VIOLATIONS OF THE DELAWARE CONSUMERS FRAUD ACT
(DEL. CODE §§ 2415, *ET SEQ.*)**

579.    Plaintiffs (for purposes of all Delaware Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

580.    Plaintiffs bring this Count on behalf of the Delaware Class members against FCA.

581.    FCA is a "person" within the meaning of 6 DEL. CODE § 2511(7).

582.    The Delaware Consumer Fraud Act ("Delaware CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 DEL. CODE § 2513(a).

583.    In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

584.    In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

585.    Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations.  They had no way of knowing that Defendants' representations were false and gravely misleading.  As alleged herein, Defendants engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

586.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.

587.    Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

588.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

589.    Defendants knew or should have known that their conduct violated the Delaware CFA.

590. Defendants owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

591. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material

concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

592.    Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

593.    Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

594.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

595.    Plaintiffs and Delaware Class members seek monetary relief against Defendants in an amount to be determined at trial. Plaintiffs and Delaware Class members also seek punitive damages because Defendants engaged in aggravated and outrageous conduct with an evil motive.

596.    Plaintiffs and Delaware Class members seek attorneys' fees, and any other just and proper relief available under the Delaware CFA.

## COUNT II
## FRAUDULENT CONCEALMENT
### (BASED ON DELAWARE LAW)

597.    Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

598.     Plaintiffs bring this claim on behalf of the Delaware Class members against FCA.

599.     As set forth above, Plaintiffs and other Delaware Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

600.     As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

601.     As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

602.     As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

603.     As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the

CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

604.     As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

605.     Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

606.     The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that

were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

607. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

608. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

609. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no

way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

610. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

611. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

612. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

613. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class

members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

614.     Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

615.     Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

616.     FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure

of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

617.     FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

618.     Accordingly, FCA is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

619.     FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (6 DEL. CODE § 2-314)

620.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

621.     Plaintiffs bring this Count on behalf of the Delaware Class members against FCA.

622.     FCA was a merchant with respect to motor vehicles within the meaning of the 6 DEL. CODE § 2-104(1).

623.     Under 6 DEL. CODE § 2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

624. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

625. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

626. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and other Class members have been damaged in an amount to be proven at trial.

### K. Claims Brought on Behalf of the Florida Class Members

### COUNT I

### VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT
### (FLA. STAT. § 501.201, *et seq.*)

627.    Plaintiffs (for purposes of all Florida Class member Counts) incorporates by reference all paragraph as though fully set forth herein.

628.    Plaintiffs bring this Count on behalf of the Florida Class members against FCA.

629.    Plaintiffs and Florida Class members are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"). FLA. STAT. § 501.203(7).

630.    FCA engaged in "trade or commerce" within the meaning of FLA. STAT. § 501.203(8).

631.    The FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce…" FLA. STAT. § 501.204(1).

632.    In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

633.    In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class

Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

634. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

635. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

636. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

637. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

638. Defendants knew or should have known that their conduct violated the Florida UDTPA.

639. Defendants owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

640. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking

time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

641. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

642. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

643. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

644. Plaintiffs and Florida Class members are entitled to recover actual damages under FLA. STAT. § 501.211(2) attorneys' fees under FLA. STAT. § 501.2105(1). Plaintiffs and the Class Members seek punitive damages because Defendants engaged in aggravated and outrageous conduct with an evil motive.

645. Plaintiffs and Florida Class members also seek an order enjoining FCA's unfair, unlawful and/or deceptive practices, declaratory relief, and any other just and proper relief available under the Florida UDTPA.

## COUNT II
## FRAUDULENT CONCEALMENT
### (BASED ON FLORIDA LAW)

646. Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

647. Plaintiffs bring this claim on behalf of the Florida Class members against FCA.

648. As set forth above, Plaintiffs and other Florida Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

649. As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

650. As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

651. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

652. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the

required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

653.     As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

654.     Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

655.     The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the

CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

656. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

657. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

658. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an

internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

659.    Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

660.    FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

661.    FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

662.    FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class

members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

663. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

664. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

665. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure

of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

666. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

667. Accordingly, FCA is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

668. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (FLA. STAT. § 672.314)

669. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

670. Plaintiffs bring this Count on behalf of the Florida Class members against FCA.

671. FCA was a merchant with respect to motor vehicles within the meaning of the FLA STAT. 672.104(1).

672. Under FLA. STAT. § 672.314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

673. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

674. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

675. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Florida Class members have been damaged in an amount to be proven at trial.

## COUNT IV

## UNJUST ENRICHMENT

676. Plaintiffs incorporate all paragraphs as though fully set forth herein.

677. Plaintiffs bring this Count on behalf of the Florida Class members against FCA.

678. This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class members.

679. As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, FCA charged a higher price for the Class Vehicles than the Vehicles' true value and FCA, therefore, obtained monies that rightfully belong to Plaintiffs and other Class members.

680. FCA enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members, who paid a higher price for their vehicles that actually had lower values.

681. FCA has received and retained unjust benefits from the Plaintiffs and other Class members, and inequity has resulted.

682. Thus, all Plaintiffs and Class Members conferred a benefit on FCA.

683. It would be inequitable and unconscionable for FCA to retain these wrongfully obtained benefits.

684. Because FCA concealed its fraud and deception, Plaintiffs and other Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from FCA's misconduct.

685. FCA knowingly accepted and retained the unjust benefits of its fraudulent conduct.

686. As a result of FCA's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class members, in an amount to be proven at trial. Plaintiffs and other Class members, therefore, seek an order establishing FCA as a constructive trustee of the profits unjustly obtained, plus interest.

### L. Claims Brought on Behalf of the Georgia Class Members

### COUNT I

### VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT
### (GA. CODE ANN. § 10-1-390 *et seq.*)

687. Plaintiffs (for purposes of all Georgia member Counts) incorporate all paragraphs as though set forth herein.

688. Plaintiffs bring this Count on behalf of the Georgia Class members against FCA.

689. The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, GA. CODE ANN. § 10-1-393(a), including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised." GA. CODE ANN. § 10-1-393(b).

690. Plaintiffs and Georgia Class Members are "consumers" within the meaning of GA. CODE ANN. § 10-1-393(b).

691. At all relevant times, FCA has engaged in "trade or commerce" within the meaning of GA. CODE ANN. § 10-1-393(b).

692. Plaintiffs will make a demand in satisfaction of GA. CODE ANN. § 10-1-399(b), and may amend this Complaint to assert claims under the Georgia FBPA once the required notice period has elapsed.

693. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Georgia FBPA.

## COUNT II

## VIOLATION OF GEORGIA UNIFORM DECEPTIVE TRADE PRACTICE ACT
## (GA. CODE ANN. § 10-1-370 *et seq,*)

694.    Plaintiffs incorporate all paragraphs as though fully set forth herein.

695.    Plaintiffs bring this claim on behalf of the Georgia Class members against FCA.

696.    Georgia's Uniform Deceptive Trade Practices Act (Georgia UDTPA) prohibits "deceptive trade practices," which include "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised." GA. CODE ANN. § 10-1-372.

697.    Defendant FCA, Plaintiffs and Georgia Class members are "persons" within the meaning of GA. CODE ANN. § 10-1-371(5).

696.    In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

697.     In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

698.     Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations.  They had no way of knowing that Defendants' representations were false and gravely misleading.  As alleged herein, Defendants engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

699.     Defendants' actions as set forth above occurred in the conduct of trade or commerce.

700.     Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

701.     Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

702.     Defendants knew or should have known that their conduct violated the Georgia UDTPA.

703. Defendants owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

    a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

    b. Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

    c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

704. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material

concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

705. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

706. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

707. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

708. Plaintiffs and Georgia Class members seek monetary relief against Defendants in an amount to be determined at trial. Plaintiffs and the Class Members also seek punitive damages because Defendants engaged in aggravated and outrageous conduct with an evil motive.

709. Plaintiffs and Georgia Class members seek an order enjoining FCA's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under GA. CODE ANN. § 10-1-373.

## COUNT III

## FRAUDULENT CONCEALMENT
## (BASED ON GEORGIA LAW)

710.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

711.     Plaintiffs bring this claim on behalf of the Georgia Class members against FCA.

712.     As set forth above, Plaintiffs and other Georgia Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

713.     As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

714.     As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

715.     As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

716.     As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the

CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

717. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

718. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

719. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that

were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

720. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

721. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

722. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no

way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

723.    Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

724.    FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

725.    FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

726.    FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class

members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

727.    Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

728.    Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

729.    FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure

of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

730.     FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

731.     Accordingly, FCA is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

732.     FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT IV

## UNJUST ENRICHMENT

733.     Plaintiffs incorporate all paragraphs as though fully set forth herein.

734.     Plaintiffs bring this Count on behalf of the Georgia Class members against FCA.

735.     This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class members.

736.     As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, FCA charged a higher price for the Class Vehicles than the Vehicles' true value and FCA, therefore, obtained monies that rightfully belong to Plaintiffs and other Class members.

737.    FCA enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members, who paid a higher price for their vehicles that actually had lower values.

738.    FCA has received and retained unjust benefits from the Plaintiffs and other Class members, and inequity has resulted.

739.    Thus, all Plaintiffs and Class members conferred a benefit on FCA.

740.    It would be inequitable and unconscionable for FCA to retain these wrongfully obtained benefits.

741.    Because FCA concealed its fraud and deception, Plaintiffs and other Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from FCA's misconduct.

742.    FCA knowingly accepted and retained the unjust benefits of its fraudulent conduct.

743.    As a result of FCA's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class members, in an amount to be proven at trial. Plaintiffs and other Class members, therefore, seek an order establishing FCA as a constructive trustee of the profits unjustly obtained, plus interest.

### M. Claims Brought on Behalf of the Hawaii Class Members

### COUNT I

### UNFAIR AND DECEPTIVE ACTS IN VIOLATION OF HAWAII LAW
### (HAW. REV. STAT. ANN. § 480, *et seq.*)

744.    Plaintiffs (for purposes of all Hawaii Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

745.    Plaintiffs bring this Count on behalf of the Hawaii Class members against FCA.

746. HAW. REV. STAT. ANN. § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

747. FCA is a "person" under HAW. REV. STAT. ANN. § 480-1.

748. Plaintiffs and Hawaii Class members are "consumer[s]" as defined by HAW. REV. STAT. ANN. § 480-1, who purchased or leased the Class Vehicles.

749. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

750. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

751. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false

and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

752. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

753. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

754. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

755. Defendants knew or should have known that their conduct violated the Hawaii law regarding unfair or deceptive acts in trade or commerce.

756. Defendants owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

   a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

   b. Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

757. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

758. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

759. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the

benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

760. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest as their actions offend public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

761. Under HAW. REV. STAT. ANN. § 480-13.5, Plaintiffs and the Class members seek an additional award against FCA of up to $10,000 for each violation directed at a Hawaii elder. FCA knew or should have known that their conduct was directed to one or more Plaintiffs and Hawaii Class members who are elders. FCA's conduct caused one or more of these elders to suffer a substantial loss of property set aside for retirement or for personal or family care or maintenance, or assets essential to the health or welfare of the elder. Plaintiffs and Hawaii Class members who are elders are substantially more vulnerable to FCA's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from FCA's conduct.

762. Pursuant to HAW. REV. STAT. ANN. § 480-13, Plaintiffs and Hawaii Class members seek monetary relief against FCA measured as the greater of (a) $1,000 and (b) threefold actual damages in an amount to be determined at trial.

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON HAWAII LAW)

763. Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

764. Plaintiffs bring this claim on behalf of the Hawaii Class members against FCA.

765. As set forth above, Plaintiffs and other Hawaii Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

766. As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

767. As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

768. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

769. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the

required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

770. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

771. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

772. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class members. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the

CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

773. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

774. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

775. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an

internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

776.    Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

777.    FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

778.    FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

779.    FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class

members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

780.     Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

781.     Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

782.     FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure

of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

783. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

784. Accordingly, FCA is liable to Plaintiffs and Hawaii Class members for damages in an amount to be proved at trial.

785. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (HAW. REV. STAT. ANN. § 490:2-314)

786. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

787. Plaintiffs bring this Count on behalf of the Hawaii Class members against FCA.

788. FCA was a merchant with respect to motor vehicles within the meaning of the HAW. REV. STAT. ANN. § 490:2-104(1).

789. Under HAW. REV. STAT. ANN. § 490:2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

790. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

791. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

792. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Hawaii Class members have been damaged in an amount to be proven at trial.

**N. Claims brought on behalf of the Idaho Class Members**

**COUNT I**

**VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT
(IDAHO CIV. CODE § 48-601 *et seq.*)**

793. Plaintiffs (for purposes of all Idaho Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

794. Plaintiffs bring this Count on behalf of the Idaho Class members against FCA.

795. FCA is a "person" under the Idaho Consumer Protection Act ("Idaho CPA"). IDAHO CIV. CODE § 48-602(1).

796. FCA'S acts or practices as set forth above and herein occurred in the conduct of "trade" or "commerce" under IDAHO CIV. CODE § 48-602(2).

797. IDAHO CIV. CODE § 48-603 prohibits deceptive business practices including but not limited to (1) representing that the Class Vehicles have characteristics, uses, and benefits which they do not have; (2) representing that the Class Vehicles are of a particular standard, quality, and grade when they do not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; (4) engaging in acts or practices which are otherwise misleading, false, or deceptive to the consumer; and (5) engaging in any unconscionable method, act or practice in the conduct of trade or commerce.

798. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

799.    In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

800.    Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations.  They had no way of knowing that Defendants' representations were false and gravely misleading.  As alleged herein, Defendants engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

801.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.

802.    Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

803.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

804.    Defendants knew or should have known that their conduct violated the Idaho CPA.

805. Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

   a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

   b. Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

   c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

806. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material

concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

807. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

808. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

809. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest as their actions offend public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

810. Plaintiffs and Idaho Class members seek greater of $1,000 or actual ascertainable damages, including out-of-pocket and/or benefit of the bargain, attorneys' fees and any other just and proper relief available under the Idaho CPA.

811. Plaintiffs and Idaho Class members also seeks punitive damages against FCA because their conduct FCA's conduct evidences an extreme deviation from reasonable standards. Defendants unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON IDAHO LAW)

812. Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

813. Plaintiffs bring this claim on behalf of the Idaho Class members against FCA.

814. As set forth above, Plaintiffs and other Idaho Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

815. As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

816. As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

817. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

818. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

819. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

820. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

821. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material

concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

822.    Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

823.    As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

824.    FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

825.    Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

826.    FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

827.    FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

828.    FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent

scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

829.     Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

830.     Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

831.     FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement

of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

832.    FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

833.    Accordingly, FCA is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

834.    FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## UNJUST ENRICHEMENT

835.    Plaintiffs incorporate all paragraphs as though fully set forth herein.

836.    Plaintiffs bring this Count on behalf of the Idaho Class members against FCA.

837.    This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class members.

838.    As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, FCA charged a higher price for the Class Vehicles than the Vehicles' true value and FCA, therefore, obtained monies that rightfully belong to Plaintiffs and other Class members.

839. FCA enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members, who paid a higher price for their vehicles that actually had lower values.

840. FCA has received and retained unjust benefits from the Plaintiffs and other Class members, and inequity has resulted.

841. Thus, all Plaintiffs and Class members conferred a benefit on FCA.

842. It would be inequitable and unconscionable for FCA to retain these wrongfully obtained benefits.

843. Because FCA concealed its fraud and deception, Plaintiffs and other Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from FCA's misconduct.

844. FCA knowingly accepted and retained the unjust benefits of its fraudulent conduct.

845. As a result of FCA's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class members, in an amount to be proven at trial. Plaintiffs and other Class members, therefore, seek an order establishing FCA as a constructive trustee of the profits unjustly obtained, plus interest.

**O. Claims Brought on Behalf of the Illinois Class Members**

**COUNT I**

**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1 *et seq.* AND 720 ILCS 295/1A)**

846. Plaintiffs (for purposes of all Illinois Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

847. Plaintiffs bring this Count on behalf of the Illinois Class members against FCA.

848. Defendants are a "person" as that term is defined in 815 ILCS 505/1(c).

849. Plaintiffs and Illinois ClassmMembers are "consumers" as that term is defined in 815 ILCS 505/1(e).

850. The purpose of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") is to enjoin trade practices which confuse or deceive the consumer. The Illinois CFA prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission of such material fact... in the conduct of trade or commerce... whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

851. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

852. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

853. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

854. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

855. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

856. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

857. Defendants knew or should have known that their conduct violated the Illinois CFA.

858. Defendants owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

859. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material

concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

860.    Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

861.    Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

862.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Specifically: (1) the number of consumers affected by FCA's deceptive practices are in the hundreds of thousands nation-wide; (2) FCA has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class Members; and (3) so long as the Class Vehicles continue to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant.

863.    Pursuant to 815 ILCS 505.10a(a), Plaintiffs and Illinois Class members seek monetary relief against Defendants in the amount of actual damages in an amount to be determined at trial as well as punitive damages because FCA acted with fraud and/or malice and/or was grossly negligent.

864.    Plaintiffs and Illinois Class members seek declaratory relief, attorneys' fees, and any other just and proper relief available under the Illinois CFA.

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON ILLINOIS LAW)

865. Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

866. Plaintiffs bring this claim on behalf of the Illinois Class members against FCA.

867. As set forth above, Plaintiffs and other Illinois Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

868. As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

869. As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

870. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain

of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

871.     As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

872.     As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

873.     Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

874.     The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced

and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

875. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

876. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole

truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

877. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

878. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

879. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

880. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

881.     FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

882.     Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

883.     Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

884. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

885. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

886. Accordingly, FCA is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

887. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (810 ILCS 5/2-314)

888. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

889. Plaintiffs bring this Count on behalf of the Illinois Class members against FCA.

890. FCA was a merchant with respect to motor vehicles within the meaning of the 810 ILCS 5/2-314.

891. Under 810 ILCS 5/2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and Illinois Class members purchased or leased their Class Vehicles from FCA.

892. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

893. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

894. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Illinois Class members have been damaged in an amount to be proven at trial.

## COUNT IV

## UNJUST ENRICHMENT

895. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

896. Plaintiffs bring this Count on behalf of the Illinois Class members against FCA.

897. This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class Members.

898. As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, FCA charged a higher price for the Class Vehicles than the Vehicles' true value and FCA, therefore, obtained monies that rightfully belong to Plaintiffs and other Class members.

899. FCA enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members, who paid a higher price for their vehicles that actually had lower values.

900. FCA has received and retained unjust benefits from the Plaintiffs and other Class members, and inequity has resulted.

901. Thus, all Plaintiffs and Class members conferred a benefit on FCA.

902. It would be inequitable and unconscionable for FCA to retain these wrongfully obtained benefits.

903. Because FCA concealed its fraud and deception, Plaintiffs and other Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from FCA's misconduct.

904. FCA knowingly accepted and retained the unjust benefits of its fraudulent conduct.

905. As a result of FCA's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class members, in an amount to be proven at trial. Plaintiffs and other Class members, therefore, seek an order establishing FCA as a constructive trustee of the profits unjustly obtained, plus interest.

**P. Claims Brought on Behalf of the Indiana Class Members**

**COUNT I**

**VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
(IND. CODE § 24-5-0.5-3)**

906. Plaintiffs (for purposes of all Indiana Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

907. Plaintiffs bring this Count on behalf of the Indiana Class members against FCA.

908. FCA is a "person" within the meaning of IND. CODE § 24-5-0.5-2(2) and a "supplier" within the meaning of IND. CODE § 24-5-0.5-2(a)(3).

909. Plaintiffs' and Indiana Class Members' purchases and leases of Class Vehicles are "consumer transactions" within the meaning of IND. CODE § 24-5-0.5-2(a)(1).

910. Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a person or supplier from engaging in "an unfair, abusive or deceptive act, or omission, or practice in connection with a consumer transaction." "Deceptive acts" include: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits if does not have which the supplier knows or should reasonably know it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; . . . . . . . (c) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of

the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false." IND. CODE § 24-5-0.5-3.

911. Plaintiffs will make a demand in satisfaction of IND. CODE § 24-5-0.5-5(a), and may amend this Complaint to assert claims under the Indiana DCSA once the required notice period elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Indiana DCSA.

## COUNT II

## FRAUD BY CONCEALMENT
## (BASED ON INDIANA LAW)

912. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

913. Plaintiffs bring this Count on behalf of the Indiana Class members against FCA.

914. As set forth above, Plaintiffs and other Indiana Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

915. As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel

fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

916.    As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

917.    As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

918.    As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

919.    As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

920.    Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with

U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

921. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

922. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

923. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

924. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

925. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

926. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

927. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

928. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

929. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

930. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

931. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

932. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

933. Accordingly, FCA is liable to Plaintiffs and Indiana Class members for damages in an amount to be proved at trial.

934. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (IND. CODE § 26-1-2-314)

935.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

936.     Plaintiffs bring this Count on behalf of the Indiana Class members against FCA.

937.     FCA was a merchant with respect to motor vehicles within the meaning of the IND. CODE § 26-1-2-314.

938.     Under IND. CODE § 26-1-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

939.     The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

940.     FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

941.     As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and other Class members have been damaged in an amount to be proven at trial.

## COUNT IV

## UNJUST ENRICHMENT

942.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

943.     Plaintiffs bring this Count on behalf of the Indiana Class members against FCA.

944.     This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class members.

945.     As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, FCA charged a higher price for the Class Vehicles than the Vehicles' true value and FCA, therefore, obtained monies that rightfully belong to Plaintiffs and other Class members.

946.     FCA enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members, who paid a higher price for their vehicles that actually had lower values.

947.     FCA has received and retained unjust benefits from the Plaintiffs and other Class members, and inequity has resulted.

948.     Thus, all Plaintiffs and Class members conferred a benefit on FCA.

949. It would be inequitable and unconscionable for FCA to retain these wrongfully obtained benefits.

950. Because FCA concealed its fraud and deception, Plaintiffs and other Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from FCA's misconduct.

951. FCA knowingly accepted and retained the unjust benefits of its fraudulent conduct.

952. As a result of FCA's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class members, in an amount to be proven at trial. Plaintiffs and other Class members, therefore, seek an order establishing FCA as a constructive trustee of the profits unjustly obtained, plus interest.

### Q. Claims Brought on Behalf of the Iowa Class Members

### COUNT I

### VIOLATION OF IOWA CONSUMER FRAUDS ACT
### (IOWA CODE § 714H.1 *et seq.)*

953. Plaintiffs (for purposes of the Iowa Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

954. Plaintiffs bring this Count on behalf of the Iowa Class members against FCA.

955. FCA is a "person" under IOWA CODE § 714H.2(7).

956. Plaintiffs and Iowa Class members are "consumers" as defined by IOWA CODE § 714H.2(3), who purchased or leased one or more Class Vehicles.

957. The Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentations, concealment,

suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise." IOWA CODE § 714H.3.

958. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

959. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

960. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated

methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

961. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

962. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

963. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

964. Defendants knew or should have known that their conduct violated the Iowa CFA.

965. Defendants owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

    a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

    b.  Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

    c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding

material facts from Plaintiffs and the Class that contradicted these representations.

966. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

967. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

968. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These

injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

969.     Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

970.     Pursuant to IOWA CODE § 714H.5, Plaintiffs and Iowa Class members seek an order enjoining FCA's unfair and/or deceptive acts or practices; actual damages; in addition to an award of actual damages, statutory damages up to three times the amount of actual damages awarded as a result of FCA's willful and wanton disregard for the rights or safety of others; attorneys' fees, and such other equitable relief as the Court deems necessary to protect the public from further violations of the Iowa CFA.

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON IOWA LAW)

971.     Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

972.     Plaintiffs bring this claim on behalf of the Iowa Class members against FCA.

973.     As set forth above, Plaintiffs and other Iowa Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

974.     As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and

(more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

975. As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

976. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

977. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

978. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

979. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the

Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

980. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

981. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine

systems, and that Class members would be required to bear the cost of the damage to their vehicles.

982.     As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

983.     FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

984.     Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

985.     FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

986.     FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

987.     FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

988.     Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in

the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

989.    Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

990.    FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

991.    FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

992.    Accordingly, FCA is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

993.    FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA.

FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**R.  Claims Brought on Behalf of the Kansas Class Members**

**COUNT I**

**VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT**
**(KAN. STAT. ANN. § 50-623 *et seq.*)**

994.    Plaintiffs (for purposes of all Kansas Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

995.    Plaintiffs bring this Count on behalf of the Kansas Class members against FCA.

996.    FCA is a "supplier" under the Kansas Consumer Protection Act ("Kansas CPA"). KAN. STAT. ANN. § 50-624(1).

997.    Plaintiffs and Kansas Class members are "consumers," within the meaning of KAN. STAT. ANN. § 50-624(b), who purchased or leased one or more Class Vehicles.

998.    The sale or lease of the Class Vehicles to the Kansas Class members was a "consumer transaction" within the meaning of KAN. STAT. ANN. § 50-624(c).

999.    The Kansas CPA states that "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." KAN. STAT. ANN. § 50-626(a), and that deceptive acts or practices include: (1) knowingly making representations or with reason to know that "(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have," and "(D) property or services are of a particular standard, quality, grade, style, or model, if they are of another which differs materiality from the representation;" (2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact," and "(3) the willful failure to state a material fact, or the willful concealment, suppression, or omission of a material

fact." The Kansas CPA also provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." KAN. STAT. ANN. § 50-627(a).

1000. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1001. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1002. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems

are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1003. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1004. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1005. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1006. Defendants knew or should have known that their conduct violated the Kansas CPA.

1007. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

    a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

    b. Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

    c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1008. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1009. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1010. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1011.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Specifically: (1) the number of consumers affected by FCA's deceptive practices are in the hundreds of thousands nation-wide; (2) FCA has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class Members; and (3) so long as the Class Vehicles continue to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant.

1012.   Pursuant to KAN. STAT. ANN. § 50-634, Plaintiffs and Kansas Class members seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for Plaintiffs and each Kansas Class member. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1013.   Plaintiffs and Kansas Class members also seek an order enjoining FCA's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Kansas CFA.

### COUNT II
### FRAUDULENT CONCEALMENT
### (BASED ON KANSAS LAW)

1014.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1015.   Plaintiffs bring this claim on behalf of the Kansas Class members against FCA.

1016.   As set forth above, Plaintiffs and other Kansas Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages

stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1017.  As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1018.  As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1019.  As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

1020.  As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1021.  As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system

components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1022.    Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1023.    The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1024.    Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their

vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1025.    As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1026.    FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate

Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1027. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1028. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1029. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1030. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1031. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class

Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1032. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1033. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1034. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1035.    Accordingly, FCA is liable to Plaintiffs and Kansas Class members for damages in an amount to be proved at trial.

1036.    FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(KAN. STAT. ANN. § 84-2-314)**

1037.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1038.    Plaintiffs bring this Count on behalf of the Kansas Class members against FCA.

1039.    FCA was a merchant with respect to motor vehicles within the meaning of the KAN. STAT. ANN. § 84-2-314.

1040.    Under KAN. STAT. ANN. § 84-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

1041.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design

- 256 -

and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

1042.    FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

1043.    As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and other Class members have been damaged in an amount to be proven at trial.

### S.  Claims Brought on Behalf of the Kentucky Class Members

### COUNT I

### VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT
### (KY. REV. STAT. ANN. § 367.110 *et seq.*)

1044.    Plaintiffs (for purposes of all Kentucky Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

1045.    Plaintiffs bring this Count on behalf of the Kentucky Class members against FCA.

1046.    FCA, Plaintiffs and each Kentucky Class member are "person[s]" within the meaning of the KY. REV. STAT. ANN. § 367.110(1).

1047. FCA engaged in "trade" or "commerce" within the meaning of KY. REV. STAT. ANN. § 367.110(2).

1048. The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." KY. REV. STAT. ANN. § 367.170(1).

1049. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1050. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1051. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false

and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1052. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1053. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1054. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1055. Defendants knew or should have known that their conduct violated the Kentucky CPA.

1056. Defendants owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

   a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

   b. Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1057. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1058. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1059. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the

benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1060.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1061.    Pursuant to KY. REV. STAT. ANN. § 367.220, Plaintiffs and Kentucky Class members seek to recover actual damages in an amount to be determined at trial; declaratory relief, attorneys' fees, and any other just and proper relief available under the Kentucky CPA.

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON KENTUCKY LAW)

1062.    Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

1063.    Plaintiffs bring this claim on behalf of the Kentucky Class members against FCA.

1064.    As set forth above, Plaintiffs and other Kentucky Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1065.    As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and

(more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1066. As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1067. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

1068. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1069. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1070. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the

Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1071.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1072.   Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine

systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1073.  As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1074.  FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1075.  Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1076. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1077. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1078. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1079. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in

the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1080.    Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1081.    FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1082.    FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1083.    Accordingly, FCA is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

1084.    FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA.

FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### T.  Claims Brought on Behalf of the Louisiana Class Members

**COUNT I**

**VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (LA. STAT. ANN. § 51:1401 *et seq.*)**

1085.  Plaintiffs (for purposes of all Louisiana Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

1086.  Plaintiffs bring this Count on behalf of the Louisiana Class members against FCA.

1087.  FCA, Plaintiffs and Louisiana Class members are "persons" within the meaning of the LA. STAT. ANN. § 51:1402(8).

1088.  Plaintiffs and Louisiana Class members are "consumers" within the meaning of the LA. STAT. ANN. § 51:1402(1).

1089.  FCA engaged in "trade' or "commerce" within the meaning of LA. STAT. ANN. § 51:1402(9).

1090.  The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." LA. STAT. ANN. § 51:1405(A).

1091.  In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine

failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1092.  In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1093.  Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations.  They had no way of knowing that Defendants' representations were false and gravely misleading.  As alleged herein, Defendants engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1094.  Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1095. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1096. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1097. Defendants knew or should have known that their conduct violated the Louisiana CPL.

1098. Defendants owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

    a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

    b. Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

    c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1099. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected

durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1100. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1101. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1102. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Specifically: (1) the number of consumers affected by FCA's deceptive practices are in the hundreds of thousands nation-wide; (2) FCA has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class Members; and (3) so long as the Class Vehicles continue to be sold and

distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant.

1103.    Pursuant to LA. STAT. ANN. § 51:1409, Plaintiffs and Louisiana Class members seek to recover actual damages in an amount to be determined at trial; treble damages for FCA's knowing violations of the Louisiana CPL; an order enjoining FCA's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees and any other just and proper relief available under Louisiana CPL.

**COUNT II**
**FRAUDULENT CONCEALMENT**
**(BASED ON LOUISIANA LAW)**

1104.    Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

1105.    Plaintiffs bring this claim on behalf of the Louisiana Class members against FCA.

1106.    As set forth above, Plaintiffs and other Louisiana Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1107.    As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel

fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1108.    As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1109.    As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

1110.    As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1111.    As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1112.    Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with

U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1113.    The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1114.    Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1115.   As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1116.   FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1117.   Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1118.   FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1119.    FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1120.    FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1121.    Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1122.    Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1123.    FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1124.    FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1125.    Accordingly, FCA is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

1126.    FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/WARRANTY
## AGAINST REDHIBITORY DEFECTS
## (LA. CIV. CODE ART. § 2520, 2524)

1127.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1128.    Plaintiffs bring this Count on behalf of the Louisiana Class members against FCA.

1129.    FCA was a merchant with respect to motor vehicles within the meaning of the LA. CIV. CODE ART. § 2520, 2524.

1130.    Under LA. CIV. CODE ART. § 2520 and 2524, a warranty that the Class Vehicles did not have redhibitory defects was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

1131.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a

moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

1132. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

1133. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Louisiana Class members have been damaged in an amount to be proven at trial.

## U. Claims Brought on Behalf of the Maine Class Members

### COUNT I

### VIOLATION OF THE MAINE UNFAIR TRADE PRACTICES ACT
### (ME. REV. STAT. ANN. TIT. 5, § 205-A *et seq.*)

1134. Plaintiffs (for purposes of all Maine Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

1135. Plaintiffs bring this Count on behalf of the Maine Class members against FCA.

1136. The Maine Unfair Trade Practices Act ("Maine UTPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." ME. REV. STAT. ANN. TIT. 5, § 207.

1137. FCA, Plaintiffs, and Maine Class members are "persons" within the meaning of ME. REV. STAT. ANN. TIT. 5, § 206(2).

1138. FCA was and is engaged in "trade" or "commerce" within the meaning of ME. REV. STAT. ANN. TIT. 5, § 206(3).

1139.  Plaintiffs intend to assert a claim under the Maine UTPA and will make a demand in satisfaction of ME. REV. STAT. ANN. TIT. 5, § 213(A), and may amend this Complaint to assert claims under the Maine UTPA once the required 30 days have elapsed. This paragraph is included for notice purposes only and is not intended to actually assert a claim under the Maine UTPA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON MAINE LAW)

1140.  Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1141.  Plaintiffs bring this Count on behalf of the Maine Class members against FCA.

1142.  As set forth above, Plaintiffs and other Maine Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1143.  As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1144. As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1145. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

1146. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1147. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1148. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are

"best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1149. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1150. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1151. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1152. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1153. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1154. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1155. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1156. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1157. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1158. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1159. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1160. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1161. Accordingly, FCA is liable to Plaintiffs and Maine Class members for damages in an amount to be proved at trial.

1162. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

# COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/
## (ME. REV. STAT. ANN. TIT 11, § 2-314)

1163. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1164. Plaintiffs bring this Count on behalf of the Maine Class members against FCA.

1165. FCA was a merchant with respect to motor vehicles within the meaning of the ME. REV. STAT. ANN. TIT. 11, § 2-314.

1166. Under ME. REV. STAT. ANN. tit. 11, § 2-314, a warranty that the Class Vehicles were in a merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

1167. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

1168. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

1169. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and other Class members have been damaged in an amount to be proven at trial.

## V. Claims Brought on Behalf of the Maryland Class Members

### COUNT I

### VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT
#### (MD. CODE ANN., COM. LAW CODE § 13-101 *et seq.)*

1170. Plaintiffs (for purposes of all Maryland Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

1171. Plaintiffs bring this Count on behalf of the Maryland Class members against FCA.

1172. Defendants, Plaintiffs and Maryland Class members are "persons" within the meaning of the MD. CODE ANN., COM. LAW Code§ 13-101(h).

1173. The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good. MD. CODE ANN., COM. LAW CODE § 13-303. These include "(1) false, falsely disparaging, or misleading oral or written statement, visual description, or other representations of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; (2) Representation that: (i) consumer goods . . . . have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quality which they do not have; . . . (iv) Consumer

goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not;" and "(3) failure to state a material fact if the failure deceives or tends to deceive;" and "(6) false or misleading representation of fact which concerns; (i) The reason for or the existence of a price reduction; or (ii) A price comparison to a price of a competitor or to one's price at a past or future time;" and "(9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with: (i) The promotion or sale of any consumer goods." MD. CODE ANN., COM. LAW CODE § 13-303.

1174. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1175. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel

injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1176. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1177. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1178. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1179. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1180. Defendants knew or should have known that their conduct violated the Maryland CPA.

1181. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

   a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles,

including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1182. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1183. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1184. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1185. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1186. Pursuant to MD. CODE ANN., COM. LAW CODE § 13-408, Plaintiffs and Maryland Class members seek to recover actual damages in an amount to be determined at trial; treble damages for FCA's knowing violations of the Louisiana CPL; an order enjoining FCA's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees and any other just and proper relief available under Louisiana CPL.

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON MARYLAND LAW)

1187. Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

1188. Plaintiffs bring this claim on behalf of the Maryland Class members against FCA.

1189. As set forth above, Plaintiffs and other Maryland Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class

members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1190.   As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1191.   As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1192.   As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

1193.   As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1194.   As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically

fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1195. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1196. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1197. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability

and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1198.    As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1199.    FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate

Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1200. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1201. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1202. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1203. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1204. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class

Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1205. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1206. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1207. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1208. Accordingly, FCA is liable to Plaintiffs and Maryland Class members for damages in an amount to be proved at trial.

1209. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (MD. CODE ANN. COM. LAW CODE § 2-314)

1210. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1211. Plaintiffs bring this Count on behalf of the Maryland Class members against FCA.

1212. FCA was a merchant with respect to motor vehicles within the meaning of the MD. CODE ANN., COM. LAW CODE § 2-314.

1213. Under MD. CODE ANN., COM. LAW CODE § 2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

1214. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a

breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

1215. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

1216. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Maryland Class members have been damaged in an amount to be proven at trial.

### W. Claims Brought on Behalf of the Massachusetts Class

### COUNT I

### VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT
### (MASS. GEN. LAWS CH. 93A)

1217. Plaintiffs (for purposes of all Massachusetts Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

1218. Plaintiffs bring this Count on behalf of the Massachusetts Class members against FCA.

1219. Plaintiffs intend to assert a claim under the Massachusetts Consumer Protection Act ("MCPA"), which makes it unlawful to engage in any "[u]nfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce." MASS. GEN. LAWS CH. 93A, § 2(1). Plaintiffs will make a demand in satisfaction of MASS. GEN. LAWS CH. 93A, § 9(3), and may amend this Complaint to assert claims under the MCPA once the required 30 days have elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the MCPA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON MASSACHUSETTS LAW)

1220. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1221. Plaintiffs bring this Count on behalf of the Massachusetts Class members against FCA.

1222. As set forth above, Plaintiffs and other Massachusetts Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1223. As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel

fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1224.   As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1225.   As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

1226.   As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1227.   As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1228.   Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with

U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1229. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1230. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1231. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1232. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1233. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1234. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1235. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1236. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1237. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1238.   Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1239.   FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1240.   FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1241.   Accordingly, FCA is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

1242.   FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (MASS. GEN. LAWS CH. 106, § 2-314)

1243.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1244.    Plaintiffs bring this Count on behalf of the Massachusetts Class members against FCA.

1245.    FCA was a merchant with respect to motor vehicles within the meaning of the MASS. GEN. LAWS CH. 106, § 2-314.

1246.    Under MASS. GEN. LAWS. CH. 106, § 2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

1247.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

1248. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

1249. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Massachusetts Class members have been damaged in an amount to be proven at trial.

## X. Claims Brought on Behalf of the Michigan Class Members

### COUNT I

### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
### (MICH. COMP. LAWS § 445.903 *et seq.*)

1250. Plaintiffs (for purposes of all Michigan Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

1251. Plaintiffs bring this Count on behalf of the Michigan Class members against FCA.

1252. Plaintiffs and Michigan Class members are "person[s]" within the meaning of the MICH. COMP. LAWS. § 445.902(1)(d).

1253. The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including: " (c) Representing that goods or services have … characteristics … that they do not have," "(e) Representing that goods or services are of a particular standard … if they are of another," "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer," "(bb) making a representation of fact or statement of fact material to the transaction such that a person

reasonably believes the represented or suggested state of affairs to be other than it actually is," and "(cc) failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." MICH. COMP. LAWS § 445.903(1).

1254. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1255. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1256. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel

Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1257. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1258. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1259. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1260. Defendants knew or should have known that their conduct violated the Michigan CPA.

1261. Defendants owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

    a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

    b.  Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

    c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding

material facts from Plaintiffs and the Class that contradicted these representations.

1262. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1263. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1264. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These

injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1265. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1266. Plaintiffs and Michigan Class members seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in an amount of $250 per each Plaintiff and Michigan Class member; and reasonable attorneys' fees; and any other just and proper relief available under the Mich. Comp. Laws § 445.911. Plaintiffs and Michigan Class members also seek punitive damages against FCA because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others. FCA's conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON MICHIGAN LAW)

1267. Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

1268. Plaintiffs bring this claim on behalf of the Michigan Class members against FCA.

1269. As set forth above, Plaintiffs and other Michigan Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle

promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1270.    As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1271.    As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1272.    As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class members.

1273.    As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1274.    As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system

components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1275.    Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1276.    The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1277.    Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their

vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1278.   As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1279.   FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate

Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1280. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1281. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1282. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1283. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1284. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class

Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1285. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1286. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1287. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1288.   Accordingly, FCA is liable to Plaintiffs and Michigan Class members for damages in an amount to be proved at trial.

1289.   FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (MICH. COMP. LAWS § 440.2314)

1290.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1291.   Plaintiffs bring this Count on behalf of the Michigan Class members against FCA.

1292.   FCA was and is a merchant with respect to motor vehicles within the meaning of the MICH. COMP. LAWS § 440.2314.

1293.   Under MICH. COMP. LAWS § 440.2314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

1294.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a

breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

1295.  FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

1296.  As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Michigan Class members have been damaged in an amount to be proven at trial.

## COUNT IV

## UNJUST ENRICHMENT

1297.  Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1298.  Plaintiffs bring this Count on behalf of the Michigan Class members against FCA.

1299.  This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class members.

1300.  As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment

thereof, FCA charged a higher price for the Class Vehicles than the Vehicles' true value and FCA, therefore, obtained monies that rightfully belong to Plaintiffs and other Class members.

1301. FCA enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members, who paid a higher price for their vehicles that actually had lower values.

1302. FCA has received and retained unjust benefits from the Plaintiffs and other Class members, and inequity has resulted.

1303. Thus, all Plaintiffs and Class members conferred a benefit on FCA.

1304. It would be inequitable and unconscionable for FCA to retain these wrongfully obtained benefits.

1305. Because FCA concealed its fraud and deception, Plaintiffs and other Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from FCA's misconduct.

1306. FCA knowingly accepted and retained the unjust benefits of its fraudulent conduct.

1307. As a result of FCA's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class members, in an amount to be proven at trial. Plaintiffs and other Class members, therefore, seek an order establishing FCA as a constructive trustee of the profits unjustly obtained, plus interest.

### Y.  Claims Brought on Behalf of the Minnesota Class Members

### COUNT I

### VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT
### (MINN. STAT. § 325F.68 *et seq.*)

1308. Plaintiffs (for purposes of all Minnesota Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

1309. Plaintiffs bring this Count on behalf of the Minnesota Class members against FCA.

1310. The Class Vehicles constitute "merchandise" within the meaning of MINN. STAT. § 325F.68(2).

1311. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." MINN. STAT. § 325F.69(1).

1312. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1313. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1314. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1315. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1316. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1317. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1318. Defendants knew or should have known that their conduct violated the Minnesota CFA.

1319. Defendants owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1320. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material

concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1321. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1322. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1323. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Specifically: (1) the number of consumers affected by FCA's deceptive practices are in the hundreds of thousands notion-wide; (2) FCA has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class members; and (3) so long as Class Vehicles continue to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant.

1324. Pursuant to MINN. STAT. § 8.31(3a), Plaintiffs and Minnesota Class members seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

1325. Plaintiffs and Minnesota Class members also seek punitive damages under MINN. STAT. § 549.20(1)(a).

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON MINNESOTA LAW)

1326. Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

1327. Plaintiffs bring this claim on behalf of the Minnesota Class members against FCA.

1328. As set forth above, Plaintiffs and other Minnesota Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1329. As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1330. As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1331. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain

of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

1332. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1333. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1334. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1335. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced

and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1336.    Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1337.    As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole

truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1338. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1339. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1340. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1341. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1342.    FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1343.    Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1344.    Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1345.    FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1346.    FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1347.    Accordingly, FCA is liable to Plaintiffs and Minnesota Class members for damages in an amount to be proved at trial.

1348.    FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (MINN. STAT. § 336.2-314)

1349.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1350.    Plaintiffs bring this Count on behalf of the Minnesota Class members against FCA.

1351.  FCA was and is a merchant with respect to motor vehicles within the meaning of the MINN. STAT. § 336.2-314.

1352.  Under MINN. STAT. § 336.2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

1353.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

1354.  FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

1355.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Minnesota Class members have been damaged in an amount to be proven at trial.

## Z.  Claims Brought on Behalf of the Mississippi Class Members

### COUNT I

### VIOLATION OF THE MISSISSIPPI CONSUMER PROTECTION ACT
### (MISS. CODE ANN. § 75-24-1, *et seq.*)

1356.   Plaintiffs (for purposes of all Mississippi Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

1357.   Plaintiffs bring this Count on behalf of the Mississippi Class members against FCA.

1358.   The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." MISS. CODE ANN. § 75-24-5(1). Unfair or deceptive practices include, but are not limited to, "(e)" representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;" and (g) representing that goods or services are of a particular standard, quality, or grade, or that goods are a particular style or model, if they are of another;" and "(i) advertising goods or services with intent not to sell them as advertised."

1359.   Plaintiffs will comply with the pre-suit dispute resolution procedure in MISS. CODE ANN. § 75-24-15(2), and may amend this Complaint to assert claims under Mississippi CPA once the required procedure has been followed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Mississippi CPA.

### COUNT II

### FRAUDULENT CONCEALMENT

1360.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1361.   Plaintiffs bring this Count on behalf of the Mississippi Class members against FCA.

1362.   As set forth above, Plaintiffs and other Mississippi Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1363.   As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1364.   As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1365.   As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

1366.    As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1367.    As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1368.    Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1369.    The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material

concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1370. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1371. As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1372. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1373. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1374. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1375. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1376. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent

scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1377. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1378. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1379. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement

of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1380.    FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1381.    Accordingly, FCA is liable to Plaintiffs and Mississippi Class members for damages in an amount to be proved at trial.

1382.    FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(MISS. CODE ANN. § 75-2-314)**

1383.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1384.    Plaintiffs bring this Count on behalf of the Mississippi Class members against FCA.

1385.    FCA was and is a merchant with respect to motor vehicles within the meaning of the MISS. CODE ANN. § 75-2-314.

1386.    Under MISS. CODE ANN. § 75-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

1387. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

1388. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

1389. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and other Class members have been damaged in an amount to be proven at trial.

### AA. Claims Brought on Behalf of the Missouri Class Members

### COUNT I

### VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT
#### (MO. REV. STAT. § 407.010 *et seq.*)

1390. Plaintiffs (for purposes of all Missouri Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

1391. Plaintiffs bring this Count on behalf of the Missouri Class members against FCA.

1392. FCA, Plaintiffs, and Missouri Class members are "persons" within the meaning of the MO. REV. STAT. § 407.010(5).

1393. FCA engaged in "trade" or "commerce" in the State of Missouri within the meaning of the MO. REV. STAT. § 407.010(7).

1394. The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." MO. REV. STAT. § 407.020.

1395. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1396. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1397. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1398. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1399. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1400. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1401. Defendants knew or should have known that their conduct violated the Missouri MPA.

1402. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1403. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material

concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1404. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1405. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1406. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1407. Plaintiffs and Missouri Class members seek monetary relief against Defendants in an amount to be determined at trial and reasonable attorneys' fees, costs, punitive damages, as well as injunctive relief enjoining FCA's unfair and deceptive practices, and any other just and proper relief available under the MO. REV. STAT. § 407.025.

## COUNT II
### FRAUDULENT CONCEALMENT
### (BASED ON MISSOURI LAW)

1408. Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

1409. Plaintiffs bring this claim on behalf of the Missouri Class members against FCA.

1410. As set forth above, Plaintiffs and other Missouri Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1411. As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1412. As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1413. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

1414. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the

required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1415. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1416. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1417. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the

CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1418.    Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1419.    As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1420.    FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an

internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1421.   Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1422.   FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1423.   FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1424.   FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class

members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1425. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1426. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1427. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure

of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1428. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1429. Accordingly, FCA is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

1430. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(MO. REV. STAT. § 400.2-314)**

1431. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1432. Plaintiffs bring this Count on behalf of the Missouri Class Members against FCA.

1433. FCA was and is a merchant with respect to motor vehicles within the meaning of the MO. REV. STAT. § 400.2-314.

1434. Under MO. REV. STAT. § 400.2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

1435.     The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

1436.     FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

1437.     As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Missouri Class members have been damaged in an amount to be proven at trial.

**COUNT IV**

**UNJUST ENRICHMENT**

1438.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1439.    Plaintiffs bring this Count on behalf of the Missouri Class members against FCA.

1440.    This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class members.

1441.    As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, FCA charged a higher price for the Class Vehicles than the Vehicles' true value and FCA, therefore, obtained monies that rightfully belong to Plaintiffs and other Class members.

1442.    FCA enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members, who paid a higher price for their vehicles that actually had lower values.

1443.    FCA has received and retained unjust benefits from the Plaintiffs and other Class members, and inequity has resulted.

1444.    Thus, all Plaintiffs and Class members conferred a benefit on FCA.

1445.    It would be inequitable and unconscionable for FCA to retain these wrongfully obtained benefits.

1446.    Because FCA concealed its fraud and deception, Plaintiffs and other Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from FCA's misconduct.

1447.    FCA knowingly accepted and retained the unjust benefits of its fraudulent conduct.

1448.    As a result of FCA's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class members, in an amount to be proven at trial.

Plaintiffs and other Class members, therefore, seek an order establishing FCA as a constructive trustee of the profits unjustly obtained, plus interest.

**BB.    Claims Brought on Behalf of the Montana Class Members**

## COUNT I

**VIOLATIONS OF MONTANA UNFARI TRADE PRACTICES AND
CONSUMER PROTECTION ACT OF 1973
(MONT. CODE ANN. § 30-14-101 *et seq.*)**

1449.    Plaintiffs (for purposes of all Montana Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

1450.    Plaintiffs bring this Count on behalf of the Montana Class members against FCA.

1451.    FCA, Plaintiffs, and Montana Class members are "persons" within the meaning of the MONT. CODE ANN. § 30-14-102(6).

1452.    Plaintiffs and Montana Class Members are "consumer[s]" under MONT. CODE ANN. § 30-14-102(1).

1453.    The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." MONT. CODE ANN. § 30-14-103.

1454.    In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with

*American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1455. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1456. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1457. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1458. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1459. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1460. Defendants knew or should have known that their conduct violated the Montana CPA.

1461. Defendants owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

   a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

   b. Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

   c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1461. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were

material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1462. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1463. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1464. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy and is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Specifically: (1) the number of consumers affected by FCA's unfair and deceptive acts or practices are in the hundreds of thousands nation-wide; (2) FCA has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class members; and (3) so long as the Class Vehicles continue to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant.

1465. Plaintiffs and Montana ClassmMembers seek from Defendants actual damages, discretionary treble damages, reasonable attorneys' fees, and any other just and proper relief available under the MONT. CODE ANN. § 30-14-133.

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON MONTANA LAW)

1466.     Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

1467.     Plaintiffs bring this claim on behalf of the Montana Class members against FCA.

1468.     As set forth above, Plaintiffs and other Montana Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1469.     As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1470.     As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1471.     As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain

of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

1472. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1473. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1474. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1475. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced

and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1476. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1477. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole

truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1478.   FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1479.   Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1480.   FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1481.   FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1482.  FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1483.  Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1484.  Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1485.    FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1486.    FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1487.    Accordingly, FCA is liable to Plaintiffs and Montana Class members for damages in an amount to be proved at trial.

1488.    FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (MONT. CODE ANN. § 30-2-314)

1489.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1490.    Plaintiffs bring this Count on behalf of the Montana Class Members against FCA.

1491. FCA was and is a merchant with respect to motor vehicles within the meaning of the MONT. CODE ANN. § 30-2-314.

1492. Under MONT. CODE ANN. § 30-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

1493. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

1494. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

1495.    As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Montana Class members have been damaged in an amount to be proven at trial.

**CC.    Claims Brought on Behalf of the Nebraska Class Members**

**COUNT I**

**VIOLATOIN OF THE NEBRASKA CONSUMER PROTECTION ACT**
**(NEB. REV. STAT. § 59-1601 *et seq.*)**

1496.    Plaintiffs (for purposes of all Nebraska Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

1497.    Plaintiffs bring this Count on behalf of the Nebraska Class members against FCA.

1498.    FCA, Plaintiffs, and Nebraska Class members are "person[s]" under the Nebraska Consumer Protection Act ("Nebraska CPA"), NEB. REV. STAT. § 59-1601(1).

1499.    FCA's actions as set forth herein occurred in the conduct of trade or commerce as defined under NEB. REV. STAT. § 59-1601(2).

1500.    The Nebraska CPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." NEB. REV. STAT. § 59-1602.

1501.    In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with

*American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1502. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1503. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1504. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1505. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1506. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1507.  Defendants knew or should have known that their conduct violated the Nebraska CPA.

1508.  Defendants owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

    a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

    b.  Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

    c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1509.  Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were

material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1510. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1511. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1512. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy and is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Specifically: (1) the number of consumers affected by FCA's unfair and deceptive acts or practices are in the hundreds of thousands nation-wide; (2) FCA has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class members; and (3) so long as the Class Vehicles continue to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant.

1513. Because FCA's conduct caused injury to Plaintiffs and Montana Class members through violations of the Nebraska CPA, Plaintiffs and Montana Class members seek recovery from Defendants for actual damages, as well as enhanced damages up to $1,000, an order

enjoining FCA's unfair or deceptive acts and practices, court costs, reasonable attorneys' fees, and any other just and proper relief available under the NEB. REV. STAT. § 59-1609.

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON NEBRASKA LAW)

1514.    Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

1515.    Plaintiffs bring this claim on behalf of the Nebraska Class members against FCA.

1516.    As set forth above, Plaintiffs and other Nebraska Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1517.    As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1518.    As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1519. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

1520. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1521. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1522. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1523. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other

Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1524. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1525. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial

disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1526.    FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1527.    Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1528.    FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1529.    FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs

and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1530.    FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1531.    Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1532.    Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained

damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1533. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1534. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1535. Accordingly, FCA is liable to Plaintiffs and Nebraska Class members for damages in an amount to be proved at trial.

1536. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (NEB. REV. STAT. § 30-2-314)

1537. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1538.    Plaintiffs bring this Count on behalf of the Nebraska Class members against FCA.

1539.    FCA was and is a merchant with respect to motor vehicles within the meaning of the NEB. REV. STAT. § 30-2-314.

1540.    Under NEB. REV. STAT. § 30-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

1541.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

1542.    FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or

other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

1543.    As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Nebraska Class members have been damaged in an amount to be proven at trial.

### DD.    Claims Brought on Behalf of the Nevada Class Members

### COUNT I

### VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT
### (NEV. REV. STAT. § 598.0903 *et seq.*)

1544.    Plaintiffs (for purposes of the Nevada Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

1545.    Plaintiffs bring this Count on behalf of the Nevada Class members against FCA.

1546.    The Nevada Deceptive Trade Practices Act ("Nevada DTPA") NEV. REV. STAT. § 598.0903 *et seq.,* prohibits deceptive trade practices. NEV. REV. STAT. § 598.0903 provides that a person engages in a "deceptive trade practice" if, in the court of business or occupation, the person "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith": "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9. Advertises goods or services with intent not to sell or lease them as advertised"; or "15. Knowingly makes any other false representation in a transaction."

1547. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1548. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1549. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the

defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1550. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1551. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1552. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1553. Defendants knew or should have known that their conduct violated the Nevada DTPA.

1554. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

   a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

   b. Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

   c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1555. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the

increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1556. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1557. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1558. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public

interest and offends public policy and is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

1559.    Accordingly, Plaintiffs and Nevada Class Members seek their actual damages, punitive damages, court costs, attorneys' fees, and all other appropriate and available remedies under the Nevada DTPA. NEV. REV. STAT. § 41.600.

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON NEVADA LAW)

1560.    Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

1561.    Plaintiffs bring this claim on behalf of the Nevada Class members against FCA.

1562.    As set forth above, Plaintiffs and other Nevada Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1563.    As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1564.    As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1565.    As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

1566.    As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1567.    As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1568.    Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are

"best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1569.    The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1570.    Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1571.   As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1572.   FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1573.   Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1574.   FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1575.    FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1576.    FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1577.    Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1578.    Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1579.    FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1580.    FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1581.    Accordingly, FCA is liable to Plaintiffs and Nevada Class members for damages in an amount to be proved at trial.

1582.    FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (NEV. REV. STAT. § 104.2314)

1583.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1584.    Plaintiffs bring this Count on behalf of the Nevada Class members against FCA.

1585.    FCA was and is a merchant with respect to motor vehicles within the meaning of the NEV. REV. STAT. § 104.2314.

1586.    Under NEV. REV. STAT. § 104.2314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

1587.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

1588.    FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

1589.    As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Nevada Class members have been damaged in an amount to be proven at trial.

### EE.    Claims Brought on Behalf of the New Hampshire Class Members

### COUNT I

### VIOLATION OF NEW HAMPSHIRE CONSUMER PROTECTION ACT
### (N.H. REV. STAT. ANN. § 358-A:1 et seq.)

1590.    Plaintiffs (for purposes of all New Hampshire Class members Counts) incorporate by reference all paragraphs as though fully set forth herein.

1591.    Plaintiffs bring this Count on behalf of the New Hampshire Class members against FCA.

1592.    Plaintiffs, New Hampshire Class members, and FCA are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA"). N.H. REV. STAT. § 358-A:1.

1593.    The New Hampshire CPA prohibits a person in the conduct of any trade or commerce from using "any unfair or deceptive act or practice," including "but . . . not limited to the following: . . . (V) Representing that goods or services have . . . characteristics, . . . uses, benefits, or quantities that they do not have," "(VII) Representing that goods or services are of a particular standard, quality, or grade, . . . if they are of another," and "(IX) Advertising goods or services with intent not to sell them as advertised." N.H. REV. STAT. § 358-A:2.

1594. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1595. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1596. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the

defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1597. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1598. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1599. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1600. Defendants knew or should have known that their conduct violated the New Hampshire CPA.

1601. Defendants owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

   a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

   b. Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

   c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1602. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the

increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1603. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1604. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1605. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public

interest and offends public policy and is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

1606. Pursuant to N.H. REV. STAT. § 358-A:10, Plaintiffs and the Nevada Class Members seek recovery of actual damages or $1,000, whichever is greater, treble damages, costs and reasonable attorneys' fees, and all other appropriate and available remedies under the N.H. REV. STAT. § 358-A:10.

**COUNT II**
**FRAUDULENT CONCEALMENT**
**(BASED ON NEW HAMPSHIRE LAW)**

1607. Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

1608. Plaintiffs bring this claim on behalf of the New Hampshire Class members against FCA.

1609. As set forth above, Plaintiffs and other New Hampshire Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1610. As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel

fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1611. As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1612. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

1613. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1614. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1615. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with

U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1616.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1617.   Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1618.   As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1619.   FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1620.   Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1621.   FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1622.    FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1623.    FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1624.    Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1625. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1626. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1627. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1628. Accordingly, FCA is liable to Plaintiffs and New Hampshire Class members for damages in an amount to be proved at trial.

1629. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

# COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.H. REV. STAT. § 382-A:2-314)

1630.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1631.    Plaintiffs bring this Count on behalf of the New Hampshire Class members against FCA.

1632.    FCA was and is a merchant with respect to motor vehicles within the meaning of the N. H. REV. STAT. § 382-A:2-314.

1633.    Under N. H. REV. STAT. § 382-A:2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

1634.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

1635.    FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

1636.    As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and New Hampshire Class members have been damaged in an amount to be proven at trial.

## COUNT IV

## UNJUST ENRICHMENT

1637.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1638.    Plaintiffs bring this Count on behalf of the New Hampshire Class members against FCA.

1639.    This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class members.

1640.    As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, FCA charged a higher price for the Class Vehicles than the Vehicles' true value and FCA, therefore, obtained monies that rightfully belong to Plaintiffs and other Class members.

1641.    FCA enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members, who paid a higher price for their vehicles that actually had lower values.

1642.    FCA has received and retained unjust benefits from the Plaintiffs and other Class members, and inequity has resulted.

1643.  Thus, all Plaintiffs and Class members conferred a benefit on FCA.

1644.  It would be inequitable and unconscionable for FCA to retain these wrongfully obtained benefits.

1645.  Because FCA concealed its fraud and deception, Plaintiffs and other Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from FCA's misconduct.

1646.  FCA knowingly accepted and retained the unjust benefits of its fraudulent conduct.

1647.  As a result of FCA's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class members, in an amount to be proven at trial. Plaintiffs and other Class members, therefore, seek an order establishing FCA as a constructive trustee of the profits unjustly obtained, plus interest.

**FF. Claims Brought on Behalf of the New Jersey Class Members**

**COUNT I**

**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
(N.J. STAT. ANN. § 56:8-1 *et seq.*)**

1648.  Plaintiffs (for purposes of all New Jersey Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

1649.  Plaintiffs bring this Count on behalf of the New Jersey Class members against FCA.

1650.  FCA and Plaintiffs are "persons" within the meaning of N.J. STAT. ANN. § 56:8-1(d).

1651.  FCA engaged in "sales" of "merchandise" within the meaning of N.J. STAT. ANN. § 56:8-1(c), (d).

1652. The New Jersey Consumer Fraud Act, N.J. STAT. ANN. § 56:8-1 *et seq.* ("N.J. CFA"), makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentations, or the knowing concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…" N.J. STAT. ANN. § 56:8-2.

1653. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1654. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1655. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1656. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1657. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1658. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1659. Defendants knew or should have known that their conduct violated the N.J. CFA.

1660. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

    a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

    b. Intentionally concealed the foregoing from Plaintiffs and the Class members; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1661. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1662. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1663. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the

benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1664. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy.

1665. Pursuant to N.J. REV. STAT. § 56:8-19, Plaintiffs and the New Jersey Class Members seek an order enjoining FCA's unlawful conduct, actual damages, treble damages, costs and reasonable attorneys' fees, costs and any other just and proper relief available under the New Jersey CFA.

**COUNT II**
**FRAUDULENT CONCEALMENT**
**(BASED ON NEW JERSEY LAW)**

1666. Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

1667. Plaintiffs bring this claim on behalf of the New Jersey Class Members against FCA.

1668. As set forth above, Plaintiffs and other New Jersey Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1669. As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1670. As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1671. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

1672. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1673. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1674. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1675. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1676. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do

not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1677. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1678. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1679.   Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1680.   FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1681.   FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1682.   FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1683.   Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class

members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1684.    Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1685.    FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1686.    FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1687.    Accordingly, FCA is liable to Plaintiffs and New Jersey Class members for damages in an amount to be proved at trial.

1688.   FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.J. STAT. ANN. § 12A:2-314)

1689.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1690.   Plaintiffs bring this Count on behalf of the New Jersey Class members against FCA.

1691.   FCA was and is a merchant with respect to motor vehicles within the meaning of the N. J. STAT. ANN. § 12A:2-314.

1692.   Under N. J. STAT. ANN. § 12A:2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

1693.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse

throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

1694. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

1695. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and other Class members have been damaged in an amount to be proven at trial.

### GG. Claims Brought on Behalf of the New Mexico Class Members

### COUNT I

### VIOLATIONS OF THE NEW MEXICO UNFAIR
### TRADE PRACTICES ACT
### (N.M. STAT. ANN. § 57-12-1 *et seq.)*

1696. Plaintiffs (for purposes of all New Mexico Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

1697. Plaintiffs bring this Count on behalf of the New Mexico Class members against FCA.

1698. FCA, Plaintiffs, and New Mexico Class members are or were "person[s]" under the New Mexico Unfair Trade Practices Act ("New Mexico UTPA"), N.M. STAT. ANN. § 57-12-2.

1699. Defendant's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. STAT. ANN. § 57-12-2.

1700. The New Mexico UTPA makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including but not limited to "failing to state a material fact if doing so deceives or tends to deceive." N.M. STAT. ANN. § 57-12-2(D). Defendant's acts and omissions described herein constitute unfair or deceptive acts or practices under N.M. STAT. ANN. § 57-12-2(D). In addition, Defendant's actions constitute unconscionable actions under N.M. STAT. ANN. § 57-12-2(E), since it took advantage of the lack of knowledge, ability, experience, and capacity of the New Mexico Class members to a grossly unfair degree.

1701. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1702.In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1703.Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1704.Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1705.Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1706.Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1707.Defendants knew or should have known that their conduct violated the New Mexico UTPA.

1708. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class members; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1709. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are

material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1710. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1711. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1712. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy.

1713. Because FCA's unconscionable, willful conduct caused actual harm to Plaintiffs and New Mexico Class members, Plaintiffs and the New Mexico Class members seek recovery of actual damages or $100, whichever is greater, discretionary treble damages, punitive damages, and reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.M. STAT. ANN. § 57-12-10.

**COUNT II**
**FRAUDULENT CONCEALMENT**
**(BASED ON NEW MEXICO LAW)**

1714. Plaintiffs incorporate by reference all paragraphs as thought fully set forth herein.

1715. Plaintiffs bring this claim on behalf of the New Mexico Class members against FCA.

1716. As set forth above, Plaintiffs and other New Mexico Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1717. As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1718. As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1719. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

1720. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1721. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1722. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1723. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material

concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1724. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1725. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1726. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1727. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1728. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1729. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1730. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent

scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1731.    Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1732.    Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1733.    FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement

of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1734. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1735. Accordingly, FCA is liable to Plaintiffs and New Mexico Class members for damages in an amount to be proved at trial.

1736. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.M. STAT. ANN. § 55-2-314)

1737. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1738. Plaintiffs bring this Count on behalf of the New Mexico Class members against FCA.

1739. FCA was and is a merchant with respect to motor vehicles within the meaning of the N. M. STAT. ANN. § 55-2-314.

1740. Under N. M. STAT. ANN. § 12A:2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

1741.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

1742.    FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

1743.    As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and New Mexico Class members have been damaged in an amount to be proven at trial.

### HH.    Claims Brought on Behalf of the New York Class Members

### COUNT I

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (N.Y. GEN. BUS. LAW § 349)

1744.   Plaintiffs (for purposes of all New York Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

1745.   Plaintiffs bring this Count on behalf of the New York Class members against FCA.

1746.   Plaintiffs and New York Class members are "persons" within the meaning of New York General Business Law ("New York GBL"). N.Y. GEN. BUS. LAW § 349(h).

1747.   FCA is a "person," "firm," "corporation," or "association" within the meaning of N.Y. GEN. BUS. LAW § 349.

1748.   New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. GEN. BUS. LAW § 349. GM's conduct, as described in this Complaint, constitutes "deceptive acts or practices" within the meaning of the New York GBL. All of GM's deceptive acts and practices, which were intended to mislead consumers in a material way in the process of purchasing or leasing Class Vehicles, constitute conduct directed at consumers and "consumer-oriented." Further, Plaintiffs and other Class members suffered injury as a result of the deceptive acts or practice.

1749.   In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by

employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1750. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1751. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1752. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1753. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1754. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1755. Defendants knew or should have known that their conduct violated the New York GBL.

1756. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

    a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

    b. Intentionally concealed the foregoing from Plaintiffs and the Class members; and/or

    c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1757. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed

facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1758. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1759. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1760. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy. Specifically: (1) the number of consumers affected by FCA's deceptive practices are in the hundreds of thousands nation-wide; (2) FCA has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class members; and (3) so long as the Class Vehicles continue to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant.

1761. Pursuant to N.Y. GEN. BUS. LAW § 349(h), Plaintiffs and each New York Class member seek actual damages or $50, whichever is greater, in addition to discretionary three times actual damages up to $1,000 for Defendants' willful and knowing violation of N.Y. GEN. BUS. LAW § 349. Plaintiffs and New York Class members also seek an order enjoining FCA's

deceptive conduct, reasonable attorneys' fees and costs, as well as all other proper and just relief available under New York GBL.

## COUNT II
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
### (N.Y. GEN. BUS. LAW § 350)

1762.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1763.   Plaintiffs bring this Count on behalf of the New York Class members against FCA.

1764.   New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]" False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. GEN. BUS. LAW § 350-a.

1765.   FCA caused to be made or disseminated throughout New York, through advertising, marketing, and other publications, representations that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to GM, to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

1766.   GM has violated N.Y. Gen. Bus. Law § 350 because of the misrepresentations and omissions alleged herein, including, but not limited to, GM's failure to disclose the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1767.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class

Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1768. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1769. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1770. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1771. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1772. Defendants knew or should have known that their conduct violated the New York GBL § 350.

1773. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class members; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1774. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates

a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1775. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1776. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1777. Plaintiffs and each New York Class member are entitled to recover their actual damages or $500, whichever is greater. Because Defendants willfully or knowingly, Plaintiffs and other New York Class members are entitled to recover three times actual damages up to $10,000.00.

**COUNT III**
**FRAUDULENT CONCEALMENT**
**(BASED ON NEW YORK LAW)**

1778. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1779. Plaintiffs bring this Count on behalf of the New York Class members against FCA.

1780. As set forth above, Plaintiffs and other New York Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1781.  As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1782.  As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1783.  As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class members.

1784.  As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1785.  As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1786. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1787. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1788. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do

not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1789.    As alleged   above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1790.    FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1791. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1792. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1793. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1794. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1795. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class

members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1796. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1797. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1798. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1799. Accordingly, FCA is liable to Plaintiffs and New York Class members for damages in an amount to be proved at trial.

1800. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT IV

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.Y. U.C.C. § 2-314)

1801. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1802. Plaintiffs bring this Count on behalf of the New York Class members against FCA.

1803. FCA was and is a merchant with respect to motor vehicles within the meaning of the N.Y. U.C.C. § 2-314.

1804. Under N.Y. U.C.C. § 2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

1805. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse

throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

1806.    FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

1807.    As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and New York Class members have been damaged in an amount to be proven at trial.

## COUNT V

## UNJUST ENRICHMENT

1808.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1809.    Plaintiffs bring this Count on behalf of the New York Class members against FCA.

1810.    This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class members.

1811.    As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, FCA charged a higher price for the Class Vehicles than the Vehicles' true value and FCA, therefore, obtained monies that rightfully belong to Plaintiffs and other Class members.

1812. FCA enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members, who paid a higher price for their vehicles that actually had lower values.

1813. FCA has received and retained unjust benefits from the Plaintiffs and other Class members, and inequity has resulted.

1814. Thus, all Plaintiffs and Class Members conferred a benefit on FCA.

1815. It would be inequitable and unconscionable for FCA to retain these wrongfully obtained benefits.

1816. Because FCA concealed its fraud and deception, Plaintiffs and other Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from FCA's misconduct.

1817. FCA knowingly accepted and retained the unjust benefits of its fraudulent conduct.

1818. As a result of FCA's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class members, in an amount to be proven at trial. Plaintiffs and other Class members, therefore, seek an order establishing FCA as a constructive trustee of the profits unjustly obtained, plus interest.

## II. Claims Brought on Behalf of the North Carolina Class Members

### COUNT I

### VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE ACTS OR PRACTICES ACT
### (N.C. GEN. STAT. § 75-1.1 *et seq.*)

1819. Plaintiffs (for purposes of all North Carolina Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

1820. Plaintiffs bring this Count on behalf of the North Carolina Class members against FCA.

1821. FCA engaged in "commerce" within the meaning of N.C. GEN. STAT. § 75-1.1(b).

1822. The North Carolina UDTPA broadly prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. GEN. STAT. § 75-1.1(a).

1823. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1824. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1825. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false

and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1826. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1827. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1828. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1829. Defendants knew or should have known that their conduct violated the North Carolina UDTPA.

1830. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class members; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1831. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1832. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1833. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the

benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1834. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy.

1835. Because FCA's actions and conduct were willful, Plaintiffs seek an order for treble their actual damages, an order enjoining FCA's unlawful acts, reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.C. GEN. STAT. § 75-16.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON NORTH CAROLINA LAW)

1836. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1837. Plaintiffs bring this Count on behalf of the North Carolina Class members against FCA.

1838. As set forth above, Plaintiffs and other North Carolina Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1839. As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel

fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1840.  As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1841.  As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

1842.  As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1843.  As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1844.  Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with

U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1845. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1846. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1847.  As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1848.  FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1849.  Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1850.  FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1851. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1852. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1853. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1854. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1855. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1856. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1857. Accordingly, FCA is liable to Plaintiffs and North Carolina Class members for damages in an amount to be proved at trial.

1858. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

# COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (N.C. GEN. STAT. § 25-2-314)

1859.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1860.   Plaintiffs bring this Count on behalf of the North Carolina Class members against FCA.

1861.   FCA was and is a merchant with respect to motor vehicles within the meaning of the N.C. GEN. STAT. § 25-2-314.

1862.   Under N.C. GEN. STAT. § 25-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

1863.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

1864. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

1865. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and North Carolina Class members have been damaged in an amount to be proven at trial.

## JJ.        Claims Brought on Behalf of the North Dakota Class Members

### COUNT I

### VIOLATIONS OF THE NORTH DAKOTA CONSUMER FRAUD ACT
### (N.D. CENT. CODE § 51-15-02)

1866. Plaintiffs (for purposes of all North Dakota Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

1867. Plaintiffs bring this Count on behalf of the North Dakota Class members against FCA.

1868. Plaintiffs, North Dakota Class members, and FCA are "persons" within the meaning of N.D. CENT. CODE § 51-15-02(4).

1869. FCA engaged in the "sale" of "merchandise" within the meaning of N.D. CENT. CODE § 51-15-02(3), (5).

1870. The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise. . . . The act, use, or employment by any person of any act or practice, in connection with the sale or advertisement of any merchandise, which is unconscionable or which causes or is likely to cause substantial injury to

a person which is not reasonably avoidable by the injured person and not outweighed by countervailing benefits to consumers or to competition." N.D. Cent. Code § 51-15- 02. As set forth above and below, Defendants committed deceptive acts or practices with the intent that Plaintiffs and other Class Members rely thereon in connection with their purchase or lease of the Class Vehicles.

1871.  In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1872.  In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1873.  Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations.  They had no way of knowing that Defendants' representations were false

and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1874. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1875. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1876. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1877. Defendants knew or should have known that their conduct violated the North Dakota CFA.

1878. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class members; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1879.  Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.  Longevity, durability, performance, and safety are material concerns to diesel truck consumers.  FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1880.  Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1881.  Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the

benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1882. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy.

1883. Further, FCA knowingly committed the conduct described above, and thus, under N.D. CENT. CODE § 51-15-09, FCA is liable to Plaintiffs and the North Dakota Class members for treble damages in an amount to be determined at trial, as well as attorneys' fees, costs and disbursements. Plaintiffs further seek an order enjoining FCA's unfair and/or deceptive acts or practices as well as all other proper and just relief available under North Dakota CFA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON NORTH DAKOTA LAW)

1884. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1885. Plaintiffs bring this Count on behalf of the North Dakota Class members against FCA.

1886. As set forth above, Plaintiffs and other North Dakota Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1887.  As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1888.  As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1889.  As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

1890.  As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1891.  As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1892. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1893. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1894. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do

not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1895.  As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1896.  FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1897.  Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1898.  FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1899.  FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1900.  FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1901.  Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class

members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1902.   Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1903.   FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1904.   FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1905.   Accordingly, FCA is liable to Plaintiffs and North Dakota Class members for damages in an amount to be proved at trial.

1906. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.D. CENT. CODE § 41-02-31)

1907. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1908. Plaintiffs bring this Count on behalf of the North Dakota Class members against FCA.

1909. FCA was and is a merchant with respect to motor vehicles within the meaning of the N.D. CENT. CODE § 41-02-31.

1910. Under N.D. CENT. CODE § 14-02-31, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

1911. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse

throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

1912. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

1913. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and North Dakota Class members have been damaged in an amount to be proven at trial.

**KK.** **Claims Brought on Behalf of the Ohio Class Members**

### COUNT I

### VIOLAITON OF THE OHIO CONSUMER SALES PRACTICES ACT (OHIO REV. CODE § 1345.01 *et seq.*)

1914. Plaintiffs (for purposes of all Ohio Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

1915. Plaintiffs bring this Count on behalf of the Ohio Class members against FCA.

1916. Plaintiffs and other Ohio Class members are "consumers" as defined by the Ohio Consumer Sales Practice Act, OHIO REV. CODE § 1345.01 ("Ohio CSPA").

1917. FCA is a "supplier" as defined by the Ohio CSPA.

1918. Plaintiffs and other Ohio Class members purchases or leases of the Class Vehicles were "consumer transactions" as defined by the Ohio CSPA.

1919. The Ohio CSPA, OHIO REV. CODE § 1345.02, broadly prohibits "an unconscionable act or practice in connection with a consumer transaction." Specifically, and without limitation of the broad prohibition, the Act prohibits suppliers from representing "(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have; [and] (2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not." OHIO REV. CODE § 1345.02. Defendant's conduct as alleged above and below constitutes unfair and unconscionable acts or practices in consumer sales transactions in violation of OHIO REV. CODE § 1345.02. By concealing the known defects in the Class Vehicles, FCA participated in unconscionable acts and practices that violated the Ohio CSPA.

1920. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1921. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles

causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1922. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1923. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1924. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

1925. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1926. Defendants knew or should have known that their conduct violated the Ohio CSPA.

1927. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles,

including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class members; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1928. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1929. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1930. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1931. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy.

1932. Plaintiffs and Ohio Class members seek actual damages, plus an amount not exceeding $5,000 in noneconomic damages, an order enjoining FCA's deceptive and unfair conduct, court costs and attorneys' fees as a result of Defendants' violations of the Ohio CSPA as provided in OHIO REV. CODE. § 1345.09.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON OHIO LAW)

1933. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1934. Plaintiffs bring this Count on behalf of the Ohio Class members against FCA.

1935. As set forth above, Plaintiffs and other Ohio Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle

promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1936. As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1937. As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1938. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

1939. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1940. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system

components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1941.  Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

1942.  The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1943.  Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their

vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1944. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1945. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate

Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1946. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1947. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1948. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1949. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1950. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class

Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

1951. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1952. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

1953. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1954.   Accordingly, FCA is liable to Plaintiffs and Ohio Class members for damages in an amount to be proved at trial.

1955.   FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY IN TORT

1956.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1957.   Plaintiffs bring this Count on behalf of the Ohio Class Members against FCA.

1958.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

1959.   Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off the CP4 high-pressure fuel injection pump and disperse throughout the Class Vehicles' fuel injection system, leading to leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death. This defect directly impacts the operability of the Class Vehicles and renders them unfit for ordinary purposes. FCA

thus failed to meet the expectations of a reasonable consumer, as the Class Vehicles fail in their ordinary, intended use because they do not function as a reasonable consumer would expect.

1960. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

1961. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Ohio Class members have been damaged in an amount to be proven at trial.

### LL. Claims Brought on Behalf of the Oklahoma Class Members

### COUNT I

### VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT
### (OKLA. STAT. TIT. 15, § 751 *et seq.*)

MM. Plaintiffs (for purposes of all Oklahoma Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

NN. Plaintiffs bring this Count on behalf of the Oklahoma Class members against FCA.

OO. Plaintiffs and the Oklahoma Class members are "persons" under the Oklahoma Consumer Protection Act ("Oklahoma CPA"), OKLA. STAT. TIT. 15, § 752.

PP. Defendants are a "person," "corporation," or "association" within the meaning of OKLA. STAT. TIT. 15, § 15-751(1).

QQ. The sale or lease of the Class Vehicles to the Oklahoma Class members was a "consumer transaction" within the meaning of OKLA. STAT. TIT. 15, § 752, and FCA's actions as set forth herein occurred in the conduct of trade or commerce.

RR. The Oklahoma CPA declares unlawful, *inter alia*, the following acts or practices when committed in the course of business: (1) "mak[ing] a false or misleading representation,

knowingly or with reason to know, as to the characteristics, . . . uses, [or] benefits, of the subject of a consumer transaction;" (2) making a false representation, "knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another;" (3) "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;" and (4) otherwise committing "an unfair or deceptive trade practice." OKLA. STAT. TIT. 15, § 753. FCA participated in misleading, false, or deceptive acts that violated the Oklahoma CPA.

SS. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

TT. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

UU. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

VV. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

WW. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

XX. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

YY. Defendants knew or should have known that their conduct violated the Oklahoma CPA.

ZZ. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

  a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b.  Intentionally concealed the foregoing from Plaintiffs and the Class members; and/or

c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1976.  Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.  Longevity, durability, performance, and safety are material concerns to diesel truck consumers.  FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1977.  Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

1978. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

1979. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy.

1980. FCA's conduct alleged herein was unconscionable because (1) Defendants, knowingly or with reason to know, took advantage of consumers reasonably unable to protect their interests because of their age, physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor; (2) at the time the consumer transactions were entered into, Defendants knew or had reason to know that price grossly exceeded the price at which similar vehicles were readily obtainable in similar transactions by like consumers; and (3) Defendants knew or had reason to know that the transaction Defendants induced the consumers to enter into were excessively one-sided in favor of Defendants.

1981. Because FCA's unconscionable conduct caused injury to Oklahoma Class members, Plaintiffs and Oklahoma Class members seek recovery of actual damages, discretionary penalties up to $2,000 per violation, punitive damages, and reasonable attorneys' fees, under Okla. Stat. tit. 15, § 761.1. Plaintiffs and Oklahoma Class members further seek an order enjoining FCA's unfair and/or deceptive acts or practices as well as all other proper and just relief available under Oklahoma CFA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON OKLAHOMA LAW)

1982. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1983.   Plaintiffs bring this Count on behalf of the Oklahoma Class members against FCA.

1984.   As set forth above, Plaintiffs and other Oklahoma Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

1985.   As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

1986.   As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

1987.   As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

1988.   As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the

required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

1989. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

1990. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range....confident you'll find your way back."

1991. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the

CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

1992. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

1993. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

1994. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an

internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

1995. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

1996. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

1997. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

1998. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1999. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

2000. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2001. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

2002.   FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2003.   Accordingly, FCA is liable to Plaintiffs and Oklahoma Class members for damages in an amount to be proved at trial.

2004.   FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (OKLA. STAT. ANN. § 12A-2-314)

2005.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2006.   Plaintiffs bring this Count on behalf of the Oklahoma Class Members against FCA.

2007.   FCA was and is a merchant with respect to motor vehicles within the meaning of the OKLA. STAT. ANN. § 12A-2-314.

2008.   Under OKLA. STAT. ANN. § 12A-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

2009.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

2010.  Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

2011.  FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

2012.  As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and other Class members have been damaged in an amount to be proven at trial.

**MM.      Claims Brought on Behalf of the Oregon Class Members**

**COUNT I**

**VIOLATIONS OF THE OREGON UNLAWFUL TRADE PRACTICES ACT
(OR. REV. STAT. § 647.605, *et seq.*)**

NN.    Plaintiffs (for purposes of all Oregon Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

OO.    Plaintiffs bring this Count on behalf of the Oregon Class members against FCA.

PP.    FCA is a "person" within the meaning of OR. REV. STAT. § 646.605(4).

QQ.    The Class Vehicles at issue are "goods" obtained primarily for personal family or household purposes within the meaning of OR. REV. STAT. § 646.605(6).

RR.    Pursuant to the Oregon Unfair Trade Practices Act ("Oregon UTPA"), a person engages in an unlawful trade practice if in the course of the person's business the person "(1) employs any unconscionable tactic in connection with selling, renting or disposing of . . . goods or services." OR. REV. STAT. § 646.607(1). The Oregon UTPA prohibits a person from, in the course of the person's business, doing any of the following: "(e) representing that . . . goods . . . have . . . characteristics . . . uses, benefits . . . or qualities that they do not have; (g) representing that . . . goods . . . are of a particular standard [or] quality . . . if they are of another; (i) advertising . . . goods or services with intent not to provide then as advertised;" and "(u) engaging in any other unfair or deceptive conduct in trade or commerce." OR. REV. STAT. § 646.608(1). GM participated in misleading, false, or deceptive acts that violated the Oregon UTPA. By concealing the known defects in Plaintiffs' Class Vehicles, GM engaged in deceptive business practices prohibited by the Oregon UTPA.

SS.    In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel

fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

TT.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

UU. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations.  They had no way of knowing that Defendants' representations were false and gravely misleading.  As alleged herein, Defendants engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

VV. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

WW. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

XX.  Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

YY. Defendants knew or should have known that their conduct violated the Oregon UTPA.

ZZ. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class members; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2026. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed

facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2027. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

2028. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

2029. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy.

2030. Plaintiffs and Oregon Class members are entitled to recover the greater of actual damages or $200 pursuant to OR. REV. STAT. § 646.638(1). Plaintiffs and other Oregon Class members also seek to recover attorneys' fees, and other just and proper relief available under the Oregon UTPA. Due to the significant level of reprehensibility, malice, reckless and outrageous indifference of FCA's conduct, Plaintiffs and Oregon Class members seek punitive damages.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON OREGON LAW)

2031.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2032.   Plaintiffs bring this Count on behalf of the Oregon Class members against FCA.

2033.   As set forth above, Plaintiffs and other Oregon Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

2034.   As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

2035.   As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

2036.   As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

2037.   As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the

CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

2038. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

2039. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

2040. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that

were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

2041.  Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

2042.  As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

2043.  FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no

way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

2044. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

2045. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

2046. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

2047. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class

members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2048. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

2049. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2050. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure

of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

2051. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2052. Accordingly, FCA is liable to Plaintiffs and Oregon Class members for damages in an amount to be proved at trial.

2053. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (OR. REV. STAT. § 72-3140)

2054. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2055. Plaintiffs bring this Count on behalf of the Oregon Class Members against FCA.

2056. FCA was and is a merchant with respect to motor vehicles within the meaning of the OR. REV. STAT. § 72-3140.

2057. Under OR. REV. STAT. § 72-3140, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

2058. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

2059. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

2060. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

2061. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Oregon Class members have been damaged in an amount to be proven at trial.

**NN.    Claims Brought on Behalf of the Pennsylvania Class Members**

**COUNT I**

**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION LAW
(73 P.S. § 201-1 *et seq.*)**

OO.     Plaintiffs (for purposes of all Pennsylvania Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

PP. Plaintiffs bring this Count on behalf of the Pennsylvania Class members against FCA.

QQ.     Plaintiffs and Pennsylvania Class members purchased or leased their Class Vehicles primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

RR.     All of the acts complained of herein were perpetrated by FCA in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

SS. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including: (i) "Representing that goods or services have . . . characteristics, . . . [b]enefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade . . . if they are of another;" (iii) "Advertising goods or services with intent not to sell them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4). GM engaged in unlawful trade practices, and unfair or deceptive acts or practices that violated Pennsylvania CPL.

TT. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable

American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

UU. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

VV. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

WW. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

XX. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

YY. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

ZZ. Defendants knew or should have known that their conduct violated the Pennsylvania CPL.

AAA. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

    a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

    b. Intentionally concealed the foregoing from Plaintiffs and the Class members; and/or

    c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2075. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine

systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2076. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

2077. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

2078. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy.

2079. FCA is liable to Plaintiffs and Pennsylvania Class members for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 P.S. § 201-9.2(a). Plaintiffs and the Pennsylvania Class members are also entitled to an award of punitive damages given that Defendants' conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

**COUNT II**

## FRAUDULENT CONCEALMENT
## (BASED ON PENNSYLVANIA LAW)

2080.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2081.   Plaintiffs bring this Count on behalf of the Pennsylvania Class members against FCA.

2082.   As set forth above, Plaintiffs and other Pennsylvania Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

2083.   As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

2084.   As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

2085.   As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain

of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

2086. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

2087. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

2088. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

2089. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced

and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

2090. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

2091. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole

truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

2092. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

2093. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

2094. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

2095. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

2096. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and

the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2097. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

2098. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2099. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have

been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

2100. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2101. Accordingly, FCA is liable to Plaintiffs and Pennsylvania Class members for damages in an amount to be proved at trial.

2102. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(13 PA. CONS. STAT. ANN. § 2314)**

2103. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2104. Plaintiffs bring this Count on behalf of the Pennsylvania Class members against FCA.

2105. FCA was and is a merchant with respect to motor vehicles within the meaning of the 13 PA. CONS. STAT. ANN. § 2314.

2106. Under 13 Pa. Cons. Stat. Ann. § 2314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

2107. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

2108. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

2109. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

2110. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Pennsylvania Class members have been damaged in an amount to be proven at trial.

## COUNT IV

## UNJUST ENRICHMENT

2111.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2112.   Plaintiffs bring this Count on behalf of the Pennsylvania Class members against FCA.

2113.   This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class members.

2114.   As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, FCA charged a higher price for the Class Vehicles than the Vehicles' true value and FCA, therefore, obtained monies that rightfully belong to Plaintiffs and other Class members.

2115.   FCA enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members, who paid a higher price for their vehicles that actually had lower values.

2116.   FCA has received and retained unjust benefits from the Plaintiffs and other Class members, and inequity has resulted.

2117.   Thus, all Plaintiffs and Class members conferred a benefit on FCA.

2118.   It would be inequitable and unconscionable for FCA to retain these wrongfully obtained benefits.

2119.   Because FCA concealed its fraud and deception, Plaintiffs and other Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from FCA's misconduct.

2120. FCA knowingly accepted and retained the unjust benefits of its fraudulent conduct.

2121. As a result of FCA's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class members, in an amount to be proven at trial. Plaintiffs and other Class members, therefore, seek an order establishing FCA as a constructive trustee of the profits unjustly obtained, plus interest.

### OO.     Claims Brought on Behalf of the Rhode Island Class Members

### COUNT I

### VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT
### (R.I. GEN. LAWS § 6-13.1 *et seq.*)

OO.     Plaintiffs (for purposes of all Rhode Island Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

PP.     Plaintiffs bring this Count on behalf of the Rhode Island Class members against FCA.

QQ.     Plaintiffs and other Rhode Island Class members are persons who purchased or leased Class Vehicles primarily for personal, family, or household purposes within the meaning of R.I. GEN. LAWS § 6-13.1-5.2(a).

RR.     Unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful. R.I. GEN. LAWS § 6-13.1-2.

SS.     Rhode Island's Unfair Trade Practices and Consumer Protections Act ("Rhode Island CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including: "(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;" "(vii)

Representing that goods or services are of a particular standard, quality, or grade, … if they are of another;" "(ix) Advertising goods or services with intent not to sell them as advertised;" "(xii) Engaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding;" "(xiii) Engaging in any act or practice that is unfair or deceptive to the consumer;" and "(xiv) Using other methods, acts or practices which mislead or deceive Members of the public in a material respect." R.I. GEN. LAWS § 6-13.1-1(6).

TT. FCA engaged in unlawful trade practices, including: (1) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Class Vehicles are of a particular standard and quality when they are not; (3) advertising the Class Vehicles with the intent to sell them as advertised; and (4) otherwise engaging in conduct that is unfair or deceptive and likely to deceive. Plaintiffs and other Class Members purchased or leased the Class Vehicles for personal, family, or household purposes. FCA's conduct violated the Rhode Island CPA, and FCA knew or should have known that its conduct would be in violation thereof.

UU. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission

of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

VV.  In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

WW. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations.  They had no way of knowing that Defendants' representations were false and gravely misleading.  As alleged herein, Defendants engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

XX. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

YY. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

ZZ.  Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

AAA.  Defendants knew or should have known that their conduct violated the Rhode Island CPA.

BBB.    Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

    a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

    b.  Intentionally concealed the foregoing from Plaintiffs and the Class members; and/or

    c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2136.    Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.  Longevity, durability, performance, and safety are

material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2137. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

2138. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

2139. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy.

2140. Plaintiffs and Rhode Island Class members are entitled to recover the greater of actual damages or $200 pursuant to R.I. GEN. LAWS § 6-13.1-5.2(a). Plaintiffs and the Rhode Island Class members also seek punitive damages in the discretion of the Court.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON RHODE ISLAND LAW)

2041. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2042. Plaintiffs bring this Count on behalf of the Rhode Island Class members against FCA.

2043.  As set forth above, Plaintiffs and Rhode Island Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom. There is a substantial difference in the market value of the vehicle promised by Defendants and the market value of the vehicle received by Plaintiffs. Plaintiffs did not receive the benefit of the bargain, but received less than what was bargained for.

2044.  As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

2045.  As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

2046.  As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

2047.  As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the

required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

2048. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

2049. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

2050. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the

CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

2051. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

2052. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

2053. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an

internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

2054. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

2055. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

2056. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

2057. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class

members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2058.   Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

2059.   Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2060.   FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure

of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

2061. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2062. Accordingly, FCA is liable to Plaintiffs and Rhode Island Class members for damages in an amount to be proved at trial.

2063. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (R.I. GEN. LAWS § 6A-2-314)

2064. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2065. Plaintiffs bring this Count on behalf of the Rhode Island Class members against FCA.

2066. Pursuant to R.I. GEN. LAWS § 6A-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

2067. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

2068. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

2069. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

2070. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Rhode Island Class members have been damaged in an amount to be proven at trial.

COUNT IV

UNJUST ENRICHMENT

2071. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2072. Plaintiffs bring this Count on behalf of the Rhode Island Class members against FCA.

2073. This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class members.

2074. As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Bosch CP4 Pump and the Class Vehicles and the concealment thereof, FCA charged a higher price for the Class Vehicles than the Vehicles' true value and FCA, therefore, obtained monies that rightfully belong to Plaintiffs and other Class members.

2075. FCA enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members, who paid a higher price for their vehicles that actually had lower values.

2076. FCA has received and retained unjust benefits from the Plaintiffs and other Class members, and inequity has resulted.

2077. Thus, all Plaintiffs and Class members conferred a benefit on FCA.

2078. It would be inequitable and unconscionable for FCA to retain these wrongfully obtained benefits.

2079. Because FCA concealed its fraud and deception, Plaintiffs and other Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from FCA's misconduct.

2080. FCA knowingly accepted and retained the unjust benefits of its fraudulent conduct.

2081. As a result of FCA's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class members, in an amount to be proven at trial. Plaintiffs and other Class members, therefore, seek an order establishing FCA as a constructive trustee of the profits unjustly obtained, plus interest.

## PP.    Claims Brought on Behalf of the South Carolina Class

## COUNT I

## VIOLATIONS OF THE SOUTH CAROLINA
## UNFAIR TRADE PRACTICES ACT
## (S.C. CODE ANN. § 39-5-10 *et seq.*)

2082.    Plaintiffs (for purposes of all South Carolina Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

2083.    Plaintiffs bring this Count on behalf of the South Carolina Class members against FCA.

2084.    FCA is a "person" under S.C. CODE ANN. § 39-5-10.

2085.    The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. CODE ANN. § 39-5-20(a). FCA's conduct and acts were offensive to public policy or immoral, unethical, or oppressive, thus unfair; indeed, to manufacture, distribute, and promote large-engine diesel vehicles with a known susceptibility to catastrophic failure while the vehicle is in motion is surely detrimental to the public at large. FCA's unfair or deceptive acts or practices were prohibited by the South Carolina UTPA.

2086.    In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with

*American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2087. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

2088. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2089. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

2090. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2091. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2092. Defendants knew or should have known that their conduct violated the South Carolina UTPA.

2093. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

  a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

  b. Intentionally concealed the foregoing from Plaintiffs and the Class members; and/or

  c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2094. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed

facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.  Longevity, durability, performance, and safety are material concerns to diesel truck consumers.  FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2095. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

2096. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

2097.  Defendants' violations present a continuing risk to Plaintiffs as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy. Specifically: (1) the number of consumers affected by FCA's deceptive practices are in the hundreds of thousands nation-wide; (2) FCA has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class members; and (3) so long as the Class Vehicles continue to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant. Additionally, FCA's conduct was offensive to public interest because the unfair acts and practices have the potential for repetition.

2098.  Pursuant to S.C. CODE ANN. § 39-5-140(a), Plaintiffs and South Carolina Class members seek monetary relief against Defendant to recover for economic losses, reasonable

attorneys' fees and costs. Because Defendants' actions were willful and knowing, Plaintiffs and the South Carolina Class members damages should be trebled.

2099.   Plaintiffs and South Carolina Class members further allege that Defendants' malicious and deliberate conduct warrants an assessment of punitive damages because Defendant carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs and the South Carolina Class members to cruel and unjust hardship as a result.

## COUNT II

### VIOLATIONS OF THE SOUTH CAROLINA REGULATION OF MANUFACTURERS, DISTRIBUTORS, AND DEALERS ACT (S.C. CODE ANN. § 56-15-10 *et seq.*)

2100.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2101.   Plaintiffs bring this Count on behalf of the South Carolina Class members against FCA.

2102.   FCA is a "manufacturer" as set forth in S.C. CODE ANN. § 56-15-10, as at all relevant times it was engaged in the business of manufacturing or assembling new or unused motor vehicles.

2103.   FCA committed unfair or deceptive acts or practices that violated the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act"), S.C. CODE ANN. § 56-15-30.

2104.   FCA engaged in actions which were arbitrary, in bad faith, unconscionable, and which caused damage to Plaintiffs, the South Carolina Class members, and to the public.

2105.   FCA's bad faith and unconscionable actions include, but are not limited to: (1) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising the Class Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving the Class Vehicles confers or involves

rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving the Class Vehicles has been supplied in accordance with a previous representation when it has not.

2106.    FCA resorted to and used false and misleading advertisements in connection with its business. As alleged above, FCA made numerous material statements about the safety, reliability, and functionality of the Class Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of FCA's unlawful advertising and representations as a whole.

2107.    Plaintiffs and other South Carolina Class members bring this action pursuant to S.C. CODE ANN. § 56-15-110(2), as the action is one of common or general interest to many persons and the parties are too numerous to bring them all before the Court.

2108.    Plaintiffs are entitled to double their actual damages, injunctive relief, the cost of the suit and attorneys' fees pursuant to S.C. CODE ANN. § 56-15-110. Plaintiffs and South Carolina Class members also seek treble damages because FCA acted maliciously.

**COUNT III**

**FRAUDULENT CONCEALMENT**
**(BASED ON SOUTH CAROLINA LAW)**

2109.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2110.    Plaintiffs bring this Count on behalf of the South Carolina Class members against FCA.

2111.    As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

2112. As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

2113. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

2114. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

2115. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

2116. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are

"best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

2117. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

2118. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

2119. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

2120. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

2121. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

2122. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

2123. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

2124. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2125. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

2126. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2127. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

2128. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2129. Accordingly, FCA is liable to Plaintiffs and South Carolina Class members for damages in an amount to be proved at trial.

2130. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (S.C. CODE ANN. § 36-2-314)

2131.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2132.    Plaintiffs bring this Count on behalf of the South Carolina Class Members against FCA.

2133.    FCA is a merchant with respect to motor vehicles within the meaning of the S.C. CODE ANN. § 36-2-314.

2134.    Pursuant to S.C. CODE ANN. § 36-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

2135.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

2136.    Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

2137. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

2138. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and South Carolina Class members have been damaged in an amount to be proven at trial.

## QQ. Claims Brought on Behalf of the South Dakota Class Members

### COUNT I

### VIOLATIONS OF SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW (S.D. CODIFIED LAWS § 37-24-1 *et seq.*)

2139. Plaintiffs (for purposes of all South Dakota Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

2140. Plaintiffs bring this Count on behalf of the South Dakota Class members against FCA.

2141. The South Dakota Deceptive Trade Practices and Consumer Protection Law ("South Dakota CPL") prohibits deceptive acts or practices, which are defined for relevant purposes to include "[k]nowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person in fact been misled, deceived, or damaged thereby." S.D. CODIFIED LAWS § 37-24-6(1). FCA's conduct as set forth herein constitutes deceptive acts or practices, fraud, false promises, misrepresentation, concealment, suppression and omission of material facts in violation of the South Dakota CPL, including but not limited to, FCA's misrepresentations and omissions

regarding the safety and reliability of the Class Vehicles, and their incompatibility with U.S. diesel fuel.

2142. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2143. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

2144. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the

defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2145. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

2146. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2147. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2148. Defendants knew or should have known that their conduct violated the South Dakota CPL.

2149. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

    a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

    b. Intentionally concealed the foregoing from Plaintiffs and the Class members; and/or

    c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2150. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding

the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.  Longevity, durability, performance, and safety are material concerns to diesel truck consumers.  FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2151. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

2152. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

2153.  Defendants' violations present a continuing risk to Plaintiffs as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy.

2154.    Pursuant to S.D. CODIFIED LAWS. § 37-24-31, Plaintiffs and South Dakota Class members seek actual damages and reasonable attorneys' fees, costs, and any other just and proper relief available under the South Dakota CPL.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON SOUTH DAKOTA LAW)

2155.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2156.    Plaintiffs bring this Count on behalf of the South Dakota Class members against FCA.

2157.    As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

2158.    As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

2159.    As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

2160.    As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the

required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

2161. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

2162. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

2163. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the

CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

2164. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

2165. As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

2166. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an

internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

2167. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

2168. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

2169. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

2170. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class

members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2171. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

2172. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2173. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure

of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

2174. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2175. Accordingly, FCA is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

2176. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (S.D. CODIFIED LAWS § 57A-2-314)

2177. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2178. Plaintiffs bring this Count on behalf of the South Dakota Class members against FCA.

2179. FCA is a merchant with respect to motor vehicles within the meaning of the S.D. CODIFIED LAWS § 57A-2-314.

2180. Pursuant to S.D. CODIFIED LAWS § 57A-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

2181.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

2182.   Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

2183.   FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

2184.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and South Dakota Class members have been damaged in an amount to be proven at trial.

**RR.      Claims Brought on Behalf of the Tennessee Class Members**

**COUNT I**

**VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT
(TENN. CODE ANN. § 47-18-101 *et seq.*)**

2185.    Plaintiffs (for purposes of all Tennessee Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

2186.    Plaintiffs bring this Count on behalf of the Tennessee Class members against FCA.

2187.    Plaintiffs and Tennessee Class members are "natural persons" and "consumers" within the meaning of TENN. CODE ANN. § 47-18-103(2).

2188.    FCA is a "person" within the meaning of TENN. CODE ANN. § 47-18-103(2).

2189.    FCA's conduct complained of herein affected "trade," "commerce" and/or "consumer transactions" within the meaning of TENN. CODE ANN. § 47-18-103(19).

2190.    The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to: "(5) Representing that goods or services have … characteristics, [or] … benefits … that they do not have;" "(7) Representing that goods or services are of a particular standard, quality or grade … if they are of another;" "(9) Advertising good or services with intent not to sell them as advertised;" and "(27) Engaging in any other act or practice which is deceptive to the consumer or any other person." TENN. CODE ANN. § 47-18-104. FCA violated Tennessee CPA by engaging in unfair or deceptive acts.

2191.    In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with

*American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2192. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

2193. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2194. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

2195. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2196. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2197. Defendants knew or should have known that their conduct violated the Tennessee CPA.

2198. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class members; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2199. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed

facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2200. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

2201. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

2202. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy.

2203. Pursuant to TENN. CODE ANN.§ 47-18-109(a), Plaintiffs and Tennessee Class members seek monetary relief against FCA measured as actual damages in an amount to be determined at trial, treble damages as a result of FCA's willful or knowing violations, and reasonable attorneys' fees, costs, and any other just and proper relief available under the Tennessee CPA.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON TENNESSEE LAW)

2204.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2205.     Plaintiffs bring this Count on behalf of the Tennessee Class members against FCA.

2206.     As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

2207.     As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

2208.     As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

2209.     As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

2210.     As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system

components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

2211.  Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

2212.  The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

2213.  Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their

vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

2214.  As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

2215.  FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate

Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

2216. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

2217. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

2218. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

2219. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2220. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class

Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

2221.   Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2222.   FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

2223.   FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2224. Accordingly, FCA is liable to Plaintiffs and Tennessee Class members for damages in an amount to be proved at trial.

2225. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (TENN. CODE § 47-2-314)

2226. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2227. Plaintiffs bring this Count on behalf of the Tennessee Class members against FCA.

2228. FCA is a merchant with respect to motor vehicles within the meaning of the TENN. CODE § 47-2-314.

2229. Pursuant to TENN. CODE § 47-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

2230. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

2231. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members)

causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

2232.   FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

2233.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and other Class members have been damaged in an amount to be proven at trial.

### SS. Claims Brought on Behalf of the Utah Class Members

### COUNT I

### VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT
### (UTAH CODE ANN. § 13-11-1, *et seq.*)

2234.   Plaintiffs (for purposes of all Utah Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

2235.   Plaintiffs bring this Count on behalf of the Utah Class members against FCA.

2236.   FCA qualifies as a "supplier" under the Utah Consumer Sales Practices Act ("Utah CSPA"). UTAH CODE ANN. § 13-11-3.

2237.   Plaintiffs and Utah Class members are "persons" under UTAH CODE ANN. § 13-11-3.

2238. Sales and leases of the Class Vehicles to Plaintiffs and the Utah Class members are "consumer transactions" within the meaning of UTAH CODE ANN. § 13-11-3(2).

2239. The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction" under Utah Code Ann. § 13-11-4. Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or "(b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not." UTAH CODE ANN. § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. UTAH CODE ANN. § 13-11-5. FCA committed deceptive acts or practices in the conduct of trade or commerce, by, among other things: (a) engaging in unconscionable acts; (b) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; and (c) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not.

2240. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2241. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class

Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

2242. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2243. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

2244. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2245. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2246. Defendants knew or should have known that their conduct violated the Utah CSPA.

2247. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

    a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles,

including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

    b.   Intentionally concealed the foregoing from Plaintiffs and the Class members; and/or

    c.   Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2248. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2249. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

2250. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

2251. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy.

2252. Pursuant to UTAH CODE ANN. § 13-11-4, Plaintiffs and Utah Class members seek monetary relief against FCA measured as the greater of (a)actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for Plaintiffs and each Utah Class member, reasonable attorneys' fees, costs, and any other just and proper relief available under the Utah CSPA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON UTAH LAW)

2253. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2254. Plaintiffs bring this Count on behalf of the Utah Class members against FCA.

2255. As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

2256.   As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

2257.   As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class members.

2258.   As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

2259.   As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

2260.   Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are

"best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

2261. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

2262. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

2263. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

2264. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

2265. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

2266. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

2267.  FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

2268.  FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2269.  Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

2270. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2271. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

2272. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2273. Accordingly, FCA is liable to Plaintiffs and Utah Class members for damages in an amount to be proved at trial.

2274. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (UTAH CODE ANN. § 70A-2-314)

2275.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2276.    Plaintiffs bring this Count on behalf of the Utah Class members against FCA.

2277.    FCA is a merchant with respect to motor vehicles within the meaning of the UTAH. CODE ANN. § 70A-2-314.

2278.    Pursuant to UTAH CODE ANN. § 70A-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

2279.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

2280.     Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

2281.    FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

2282.    As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Utah Class members have been damaged in an amount to be proven at trial.

## TT. Claims Brought on Behalf of the Vermont Class Members

### COUNT I

### VIOLATIONS OF THE VERMONT CONSUMER FRAUD ACT
### (VT. STAT. ANN. TIT. 9, § 2451 *et seq.*)

2283.    Plaintiffs (for purposes of all Vermont Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

2284.    Plaintiffs bring this Count on behalf of the Vermont Class members against FCA.

2285.    The Vermont Consumer Fraud Act ("Vermont CFA") makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." VT. STAT. ANN. TIT. 9, § 2453(a).

2286.    FCA was and is a seller within the meaning of VT. STAT. ANN. TIT. 9, § 2451(a)(c).

2287.    FCA's acts and omission, as defined throughout this Complaint, were unfair and deceptive acts or practices in commerce which violated the Vermont CFA, and FCA knew or should have known that its conduct violated this Statute.

2288.    Plaintiffs are entitled to recover "appropriate equitable relief" and "the amount of [their] damages, or the consideration or the value of the consideration given by [them], reasonably attorneys' fees, and explanatory damages not exceeding three times the value of the consideration given by [them]," pursuant to VT. STAT. ANN. TIT. 9, § 2461(b).

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON VERMONT LAW)

2289. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2290. Plaintiffs bring this Count on behalf of the Vermont Class members against FCA.

2291. As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

2292. As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

2293. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

2294. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

2295. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system

components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

2296. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

2297. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

2298. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their

vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

2299.　As alleged　above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

2300.　FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate

Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

2301.    Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

2302.    FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

2303.    FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

2304.    FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2305.    Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class

Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

2306. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2307. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

2308. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2309.   Accordingly, FCA is liable to Plaintiffs and Vermont Class members for damages in an amount to be proved at trial.

2310.   FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(VT. STAT. ANN. TIT. 9A § 2-314)**

2311.  Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2312.  Plaintiffs bring this Count on behalf of the Vermont Class members against FCA.

2313.  FCA is a merchant with respect to motor vehicles within the meaning of the VT. STAT. ANN. TIT. 9A § 2-314.

2314.  Pursuant to VT. STAT. ANN. TIT. 9A § 2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

2315.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

2316.  Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the

design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

2317. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

2318. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Vermont Class members have been damaged in an amount to be proven at trial.

### UU. Claims Brought on Behalf of the Virginia Class Members

### COUNT I

### VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT
### (VA. CODE ANN. § 59.1-196 *et seq.*)

2319. Plaintiffs (for purposes of all Virginia Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

2320. Plaintiffs bring this Count on behalf of the Virginia Class members against FCA.

2321. FCA is a "supplier" as defined by VA. CODE ANN. § 59.1-198. The transaction between Plaintiffs and the other Virginia Class members on the one hand and FCA on the other, leading to the purchase or lease of the Class Vehicles by Plaintiffs and Virginia Class members, are "consumer transactions" as defined by VA. CODE ANN. § 59.1-198, because the Class Vehicles were purchased or leased primarily for personal, family or household purposes.

2322. The Virginia Consumer Protection Act ("Virginia CPA") prohibits the following fraudulent acts or practices committed by a supplier in a consumer transaction: "(5) misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; (6) misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; . . . (8) advertising goods or services with intent not to sell them as advertised; . . . [and] (14) using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]" VA. CODE ANN. § 59.1-200(A).

2323. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2324. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

2325. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel

Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2326. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

2327. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2328. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2329. Defendants knew or should have known that their conduct violated the Virginia CPA.

2330. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

    a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

    b. Intentionally concealed the foregoing from Plaintiffs and the Class members; and/or

    c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2331. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2332. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

2333. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

2334. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy.

2335. Pursuant to Va. CODE ANN. § 59.1-204, Plaintiffs and Virginia Class members seek monetary relief against FCA measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for Plaintiffs and each Utah Class member. Because FCA's conduct was committed willfully and knowingly, Plaintiffs and Virginia Class members are each entitled to recover the greater of (a) three times actual damages or (b) $1,000.

2336. Plaintiffs and Virginia Class members also seek an order enjoining FCA's fraudulent, unfair and/or deceptive acts or practices, punitive damages, and reasonable attorneys' fees, costs, and any other just and proper relief available under the Virginia CPA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON VIRGINIA LAW)

2337. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2338. Plaintiffs bring this Count on behalf of the Virginia Class members against FCA.

2339. As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

2340. As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

2341. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

2342. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

2343. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

2344. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

2345. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other

Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

2346.  Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

2347. As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial

disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

2348. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

2349. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

2350. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

2351. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs

and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

2352. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2353. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

2354. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained

damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2355.   FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

2356.   FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2357.   Accordingly, FCA is liable to Plaintiffs and Virginia Class members for damages in an amount to be proved at trial.

2358.   FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (VA. CODE ANN. § 8.2-314)

2359.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2360.   Plaintiffs bring this Count on behalf of the Virginia Class Members against FCA.

2361.	FCA is a merchant with respect to motor vehicles within the meaning of the VA. CODE ANN. § 8.2-314.

2362.	Pursuant to VA. CODE ANN. § 8.2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

2363.	The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

2364.	Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

2365.	FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

2366.  As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Virginia Class members have been damaged in an amount to be proven at trial.

**VV.**      **Claims Brought on Behalf of the Washington Class Members**

**COUNT I**

**VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT**
**(WASH. REV. CODE ANN. § 19.86.010 *et seq.*)**

2367. Plaintiffs (for purposes of all Washington Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

2368. Plaintiffs bring this Count on behalf of the Washington Class members against FCA.

2369. FCA, Plaintiffs and Washington Class members are "person[s]" under WASH. REV. CODE ANN. § 19.86.010(1) ("Washington CPA").

2370. At all relevant times, FCA was and is engaged in "trade" or "commerce" under WASH. REV. CODE ANN. § 19.86.010(2).

2371. The Washington CPA broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." WASH. REV. CODE ANN. § 19.96.010. FCA's conduct was unfair because it (1) offends public policy as it has been established by statutes, the common law, or otherwise; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. In short, FCA's conduct has been deceptive because it has the capacity or tendency to deceive.

2372.  In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a

reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2373. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

2374. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2375. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

2376. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2377. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2378. Defendants knew or should have known that their conduct violated the Washington CPA.

2379.   Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

   a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

   b.   Intentionally concealed the foregoing from Plaintiffs and the Class members; and/or

   c.   Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2380.   Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.  Longevity, durability, performance, and safety are

material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2381. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

2382. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

2383. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy. Specifically: (1) the number of consumers affected by FCA's deceptive practices are in the hundreds of thousands nation-wide; (2) FCA has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class members; and (3) so long as the Class Vehicles continue to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant.

2384. FCA is liable to Plaintiffs and Washington Class members for damages in an amount to be determined at trial including attorneys' fees, costs, and treble damages up to $25,000 as well as any other just and proper relief the Court deems appropriate under WASH. REV. CODE ANN. § 19.86.090.

## COUNT II
## FRAUDULENT CONCEALMENT

2385. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2386. Plaintiffs bring this Count on behalf of the Washington Class members against FCA.

2387. As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

2388. As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

2389. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

2390. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

2391. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically

fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

2392. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

2393. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

2394. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability

and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

2395. As alleged above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

2396. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate

Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

2397. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

2398. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

2399. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

2400. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2401. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class

Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

2402.   Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2403.   FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

2404.   FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2405.   Accordingly, FCA is liable to Plaintiffs and Washington Class members for damages in an amount to be proved at trial.

2406.   FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (WASH. REV. CODE ANN. § 62A.2-314)

2407.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2408.   Plaintiffs bring this Count on behalf of the Washington Class members against FCA.

2409.   Pursuant to WASH. REV. CODE ANN. § 62A.2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

2410.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

2411.   Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and

disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

2412. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

2413. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Washington Class members have been damaged in an amount to be proven at trial.

**WW.** **Claims Brought on Behalf of the West Virginia Class Members**

**COUNT I**

**VIOLATIONS OF THE WEST VIRGINIA CONSUMER CREDIT
AND PROTECITON ACT
(W. VA. CODE § 46A-1-101 *et seq.*)**

2414. Plaintiffs (for purposes of all West Virginia Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

2415. Plaintiffs state this Count on behalf of the West Virginia Class members against FCA.

2416. Plaintiffs intend to assert a claim under the West Virginia Consumer and Protection Act ("West Virginia CCPA") which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce…" W. VA. CODE § 46A-6-104. Plaintiffs will make a demand in satisfaction of W. VA. CODE § 46A-6-106(b), and may amend this Complaint to assert claims under the CCPA once the required 20 days have elapsed. This paragraph is

included for purposes of notice only and is not intended to actually assert a claim under the West Virginia CCPA.

**COUNT II**

**FRAUDULENT CONCEALMENT**

**(BASED ON WEST VIRGINIA LAW)**

2417. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2418. Plaintiffs bring this Count on behalf of the West Virginia Class members against FCA.

2419. As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

2420. As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

2421. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

2422. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

2423. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

2424. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

2425. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

2426.   Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

2427.   As alleged   above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

2428.   FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be

used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

2429. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

2430. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

2431. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

2432. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2433. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

2434. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2435. FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

2436. FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2437. Accordingly, FCA is liable to Plaintiffs and West Virginia Class members for damages in an amount to be proved at trial.

2438. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (W.VA. CODE ANN. § 46-2-314)

2439. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2440. Plaintiffs bring this Count on behalf of the West Virginia Class Members against FCA.

2441. At all relevant times. FCA was and is a merchant with respect to motor vehicles within the meaning of the W. VA. CODE § 46-2-314.

2442. Pursuant to W. VA. CODE § 46-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

2443. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

2444. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members) causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

2445. FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

2446. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and West Virginia Class members have been damaged in an amount to be proven at trial.

## XX. Claims Brought on Behalf of the Wisconsin Class Members

### COUNT I

### VIOLATIONS OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT (WIS. STAT. § 110.18)

2447. Plaintiffs (for purposes of all Wisconsin Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

2448. Plaintiffs bring this Count on behalf of the Wisconsin Class members against FCA.

2449. FCA is a "person, firm, corporation or association" within the meaning of WIS. STAT. § 100.18(1).

2450. Plaintiffs and Wisconsin Class members are members of "the public" within the meaning of WIS. STAT. § 100.18(1). Plaintiffs and Wisconsin Class members purchased or leased one or more Class Vehicles in Wisconsin.

2451. The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits an "assertion, representation or statement of fact which is untrue, deceptive or misleading." WIS. STAT. § 100.18(1). By systematically concealing the defects in the Class Vehicles, FCA's conduct, acts, and practices violated the Wisconsin DTPA.

2452. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2453. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

2454. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2455. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

2456. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2457. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2458. Defendants knew or should have known that their conduct violated the Wisconsin DTPA.

2459. Defendants owed Plaintiffs and Class Members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

    a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

    b. Intentionally concealed the foregoing from Plaintiffs and the Class Members; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2452. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2453. Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

2454. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the

benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

2455.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy.

2456.   Plaintiffs and Wisconsin Class members seek actual damages, court costs, attorneys' fees, and as well as any other just and proper relief the Court deems appropriate under WIS. STAT. § 100.18(11)(b)(2). Because FCA's conduct was committed knowingly and/or intentionally, Plaintiffs and Wisconsin Class members are entitled to treble damages and any other such relief necessary to deter FCA's unlawful conduct in the future.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON WISCONSIN LAW)

2457.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2458.   Plaintiffs bring this Count on behalf of the Wisconsin Class members against FCA.

2459.   As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

2460.   As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

2461. As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

2462. As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

2463. As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

2464. Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

2465. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other

Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

2466. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

2467. As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial

disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

2468. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

2469. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

2470. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

2471. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs

and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

2472. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2473. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

2474. Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained

damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2475.  FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

2476.  FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2477.  Accordingly, FCA is liable to Plaintiffs and Wisconsin Class members for damages in an amount to be proved at trial.

2478.  FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### YY.      Claims Brought on Behalf of the Wyoming Class Members

### COUNT I

### VIOLATIONS OF THE WYOMING CONSUMER PROTECTION ACT
### (WYO. STAT. § 40-12-105 *et seq.)*

2479. Plaintiffs (for purposes of all Wyoming Class member Counts) incorporate by reference all paragraphs as though fully set forth herein.

2480. Plaintiffs bring this Count on behalf of the Wyoming Class members against FCA.

2481. FCA, Plaintiffs, and Class members are "persons" within the meaning of WYO. STAT. § 40-12-102(a)(i).

2482. Under the Wyoming Consumer Protection Act ("Wyoming CPA"), a person engages in a deceptive trade practice when, in the course of its business and in connection with a consumer transaction, it knowingly: "(iii) Represents that merchandise is of a particular standard, grade, style or model, if it is not;" "(v) Represents that merchandise has been supplied in accordance with a previous representation, if it has not…;" "(viii) Represents that a consumer transaction involves a warranty, a disclaimer of warranties, particular warranty terms, or other rights, remedies or obligations if the representation is false;" "(x) Advertises merchandise with intent not to sell it as advertised;" or "(xv) Engages in unfair or deceptive acts or practices." WYO. STAT. § 45-12-105.

2483. In the course of Defendants' business, they willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendants' advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

2484. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

2485. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

2486. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

2487. Defendants' deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

2488. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2489. Defendants knew or should have known that their conduct violated the Wyoming CPA.

2490. Defendants owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendants:

a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class members; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2491. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, FCA had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, FCA had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. FCA represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates

a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2492.  Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members.

2493.  Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

2494.  Defendants' violations present a continuing risk to Plaintiffs as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest and offends public policy.

2495.  Pursuant to WYO. STAT. § 40-12-108(a), Plaintiffs and Wyoming Class members intend to seek monetary relief against FCA measured as actual damages in an amount to be determined at trial, in addition to any other just and proper relief available under the Wyoming CPA.

2496.  In accordance with WYO. STAT. § 45-12-109, Plaintiffs will send a notice letter to Defendants FCA and will amend their allegations herein accordingly once the applicable statutorily required notice period has elapsed if FCA has failed to remedy the defects and damages complained of herein.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON WYOMING LAW)

2497.  Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2498.  Plaintiffs bring this Count on behalf of the Wyoming Class members against FCA.

2499.  As alleged above, FCA intentionally concealed and suppressed material facts concerning the durability, performance, fuel efficiency, and quality of the Class Vehicles, and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Class about the true nature of the Class Vehicles and reap the financial benefits of that deception.

2500.  As alleged above, FCA knew at least by 2007 what American diesel fuel specifications were and how such diesel was incompatible with Class Vehicles' diesel engine and fuel systems, including the Bosch CP4 high-pressure fuel injection system.

2501.  As alleged above, FCA knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning in 2014 model year, but it did not disclose this information to Plaintiffs or Class Members.

2502.  As alleged above, FCA had knowledge by at least 2013 that its diesel fuel injection systems were incompatible with American diesel fuel specifications. Specifically the CP4 fuel pump specifications for lubricity allow a maximum of 460 wear scar, whereby the required specification for American diesel fuel is 520 wear scar. By definition, the CP4 fuel pump will not be adequately lubricated by American diesel fuel.

2503.  As alleged above, prior to the design, manufacture and sale of the Class Vehicles, FCA knew that the Bosch CP4 Pumps were expected to quickly and catastrophically fail in the Class Vehicles, and that such failure would result in contamination of the fuel system

components and require repair and replacement of those components, the repairs or replacements of which FCA would refuse to cover under its warranties.

2504.  Despite this knowledge, FCA marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, touting the increased durability, fuel economy and performance qualities of the Class Vehicles and that the Class Vehicles had no significant defects and were compatible with U.S. diesel fuel. Marketing and advertising materials of FCA asserted that Class Vehicles are "best fuel economy of any full-size pick-up," best-in-class fuel efficiency," and "with an incredible 730-mile highway driving range….confident you'll find your way back."

2505.  The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel vehicle consumers, like Plaintiffs and other Class Members. FCA represented to Plaintiffs and Class Members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it only a matter of time before catastrophic failure occurs.

2506.  Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations regarding the increased durability and fuel efficiency of the Class vehicles, FCA had a duty to disclose to Class members that their

vehicles were incompatible with the use of U.S. diesel fuel and the consequences of that incompatibility, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will damage Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles.

2507. As alleged  above, FCA made specific disclosures and representations to Plaintiffs through the marketing and advertising materials used nationally, and specifically within this District during the timeframe prior to the Plaintiffs purchasing Class Vehicles. FCA had a duty to disclose because: (1) FCA made disclosures about the Class Vehicles; (2) FCA made earlier representations that were misleading or untrue; and (3) FCA made a partial disclosure that conveyed a false impression. As outlined above, FCA made disclosures and representations that were false and misleading, therefore FCA had a duty to disclose the whole truth about the CP4 fuel pumps installed in the Class Vehicles and their incompatibility with American diesel fuel.

2508. FCA knew that Plaintiffs and other Class members would and did reasonably rely upon FCA's false representations and omissions. Plaintiffs and other Class members had no way of knowing that FCA representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Class Vehicles to fail, or that FCA would refuse to repair, replace or compensate

Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicles engines.

2509. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by FCA for their durability, fuel efficiency, and performance, will fail when used as intended by FCA to be used.

2510. FCA knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by FCA.

2511. FCA falsely represented the durability, quality, and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by FCA to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase FCA's revenue and profits.

2512. FCA's devious scheme to design, market and sell Class Vehicles with defective CP4 pumps, knowing that U.S. diesel fuel that was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

2513. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members and FCA to be used in the Class

Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicles than they paid based on FCA's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

2514.  Because of FCA's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value, and did not receive the benefit-of-the-bargain, as a result of FCA's concealment of the true nature and quality of the Class Vehicles. Plaintiffs and other Class Members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2515.  FCA's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been harmed resulting in damages including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by a catastrophic failure of the CP4 fuel pump, loss of use of the Class Vehicles, diminished value of the Class Vehicles, loss of earnings, benefit-of-the-bargain damages and other damages.

2516.  FCA has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class Members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2517. Accordingly, FCA is liable to Plaintiffs and Wyoming Class members for damages in an amount to be proved at trial.

2518. FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights and the representations and omissions made by FCA to them were made in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (WYO. STAT. § 34.1-2-314)

2519. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2520. Plaintiffs bring this Count on behalf of the Wyoming Class members against FCA.

2521. FCA is a merchant with respect to motor vehicles within the meaning of the WYO. STAT. § 34.1-2-314.

2522. Pursuant to WYO. STAT. § 341.-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and other class members purchased or leased their Class Vehicles from FCA.

2523. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

2524. Specifically, the Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with the use of American diesel fuel (the fuel intended to be used by FCA and expected to be used by Plaintiffs and other Class members), in that use of American diesel fuel (the only fuel reasonably available to Plaintiffs and other Class members)

causes a breakdown of the CP4 fuel pump (a condition that FCA knew would occur prior to the design and sale of the Class Vehicles), which causes metal shards to wear off the pump and disperse throughout the Class Vehicles' fuel injection system, leading to fuel contamination, ultimate and catastrophic failure of the Bosch CP4 Pump, and self-destruction of the Class Vehicles' engine and fuel delivery system (oftentimes while the Class Vehicle is in motion, causing a moving stall and subsequent inability to restart the Class Vehicle), thereby causing an increased likelihood of serious injury or death.

2525.  FCA was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters or communications by Plaintiffs or other Class Members to FCA, including FCA dealerships, either orally or in writing, Plaintiffs' counsel, on behalf of Plaintiffs, to FCA, to FCA either orally or in writing.

2526.  As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and other Class members have been damaged in an amount to be proven at trial.

2527.  Pursuant to applicable statutes, Plaintiffs will mail a copy of this action to the Attorney General's office for the states of Connecticut, Illinois, Louisiana, Missouri, New Jersey, Oregon, Utah, and Washington.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class, respectfully request that the Court enter judgment in their favor and against FCA as follows:

A.  Certification of the proposed Class, including appointment of Plaintiffs' counsel as Class Counsel;

B. An order temporarily and permanently enjoining FCA from continuing unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C. Injunctive relief in the form of a vehicle recall, free replacement, or buy-back program;

D. An order establishing FCA as a constructive trustee over profits wrongfully obtained, plus interest;

E. Costs, restitution, damages, including punitive damages, exemplary damages and treble damages, and disgorgement in an amount to be determined at trial;

F. An order requiring FCA to pay both pre- and post-judgment interest on any amounts awarded;

G. An award of costs and attorney's fees; and

H. Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

Dated: October 31, 2019

Respectfully submitted,

*/s/ Robert C. Hilliard*
Robert C. Hilliard
HILLIARD MARTINEZ GONZALES LLP
719 S. Shoreline Blvd.
Corpus Christi, TX 78401
Telephone: (361) 882-1612
bobh@hmglawfirm.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

E. Powell Miller (P39487)
THE MILLER LAW FIRM, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
Fax: (248) 652-2852
epm@millerlawpc.com