**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| JEFF WITHROW AND KEVIN NESTOR, individually and on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>FCA US LLC, f/k/a Chrysler Group, a Delaware corporation,<br><br>      Defendant. | Case No. 2:19-cv-13214-LJM-RSW<br><br>**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hon. Laurie J. Michelson |

**PLAINTIFFS' OPPOSITION TO**
**<u>DEFENDANT FCA US LLC'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES PRESENTED..............................................................x

STATEMENT OF CONTROLLING OR MOST IMPORTANT
    AUTHORITY ......................................................................... xiii

I.    INTRODUCTION ........................................................................1

II.    FACTUAL CLARIFICATION ....................................................4

III.    ARGUMENT..................................................................................5

    A.    Plaintiffs Have Article III Standing Because They
        Overpaid for Defective Vehicles..........................................5

    B.    Plaintiffs' Ability to Represent Absent Class Members
        from Other States is Determined at Class Certification. ....................7

    C.    Plaintiffs Have Pled Viable Implied Warranty Claims. .....................10

    D.    Plaintiffs' Fraud Claims are Adequately Pled. ..................14

        1.    Plaintiffs' Fraud Claims Satisfy Rule 9(b). ..............15

        2.    FCA's Statements Were Not "Puffery."..................19

        3.    FCA's Superior Knowledge Created a Duty to
            Disclose. ..................................................................20

        4.    FCA Had a Duty to Disclose the Truth Based on
            the False Impression It Created. ...............................25

        5.    FCA Had a Duty to Disclose Because the Defect is
            Material. ...................................................................25

    E.    Plaintiffs Plausibly Allege Breach of Contract. .................27

    F.    The UCL Claim is Valid. ....................................................29

    G.    The Unjust Enrichment Claims are Valid...........................30

- i -

H.     Plaintiff Nestor's Claims are Not Time-Barred. ................................31

I.      FCA's Chart-Based Multi-State Arguments Do Not Merit Dismissal. ..........................................................................35

J.      Defendants' Remaining Arguments Fail. ..........................................38

      1.     The Nationwide Class Claims Are Valid. ...............................38

      2.     The Claims for Equitable Relief Are Well-Pled. ....................39

      3.     Plaintiffs Properly Allege Punitive Damages. .........................39

      4.     The Claims for Seniors and the Disabled Are Well-Pled. .....................................................................................40

IV.   CONCLUSION .........................................................................................40

010784-22/1330165 V1

# TABLE OF AUTHORITIES

<u>**Page(s)**</u>

**Cases**

*Aberin v. Am. Honda Motor Co.*,
  2018 WL 1473085 (N.D. Cal. Mar. 28, 2018) ................................................... 34

*Alban v. BMW of North America*,
  2011 WL 900114 (D.N.J. Mar. 15, 2011) ........................................................... 26

*Amato v. Subaru of Am., Inc.*,
  2019 WL 6607148 (D.N.J. Dec. 5, 2019) ..................................................... 22, 25

*Ang v. Bimbo Bakeries USA, Inc.*,
  2013 WL 5407039 (N.D. Cal. Sept. 25, 2013) .................................................. 40

*Aryeh v. Canon Bus. Sols., Inc.*,
  55 Cal. 4th 1185 (Cal. 2013) ............................................................................. 31

*Augustine v. Talking Rain Beverage Co., Inc.*,
  386 F. Supp. 3d 1317 (S.D. Cal. 2019) ............................................................. 25

*In re Auto Parts Antitrust Litig.*,
  2013 WL 2456612 (E.D. Mich. June 6, 2013) ................................................. 3, 8

*In re Auto. Parts Antitrust Litig.*,
  50 F. Supp. 3d 869 (E.D. Mich. 2014) .............................................................. 37

*Avedisian v. Mercedes-Benz USA, LLC*,
  2013 WL 2285237 (C.D. Cal. May 22, 2013) .................................................... 26

*Baranco v. Ford Motor Co.*,
  2018 WL 5474549 (N.D. Cal. Oct. 26, 2018) ....................................... 18, 19, 26

*Bassett v. NCAA*,
  528 F.3d 426 (6th Cir. 2008) ............................................................................... 5

*Beyer v. Symantec Corp.*,
  333 F. Supp. 3d 966 (N.D. Cal. 2018) ............................................................... 20

*Bledsoe v. FCA US LLC*,
  378 F. Supp. 3d 626 (E.D. Mich. 2019) ...................................................... *passim*

*Borkman v. BMW of N. Am.*,
  2017 WL 4082420 (C.D. Cal. Aug. 28, 2017) .................................................... 27

- iii -

*Bower v. Fed. Exp. Corp.*,
96 F.3d 200 (6th Cir. 1996) ..................................................................5

*Butler v. Porsche Cars N. Am., Inc.*,
2016 WL 4474630 (N.D. Cal. Aug. 25, 2016) ....................................27

*Cadle Co v. Multi Unit Services, Inc.*,
2003 WL 21213434 (Conn. Super. Ct. May 12, 2003) .......................30

*Cardenas v. NBTY, Inc.*,
870 F. Supp. 2d 984 (E.D. Cal. 2012) ................................................40

*In re Cardizem CD Antitrust Litig.*,
105 F. Supp. 2d 618 (E.D. Mich. 2000) ..............................................37

*In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*,
2015 WL 5166014 (E.D. Tenn. June 24, 2015).....................................9

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
295 F. Supp. 3d 927 (N.D. Cal. 2018)...................................................6

*Click v. Gen. Motors LLC*,
2020 WL 3118577 (S.D. Tex. Mar. 27, 2020)..............................*passim*

*Counts v. Gen. Motors, LLC*,
237 F. Supp. 3d 572 (E.D. Mich. 2017) ................................................9

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ......................................................................9, 10

*Dawson v. General Motors LLC*,
2019 WL 3283046 (D.N.J. July 22, 2019) ..........................................18

*Digby Adler Group, LLC v. Mercedes-Benz U.S.A., LLC*,
2015 WL 5138080 (N.D. Cal. Sept. 1, 2015) ......................................24

*In re Duramax Diesel Litig.*,
298 F. Supp. 3d 1037 (E.D. Mich. 2018) .................................9, 15, 17

*Ebin v. Kangadis Family Mgmt. LLC*,
45 F. Supp. 3d 395 (S.D.N.Y. 2014)....................................................38

*Edenborough v. ADT, LLC*,
2016 WL 6160174 (N.D. Cal. Oct. 24, 2016) ......................................23

*Falk v. Gen. Motors Corp.*,
496 F. Supp. 2d 1088 (N.D. Cal. 2007)........................................16, 24

- iv -

*Fallick v. Nationwide Mut. Ins. Co.*,
   162 F.3d 410 (6th Cir. 1998) ............................................................. 8, 10

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
   2017 WL 1382297 (E.D. Mich. April 18, 2017) ....................................... 6

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
   280 F. Supp. 3d 975 (E.D. Mich. 2017) ............................... 16, 31, 37

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
   334 F.R.D. 96 (E.D. Mich. 2019) ........................................................... 4

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
   355 F. Supp. 3d 582 (E.D. Mich. 2018) ............................................... 35

*In re FCA US LLC Monostable Electronic Gearshift Litig.*,
   2020 WL 1285635 (E.D. Mich. Mar. 18, 2020) ............................... 3, 30

*Ferrari v. Nat. Partners, Inc.*,
   2016 WL 4440242 (N.D. Cal. Aug. 23, 2016) ...................................... 10

*Ferris v. Ford Motor Co.*,
   2019 WL 1100376 (N.D. Cal. Mar. 8, 2019) .................................. 32, 33

*Gamboa v. Ford Motor Co.*,
   381 F. Supp. 3d 853 (E.D. Mich. 2019) ............................................. 6, 9

*In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*,
   406 F. Supp. 3d 618 (E.D. Mich. 2019), *reconsideration denied*, 2019 WL
   5696697 (E.D. Mich. Nov. 4, 2019) ...................................... 15, 17, 18

*In re Gen. Motors LLC CP4 Fuel Pump Litig.*,
   393 F. Supp. 3d 871 (N.D. Cal. 2019) ......................................... *passim*

*Gerstle v. Am. Honda Motor Co., Inc.*,
   2017 WL 2797810 (N.D. Cal. June 28, 2017) ................................. 31, 32

*Glenn v. Hyundai Motor Am.*,
   2016 WL 7507766 (C.D. Cal. Nov. 21, 2016) ...................................... 36

*Haskins v. Symantec Corp.*,
   2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) ........................................ 29

*Henderson v. Volvo Cars of N. Am.*,
   2010 WL 2925913 (D.N.J. July 21, 2010) ........................................... 10

*Hurd v. BAC Home Loans Servicing, LP*,
   880 F. Supp. 2d 747 (N.D. Tex. 2012) ................................................ 25

*Isip v. Mercedez-Benz USA, LLC*,
    155 Cal. App. 4th 19 (Cal. Ct. App. 2007) ............................................................... 11

*Jackson v. Eddy's LI RV Ctr., Inc.*,
    845 F. Supp. 2d 523 (E.D.N.Y. 2012) ..................................................................... 28

*John v. Whole Foods Mkt. Grp., Inc.*,
    858 F.3d 732 (2d Cir. 2017) ..................................................................................... 6

*Johnston v. PhD Fitness, LLC*,
    2018 WL 646683 (E.D. Mich. Jan. 31, 2018) ........................................................ 30

*Joslyn v. Cadillac Auto. Co.*,
    177 F. 863 (6th Cir. 1910) ...................................................................................... 28

*In re K-Dur Antitrust Litig.*,
    338 F. Supp. 2d 517 (D.N.J. 2004) ......................................................................... 37

*Kearney v. Bayerische Motoren Werke Aktiengesellschaft*,
    2018 WL 4144683 (D.N.J. Aug. 29, 2018) ............................................................ 13

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
    897 F.3d 88 (2d Cir. 2018) ....................................................................................... 9

*Lassen v. Nissan N. Am., Inc.*,
    211 F. Supp. 3d 1267 (C.D. Cal. 2016) ................................................................... 4

*MacDonald v. Ford Motor Co.*,
    37 F. Supp. 3d 1087 (N.D. Cal. 2014) .................................................................... 32

*Marsikian v. Mercedes Benz USA, LLC*,
    2009 WL 8379784 (C.D. Cal. May 4, 2009) .......................................................... 26

*Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*,
    223 F.3d 873 (8th Cir. 2000) .................................................................................. 36

*Matanky v. Gen. Motors LLC*,
    370 F. Supp. 3d 772 (E.D. Mich. 2019) ...................................................... 10, 15, 22, 27

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .................................................................................... 6

*McPeak v. S-L Distribution Co.*,
    2014 WL 4388562 (D.N.J. Sept. 5, 2014) ............................................................. 38

*Mui Ho v. Toyota Motor Co.*,
    931 F. Supp. 2d 987 (N.D. Cal. 2013) .................................................................... 22

- vi -

*In re MyFord Touch Consumer Litig.*,
   291 F. Supp. 3d 936 (N.D. Cal. 2018)...................................................................29

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014)............................................................ 12, 35

*Nelson v. Nissan N. Am., Inc.*,
   894 F. Supp. 2d 558 (D.N.J. 2012) ......................................................................26

*Nguyen v. Nissan N.A.*,
   932 F.3d 811 (9th Cir. 2019) .................................................................................7

*Norcia v. Samsung Telecomms. Am., LLC*,
   2015 WL 4967247 (N.D. Cal. Aug. 20, 2015) ....................................................23

*Persad v. Ford Motor Co.*,
   2018 WL 3428690 (E.D. Mich. July 16, 2018) ...........................................*passim*

*Peterson v. Mazda Motor of Am., Inc.*,
   44 F. Supp. 3d 965 (C.D. Cal. 2014)....................................................................29

*Philips v. Ford Motor Co.*,
   2015 WL 4111448 (N.D. Cal. July 7, 2015)................................................... 32, 33

*Philips v. Ford Motor Co.*,
   2016 WL 1745948 (N.D. Cal. May 3, 2016) ........................................................32

*Pilgrim v. Universal Health Card, LLC*,
   660 F.3d 943 (6th Cir. 2011) ......................................................................... 38, 39

*In re Polyurethane Foam Antitrust Litig.*,
   799 F. Supp. 2d 777 (N.D. Ohio 2011) ..................................................................9

*Reynolds v. Lifewatch, Inc.*,
   136 F. Supp. 3d 503 (S.D.N.Y. 2015) ..................................................................38

*Robinson v. Kia Motors Am., Inc.*,
   2015 WL 5334739 (D.N.J. Sept. 11, 2015) ..........................................................22

*Rubenstein v. Neiman Marcus Grp., LLC*,
   687 F. App'x 564 (9th Cir. 2017) .........................................................................20

*Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.*,
   625 F. Supp. 2d 508 (E.D. Mich. 2008) .................................................................5

*Schechter v. Hyundai Motor Am.*,
   2019 WL 3416902 (D.N.J. July 29, 2019), *reconsideration denied*, 2020 WL
   1528038 (D.N.J. Mar. 31, 2020) ..........................................................................13

- vii -

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
   559 U.S. 393 (2010) ........................................................................................... 36

*Sheris v. Nissan North America Inc.*,
   2008 WL 2354908 (D.N.J. June 2, 2008) ..................................................... 12, 13

*Sloan v. Borgwarner Flexible Benefit Plans*,
   2010 WL 1063723 (E.D. Mich. Feb. 12, 2010) ................................................. 40

*Sloan v. Gen. Motors*,
   287 F. Supp. 3d 840 (N.D. Cal. 2018) ........................................................... 10, 12

*Solo v. UPS Co.*,
   819 F.3d 788 (6th Cir. 2016) ................................................................... 30, 36, 37

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ...................................................................... 33, 34

*Sterling Drug, Inc. v. FTC*,
   741 F.2d 1146 (9th Cir. 1984) .............................................................................. 34

*In re Takata Airbag Prod. Liab. Litig.*,
   2017 WL 2406711 (S.D. Fla. June 1, 2017) ....................................................... 38

*In re Takata Airbag Prods. Liab. Litig.*,
   2015 WL 9987659 (S.D. Fla. Dec. 2, 2015) ....................................................... 38

*Tanner v. Ford Motor Co.*,
   424 F. Supp. 3d 666 (N.D. Cal. 2019) ................................................................ 32

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (Cal. 2009) ................................................................................. 34

*Town of Plainville v. Almost Home Animal Rescue & Shelter, Inc.*,
   187 A.3d 1174 (Conn. App. Ct. 2018) ................................................................ 31

*In re Volkswagen Clean Diesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
   349 F. Supp. 3d 881 (N.D. Cal. 2018) .................................................................. 6

*Walker v. People's United Bank*,
   305 F. Supp. 3d 365 (D. Conn. 2018) ................................................................. 30

*Waskul v. Washtenaw Cty. Cmty. Mental Health*,
   900 F.3d 250 (6th Cir. 2018) ................................................................................. 9

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) .............................................................................. 24

**Statutes**

Conn. Gen. Stat. Ann. § 42-110g(a)-(b)......................................................................30

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................................................................................................20

010784-22/1330165 V1

## STATEMENT OF ISSUES PRESENTED

1.      Article III standing requires Plaintiffs to allege an injury-in-fact—an existing injury that affects them personally—traceable to FCA. Here, FCA knew about the fuel pump defect in the class vehicles, but failed to disclose it to the public. If Plaintiffs had known about the defect, they would not have purchased the vehicles or would have paid substantially less for them. In addition, Plaintiffs have incurred costs to repair catastrophic engine damage caused by the defect. Do Plaintiffs have standing?

2.      When the named plaintiffs have standing to assert their own claims, whether they can assert claims on behalf of absent class members under the laws of other states presents a question of typicality to be determined under Rule 23. Plaintiffs have standing to assert their own claims, and assert claims based on the same facts on behalf of absent class members under the substantially similar laws of other states. Should a ruling on typicality be deferred until Plaintiffs file for class certification?

3.      FCA is the manufacturer of the Class Vehicles, which are equipped with a defective Bosch CP4 high-pressure fuel injection pump that is unreasonably fragile in design and particularly incompatible with U.S. diesel fuel. Should FCA, as the automotive manufacturer, be charged with ensuring that the vehicles it manufactures are actually compatible with the diesel fuel available in the market in which the vehicles are to be sold?

4.      Because the CP4 fuel pump is a deeply internal, hidden component part in the Class Vehicles, Plaintiff Kevin Nestor did not have reason to know of the CP4

fuel pump defect until at least April 2019 when his vehicle experienced catastrophic CP4 fuel pump failure. Does the discovery rule toll Plaintiff Kevin Nestor's claims?

5.     The Class Vehicles are unfit for their ordinary use in that they cannot safely and reliably provide transportation and they require consumers to pay tens of thousands of dollars for catastrophic high-pressure fuel injection system failures. Have Plaintiffs adequately pled that the Class Vehicles are unmerchantable?

6.     To plead fraud with the requisite particularity under Rule 9(b), Plaintiffs must allege the "who," "what," "where," "when," and "how" of the alleged deception. Are Plaintiffs' fraud-based claims pled in accordance with Rule 9(b) in the operative Complaint, when two other federal districts have already held near-identical CP4-defect-based allegations to be sufficient under the same standard?

7.     Plaintiffs allege that FCA has engaged in the unfair practice of selling vehicles that it knew to be compromised and that it knew presented an unreasonable safety risk due to the increased risk of sudden engine failure. Have Plaintiffs pled a viable claim under California's Unfair Competition Law ("UCL")?

8.     Alleging breach of contract requires a contract, a breach, and damages. Plaintiffs allege that FCA and its dealers were in contractual privity, with the dealers acting as FCA's agents, such that there was a contractual relationship between FCA and Plaintiffs at the point of sale. Plaintiffs also allege that FCA breached this contract by failing to deliver a vehicle that was free from defects and performed as promised, thereby damaging Plaintiffs. Have Plaintiffs adequately alleged breach of contract?

- xi -

9.     Courts routinely permit Plaintiffs to plead unjust enrichment claims in the alternative to other viable forms of relief. Have Plaintiffs viably pled their unjust enrichment claims in the alternative?

10.     Plaintiffs allege that FCA made false representations in marketing, distributing, and selling the defective Class Vehicles. Are Plaintiffs' nationwide fraud claims validly pled, particularly when the common law governing fraudulent concealment is materially uniform throughout the United States when applied to a case like this one?

11.     Even when Plaintiffs plead viable contract-based causes of action, Plaintiffs are permitted to plead other equitable forms of relief in the alternative. Have Plaintiffs properly pled their equitable claims in the alternative to any contract-based claim brought on behalf of Plaintiffs and Sub-Class members?

12.     Rule 8 requires a short and concise statement of the relief sought, including providing the Defendant with notice of the intent to seek punitive damages. Have Plaintiffs properly pled FCA's egregious conduct such that their punitive damages should not be dismissed at this early stage of the litigation, as such a ruling would be premature?

13.     Plaintiffs' claims are typical of the claims asserted by the putative Class, pursuant to the California Consumer Legal Remedies Act ("CLRA"). May Plaintiffs therefore bring claims on behalf of putative elderly or disabled Class members under the CLRA?

## STATEMENT OF CONTROLLING OR
## MOST IMPORTANT AUTHORITY

**A. Plaintiffs have Article III standing to assert their own claims based on their overpayment for defective vehicles.**

    1.    *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626 (E.D. Mich. 2019)

    2.    *Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853 (E.D. Mich. 2019)

    3.    *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037 (E.D. Mich. 2018)

    4.    *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572 (E.D. Mich. 2017)

    5.    *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 2017 WL 1382297 (E.D. Mich. April 18, 2017)

**B. Plaintiffs' ability to represent absent class members from other states is determined at class certification.**

    1.    *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

    2.    *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998)

    3.    *In re Auto. Parts Antitrust Litig.*, 2013 WL 2456612 (E.D. Mich. June 6, 2013)

    4.    *Hovering v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662 (E.D. Mich. 2008)

    5.    *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572 (E.D. Mich. 2017)

    6.    *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037 (E.D. Mich. 2018)

    7.    *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626 (E.D. Mich. 2019)

    8.    *Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853 (E.D. Mich. 2019)

**C. Plaintiffs have plausibly pled defect allegations.**

    1.   *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267 (C.D. Cal. 2016)

    2.   *Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.*, 625 F. Supp. 2d 508 (E.D. Mich. 2008)

**D. Plaintiffs have valid implied warranty claims.**

    1.   *In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871 (N.D. Cal. 2019)

    2.   *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936 (N.D. Cal. 2014)

    3.   *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950 (N.D. Cal. 2018)

    5.   *Schechter v. Hyundai Motor Am.*, 2019 WL 3416902 (D.N.J. July 29, 2019)

    6.   *In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618 (E.D. Mich. 2019), *reconsideration denied,* 2019 WL 5696697 (E.D. Mich. Nov. 4, 2019)

**E. Plaintiffs have valid Magnuson-Moss Warranty Act ("MMWA") claims.**

    1.   *Persad v. Ford Motor Co.*, 2018 WL 3428690 (E.D. Mich. July 16, 2018)

**F. Plaintiffs' fraud-based claims are properly pled.**

    1.   *In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871 (N.D. Cal. 2019)

    2.   *Click v. Gen. Motors LLC*, 2020 WL 3118577 (S.D. Tex. Mar. 27, 2020)

3.  *In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618 (E.D. Mich. 2019), *reconsideration denied*, 2019 WL 5696697 (E.D. Mich. Nov. 4, 2019)

4.  *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772 (E.D. Mich. 2019)

5.  *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037 (E.D. Mich. 2018)

6.  *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558 (D.N.J. 2012)

8.  *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936 (N.D. Cal. 2014)

9.  *Marsikian v. Mercedes Benz USA, LLC*, 2009 WL 8379784 (C.D. Cal. May 4, 2009)

**G. Plaintiffs plausibly allege breach of contract.**

1.  *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626 (E.D. Mich. 2019)

**H. The UCL claim is valid.**

1.  *In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871 (N.D. Cal. 2019)

2.  *Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965 (C.D. Cal. 2014)

3.  *Haskins v. Symantec Corp.*, 2013 WL 6234610 (N.D. Cal. Dec. 2, 2013)

**I. The unjust enrichment claims are valid.**

1.  *Solo v. UPS Co.*, 819 F.3d 788 (6th Cir. 2016)

2.     *In re FCA US LLC Monostable Electronic Gearshift Litig.*, 280 F. Supp. 3d 975 (E.D. Mich. 2017)

3.     *Johnston v. PhD Fitness, LLC*, 2018 WL 646683 (E.D. Mich. Jan. 31, 2018)

4.     *In re FCA US LLC Monostable Electronic Gearshift Litig.*, 2020 WL 1285635 (E.D. Mich. Mar. 18, 2020)

5.     Fed. R. Civ. P. 8(d)(2)

6.     *Walker v. People's United Bank*, 305 F. Supp. 3d 365 (D. Conn. 2018)

7.     *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517 (D.N.J. 2004)

**J. Plaintiff Nestor's claims are not time-barred.**

1.     *In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871 (N.D. Cal. 2019)

2.     *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185 (Cal. 2013)

3.     *Gerstle v. Am. Honda Motor Co., Inc.*, 2017 WL 2797810 (N.D. Cal. June 28, 2017)

4.     *Philips v. Ford Motor Co.*, 2016 WL 1745948 (N.D. Cal. May 3, 2016)

**K. The nationwide claims are valid.**

1.     *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503 (S.D.N.Y. 2015)

2.     *Ebin v. Kangadis Family Mgmt. LLC*, 45 F. Supp. 3d 395 (S.D.N.Y. 2014)

3.     *In re Takata Airbag Prod. Liab. Litig.*, 2017 WL 2406711 (S.D. Fla. June 1, 2017)

4. *In re Takata Airbag Prods. Liab. Litig.*, 2015 WL 9987659 (S.D. Fla. Dec. 2, 2015)

**L. The claims for equitable relief are properly pled.**

1. *Persad v. Ford Motor Co.*, 2018 WL 3428690 (E.D. Mich. July 16, 2018)

**M. Punitive damages are properly alleged.**

1. *Sloan v. Borgwarner Flexible Benefit Plans*, 2010 WL 1063723 (E.D. Mich. Feb. 12, 2010)

**N. The CLRA claims for seniors and the disabled are proper.**

1. *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. May 3, 2012)

2. *Ang v. Bimbo Bakeries USA, Inc.,* 2013 WL 5407039, at *10 (N.D. Cal. Sept. 25, 2013).

## I.   INTRODUCTION

The Class Vehicles[1] contain a CP4 high-pressure fuel injection pump. The CP4's highly stressed and fragile design causes metal shavings to disperse throughout the vehicle's fuel system from the first fueling. ¶ 4.[2] This disintegration process ultimately leads to catastrophic failure of fuel and engine systems, oftentimes while the vehicle is in motion, causing sudden loss of engine power. ¶¶ 4, 12, 15. Even though FCA knew before it manufactured a single Class Vehicle that the CP4 pump was particularly incompatible with U.S. diesel-fuel standards, FCA chose the European-designed fuel pump for its 2014–present EcoDiesel vehicles because it was cheaper. ¶¶ 8, 39. And when the catastrophic and predictable failures occurred, FCA disingenuously blamed consumers for "fuel contamination"— oftentimes *caused* by disintegrating particles from the CP4 itself. ¶¶ 6, 15. Plaintiffs and all proposed class members paid a premium for their diesel vehicles, and were harmed by being sold vehicles with a defective fuel injection pump that is substandard for U.S. diesel fuel.

The FAC provides detailed and specific allegations describing the defect itself, including how the design of the pump causes metal shavings to disperse throughout the fuel system because of the intolerably high level of Hertz stresses generated by the friction between the roller and the camshaft. ¶¶ 40-62. These

---

[1] As stated in Plaintiffs' First Amended Complaint ("FAC") (ECF No. 26), the "Class Vehicles" presently consist of FCA-manufactured automobiles equipped with a 3.0L EcoDiesel engine, ranging from the 2014–present model years of Dodge Ram 1500 pick-up trucks and Jeep Grand Cherokee SUVs.

[2] All "¶" references are to Plaintiffs' FAC (ECF No. 26).

- 1 -

allegations are at the heart of Plaintiffs' claims, but FCA completely ignores them. The FAC also explains how this defect facilitates a progressive failure of the vehicle components which can also lead to catastrophic failures. ¶¶ 119–124. FCA never addresses these allegations either. After impliedly conceding the existence of the defect and the catastrophic effects of the defect, FCA instead distorts Plaintiffs' allegations and suggests that the defect only occurs because of owner "misuse, abuse, and neglect." Mot. at 1, 4, 12, 13. While repeating this formulation four times throughout its Motion, in truth the Complaint contains a single reference to the need for the pump to withstand foreseeable misuse of the vehicle, which is standard in the industry. ¶ 17. The Complaint makes clear that this defect is not caused by consumer neglect, but in fact is present in all vehicles (¶¶ 1-5; 40-62); FCA never confronts this claim either. FCA's strategy to focus on a single reference to consumer misuse in a 377-page complaint—while ignoring the central allegations about the defect itself—reveals the weakness of its position.

FCA's legal arguments are equally unpersuasive, and have already been rejected by other courts considering substantially similar allegations regarding the defective CP4 fuel pump.[3] Although never referenced by FCA, these cases—and the cases upon which they rely—refute all FCA's arguments. *First*, Plaintiffs have standing because they overpaid for their vehicles at the point of sale. As multiple courts in this District and elsewhere have held, overpayment is a classic injury-in-

---

[3] *In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 884 (N.D. Cal. 2019) ("*In re GM CP4*"); *Click v. Gen. Motors LLC,* 2020 WL 3118577, at *11 (S.D. Tex. Mar. 27, 2020).

- 2 -

fact that confers standing.[4] *Second*, Plaintiffs also have standing to assert claims on behalf of absent class members. Numerous courts have held that questions about representation should be decided at the class certification stage, not on a motion to dismiss.[5] *Third*, Plaintiffs adequately allege fraud when FCA failed to disclose a known and dangerous defect in order to induce Class Members into purchasing the Class Vehicles. These types of allegations are routinely recognized as sufficient to state a fraud claim.[6] *Fourth*, Plaintiffs' contract claims should be upheld because "consumers received a product other than the one for which they bargained consideration, thereby plausibly stating a claim for breach of contract."[7] *Fifth*, Plaintiffs have adequately alleged warranty claims because the defect renders the vehicles unsafe and unmerchantable.[8] *Sixth*, plaintiffs plausibly allege unjust enrichment because FCA unfairly profited from the sale of vehicles that it knew were defective.[9] FCA's motion should be denied.

---

[4] *See, e.g.*, *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626, 640 (E.D. Mich. 2019) ("Plaintiffs' allegations that they overpaid for the vehicle based on [a manufacturer's] representations constitute economic injury sufficient to establish Article III standing." (alteration in original)).

[5] *See, e.g.*, *In re Auto Parts Antitrust Litig.*, 2013 WL 2456612, at *9-*10 (E.D. Mich. June 6, 2013).

[6] *See, e.g.*, *In re GM CP4*, 393 F. Supp. 3d at 879 (Plaintiffs adequately pled fraud based on allegations that GM failed to disclose a known defect in the CP4 pump).

[7] *Bledsoe*, 378 F. Supp. 3d at 645.

[8] *See In re GM CP4*, 393 F. Supp. 3d at 883.

[9] *In re FCA US LLC Monostable Electronic Gearshift Litig.*, 2020 WL 1285635, at *6 (E.D. Mich. Mar. 18, 2020).

## II.    FACTUAL CLARIFICATION

At the outset, it is important to clarify a perennial misstatement of the facts that FCA urges the Court to adopt. FCA—in what is a familiar tactic[10]—recasts Plaintiffs' defect theories to argue that they depend upon consumer "misuse," even though there is only one single reference to misuse throughout the entire FAC. ¶ 40. Plaintiffs do not allege "misuse" of the Class Vehicles. Rather, the Class Vehicles are defective because the CP4 fuel pump is unacceptably fragile in design and particularly incompatible with U.S. diesel fuel. *See, e.g.*, ¶¶ 19, 83, 84, 125. (Notably, FCA cites as one example of "misuse" a consumer's decision to buy commercially available fuel that is—unbeknownst to the customer—out of specifications. *See* Mot. at 23.) FCA, as the vehicle manufacturer, has the responsibility to ensure that its vehicles are compatible with the available fuel in the United States. *See* ¶ 83. With respect to the Class Vehicles, FCA failed to do so.

In addition, an auto manufacturer must account for use of its vehicles in real-world conditions: "[A] manufacturer [must] foresee some degree of misuse and abuse of his product, either by the user or by third parties, and [ ] take reasonable precautions to minimize the harm that may result from misuse and abuse." *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1285 (C.D. Cal. 2016) (second and third

---

[10] *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 115 (E.D. Mich. 2019) (chastising FCA for "cast[ing] the sole 'defect' with the shifter as being entirely due to 'misuse' by drivers who failed to put their vehicles in park before exiting. It has insisted repeatedly throughout this litigation that the gear shifter is 'not defective' and that it works as designed when properly used, tarring all of the plaintiffs' claimed misfortunes as the product of mere 'user error.'").

alterations in original); *see also Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.*, 625 F. Supp. 2d 508, 520 (E.D. Mich. 2008) (citation omitted) ("Manufacturers are duty bound to design products that are safe for their intended or reasonably anticipated use . . . [and] even foreseeable misuse."). While "[c]onsumers have no way to assess the quality of the fuel they purchase or to confirm if a fuel complies with the applicable requirements" (¶ 6), the potential for non-industry-specification diesel fuel to wind up in the Class Vehicles "is a well-known and easily anticipatable problem for OEMs such as FCA" (¶ 80). FCA's attempt to reframe this case as resting on consumer "abuse" is factually incorrect and should be rejected.

## III.    ARGUMENT

To survive a motion to dismiss, a complaint need only provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bledsoe*, 378 F. Supp. 3d 626 at 634. The Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citation and internal quotations omitted). To warrant dismissal, "it must appear beyond doubt that the plaintiff would not be able to recover under any set of facts that could be presented consistent with the allegations of the complaint." *Bower v. Fed. Exp. Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).

### A.    Plaintiffs Have Article III Standing Because They Overpaid for Defective Vehicles.

Plaintiffs have standing here because they paid more for a product than they otherwise would have paid had they known of the defect. *See, e.g.*, ¶¶ 13-14, 16-17,

- 5 -

19. Courts in this district have regularly held that such overpayment allegations are sufficient to plead injury-in-fact. *See Bledsoe*, 378 F. Supp. 3d at 640 (E.D. Mich. 2019) ("Plaintiffs' allegations that they overpaid for the vehicle based on [a manufacturer's] representations constitute economic injury sufficient to establish Article III standing." (alteration in original)); *Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853, 886 (E.D. Mich. 2019) (same); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 2017 WL 1382297, at *5 (E.D. Mich. April 18, 2017) (same). Courts around the country have come to the same conclusion.[11] In *In re GM CP4*, 393 F. Supp. 3d at 884, the district court determined that "all Plaintiffs have adequately alleged injury-in-fact for standing purposes," because "all Plaintiffs allege that they would have paid far less—or would not have bought their vehicles at all—had they known of the fuel pump defect." FCA ignores these allegations, which are plainly sufficient to confer standing.

---

[11] *E.g.*, *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737-38 (2d Cir. 2017) (overpayment for product satisfies "low threshold" required to plead injury-in-fact); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012) ("[t]o the extent that class members were relieved of their money by Honda's deceptive conduct—as Plaintiffs allege—they have suffered an 'injury in fact'"); *In re Volkswagen Clean Diesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 349 F. Supp. 3d 881, 891 (N.D. Cal. 2018) ("When a consumer overpays for a product because of the seller's conduct, the overpayment is ordinarily a 'quintessential injury-in-fact.'"); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 948-49 (N.D. Cal. 2018) ("Allegations of overpayment based on a defendant's failure to disclose a product's limitations are clearly sufficient to satisfy Article III's injury-in-fact requirement.").

- 6 -

Instead of addressing Plaintiffs' central allegations, FCA focuses on whether Plaintiffs incurred out-of-pocket repair costs.[12] FCA argues that Plaintiffs "do not plead any facts supporting the notion that these repair costs were necessitated" by the defect. Mot. at 28. This is incorrect. For Plaintiff Withrow, the FAC alleges: (1) that the "dealer service center stated that the fuel pump was not functioning and there was metal debris found in the fuel pump" (¶ 12); (2) that the defect "generates metal shavings that contaminate the fuel system, eventually leading to catastrophic engine failure" (¶ 1); and (3) that "plaintiff incurred approximately $12,000 worth of out-of-pocket repair costs as a result of [his engine] failure due to the defective CP4 fuel pump" (¶ 12). Plaintiff Nestor makes similar allegations. *See* ¶ 15 ("The dealership service center advised Plaintiff that metal shavings from the fuel pump failure had introduced metal shavings throughout the entire fuel system . . . . Plaintiff ultimately incurred approximately $7,600 worth of repair costs as a result of this catastrophic failure due to the defective CP4 fuel pump"). FCA simply speculates that the catastrophic engine failure was the result of contaminated fuel, without support and while ignoring the plausible inference that the defect itself causes the contamination. ¶ 143.

## B.   Plaintiffs' Ability to Represent Absent Class Members from Other States is Determined at Class Certification.

Contrary to FCA's assertion, Plaintiffs' representation of class members from other states is properly analyzed under Rule 23, not Article III. FCA's attempt to

---

[12] Repair costs are sufficient to confer standing as well. *See Nguyen v. Nissan N.A.*, 932 F.3d 811, 821 (9th Cir. 2019) ("average cost of repair" provided an appropriate measure of class damages for the manufacturer's concealment of a vehicle defect).

- 7 -

press this as a standing issue is routinely rejected. In *In re Automotive Parts Antitrust Litigation*, for example, the defendants argued that the claims "may not proceed in any state without a resident plaintiff." 2013 WL 2456612, at \*9. The district court disagreed. *Id.* After analyzing Supreme Court and Sixth Circuit precedent, the court concluded that "once a named plaintiff's standing has been established, his capacity to seek relief for absent members of the proposed class [is] to be determined under Rule 23." *Id.* at \*9-10 (collecting cases).

In reaching this conclusion, *In re Automotive Parts* relied on the Supreme Court's decision in *Amchem Products, Inc. v. Windsor*, where the Court "endorsed postponing the standing determination until after a class certification ruling because the certification issues are 'logically antecedent to Article III concerns.'" 2013 WL 2456612, at \*9 (quoting 521 U.S. 591, 612 (1997)). *In re Automotive Parts* explained that the Sixth Circuit applied a similar rationale in an ERISA class action lawsuit. *Id.* at \*10 (citing *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998)). In *Fallick*, the plaintiff sought to represent members of several of the defendant's benefit plans, including plans to which the plaintiff did not belong. *Id.* at 422-23. The district court dismissed those allegations, and the Sixth Circuit reversed. *Id.* at 423. Because the named plaintiff could "demonstrate individual standing vis-a-vis the defendant," the Sixth Circuit held that his ability to represent others with similar claims "depend[ed] solely" on whether he could satisfy Rule 23. *Id.*

In *Hovering v. Transnation Title Insurance Co.*, the court also relied on *Amchem* and *Fallick*, finding "no reason not to apply the same rationale." 545 F. Supp. 2d 662, 667 (E.D. Mich. 2008). Because the Michigan plaintiff would need to

- 8 -

establish that his claim "is typical of those individuals whose claims arise under the laws of other states," the Court held that "[t]he question whether he has standing to proceed as a class representative will be subsumed in the class certification decision . . . ." *Id.* at 667-68. While there are courts that have decided differently, the "growing consensus" is that "class certification issues are logically antecedent to Article III concerns, at least when the named plaintiffs possess Article III standing." *In re Duramax Diesel Litig.,* 298 F. Supp. 3d 1037, 1088 (E.D. Mich. 2018) (quotations and alterations omitted); *see also Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572, 587-88 (E.D. Mich. 2017); *Bledsoe*, 378 F. Supp. 3d at 642; *Gamboa*, 381 F. Supp. 3d at 884-5. Other courts outside this district have held the same.[13]

Neither case FCA cites in support of its standing argument was a class action. In *Waskul*, the plaintiff association had to allege that "at least one identified member" had standing "for each form of relief sought." *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 900 F.3d 250, 255 (6th Cir. 2018). The Court held that even assuming at least one member had standing, no member established that the requested injunctive relief would provide any redress. *Id.* at 257. And *Cuno* held that the taxpayer plaintiffs' standing to pursue *municipal* tax claims did not provide supplemental jurisdiction over the plaintiffs' *state* tax claims for which they had no

---

[13] *See Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 95 (2d Cir. 2018) ("the only other circuit to have addressed this issue has reached the same conclusion") (citing *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011)); *see also In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, 2015 WL 5166014, at *19 (E.D. Tenn. June 24, 2015) ("the better path is to defer this issue until the class certification stage"); *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 806 (N.D. Ohio 2011) (first step is to "determine whether the [plaintiffs] may, as class representatives, advance their state-law claims at class certification").

- 9 -

standing. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351-52 (2006). Instead, as the Sixth Circuit stated in *Fallick*, each named plaintiff must "demonstrate individual standing vis-a-vis the defendant." 162 F.3d at 423. Plaintiffs have done so here.

**C.    Plaintiffs Have Pled Viable Implied Warranty Claims.**

Plaintiffs assert valid implied warranty claims. The vehicles are unfit for their ordinary purposes, and present an unreasonable risk to vehicle occupant safety, as sudden engine failure poses the risk of serious car crashes resulting in injury or death. Because Plaintiffs validly plead warranty claims, their Song-Beverly ("SB") Act and Magnuson-Moss Warranty Act ("MMWA") claims survive as well.[14]

The implied warranty of merchantability ("IWM") requires that a product is "in safe condition and substantially free of defects." *Ferrari v. Nat. Partners, Inc.*, 2016 WL 4440242, at \*11 (N.D. Cal. Aug. 23, 2016); *Henderson v. Volvo Cars of N. Am.*, 2010 WL 2925913, \*9 (D.N.J. July 21, 2010) (same). "[C]ars are not merchantable merely because they are able to provide transportation. Rather, to be fit for its ordinary purpose, a standard road vehicle must be able to provide safe and reliable transportation and be substantially free of defects." *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 785 (E.D. Mich. 2019) (citing *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936 (N.D. Cal. 2018)). Courts have "explicitly rejected the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability." *Sloan v. Gen. Motors*, 287 F. Supp. 3d 840, 879-80 (N.D. Cal. 2018); *see also Click*

---

[14] *See Persad v. Ford Motor Co.*, 2018 WL 3428690, \*6 (E.D. Mich. July 16, 2018).

*v. Gen. Motors LLC,* 2020 WL 3118577, \*11 (S.D. Tex. Mar. 27, 2020) (in substantially similar CP4 pump case, "The Court rejects GM's suggestion that the risk of spontaneous engine failure while driving is not, as a matter of law, unreasonably dangerous, depriving the vehicles of fitness for their purpose of transportation"). Thus, FCA's argument that its vehicles are capable of transportation overlooks the fact that their potential for engine stalls and catastrophic failure renders them unfit. *See Isip v. Mercedez-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (Cal. Ct. App. 2007) ("MBUSA's attempt to define a vehicle as unfit only if it does not provide transportation is an unjustified dilution of the implied warranty of merchantability.").

Here, Plaintiffs have pled viable implied warranty claims. *See* ¶ 4 (alleging that the Class Vehicles contain a defect that affects the central function of the Vehicle, presenting an unreasonable risk to vehicle occupant safety); *see also* ¶ 12 (describing how Withrow's vehicle suddenly shut off without warning and would not restart); ¶ 15 (same for Nestor); ¶ 183 ("catastrophic CP4 fuel pump failure can cause the vehicle to stall while in motion and then subsequently become unable to be restarted, which increases the risk of a crash and presents an unreasonable risk to vehicle occupant safety"). In these circumstances, Plaintiffs' Class Vehicles are unfit for their ordinary purpose. *See In re GM CP4*, 393 F. Supp. 3d at 883 (quoting *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d at 947) (upholding Plaintiffs' CP4-defect-based IWM claims and noting that, "'[T]he law does not require Plaintiffs to introduce proof that the vehicles were not in fact used to demonstrate unmerchantability,' but that they 'can also demonstrate unmerchantability by

- 11 -

introducing evidence that their vehicles were affected by a persistent defect that so affected their safety, reliability, or operability as to render them unfit'"); *see also id.* (citing *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950 (N.D. Cal. 2018)) ("Despite GM's suggestion to the contrary . . . whether the Class Vehicles were unmerchantable at the time of sale is a question of fact the Court cannot resolve at the pleadings stage"); *Sloan*, 287 F. Supp. 3d at 879 (vehicles with engines that "suddenly shut down are not fit for ordinary use").

Contrary to FCA's argument that merchantability only turns on whether the vehicles are "fit for transportation" (Mot. at 35), "[a]s even Ford implicitly concedes, the ordinary purpose of a car is not just to provide transportation but rather *safe, reliable* transportation." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 980 (N.D. Cal. 2014) (emphasis added). Analyzing the allegations under the IWM laws of fifteen states (including many of the same at issue here),[15] the *In re MyFord Touch* court denied the motion to dismiss, holding that it is a "question of fact for the jury as to whether the problems with [the MyFord Touch] posed enough of a safety risk that the cars at issue could not be said to provide safe, reliable transportation." *Id.* As numerous cases throughout the country demonstrate, *MyFord Touch* accurately states the law on merchantability, and how that doctrine is to be assessed at the motion to dismiss stage.[16]

FCA's reliance on *Sheris v. Nissan North America Inc.*, 2008 WL 2354908 (D.N.J. June 2, 2008) is misplaced. *See* Mot. at 34 (citing *Sheris* for the proposition

---

[15] *E.g.,* California, New Jersey, Colorado, Iowa, Massachusetts, New York, North Carolina, Ohio, and Virginia.

[16] *See* Exhibit A (chart detailing validity of Plaintiffs' multistate IWM claims).

that "plaintiffs may not recover for breach of the implied warranty of merchantability under the facts where plaintiffs have driven their cars *without problems* for years") (emphasis added). First, this distorts accepted implied warranty law by overlooking the safety element. *See, e.g.*, *Schechter v. Hyundai Motor Am.*, 2019 WL 3416902, at \*14 (D.N.J. July 29, 2019), *reconsideration denied*, 2020 WL 1528038 (D.N.J. Mar. 31, 2020) (rejecting defendant's reliance on *Sheris* because "[i]n *Sheris*, the plaintiff was unable to show that his vehicle was 'unmerchantable *or unsafe for driving*'") (emphasis in original); *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, 2018 WL 4144683, \*16 (D.N.J. Aug. 29, 2018) (internal citations omitted) (in New Jersey, the IWM "guarantee[s] that [a car] will operate in a safe condition and substantially free of defects," and rejecting BMW's argument that plaintiff's vehicle "continues to fulfill the ordinary purpose of a car and thus remains merchantable simply because Barr continues to own the vehicle . . . . That Barr continues to own his Class Vehicle does not necessarily mean that it is fit for ordinary use").

Moreover, contrary to FCA's assertion that Plaintiffs have driven their cars "without problems for years," Plaintiff Withrow alleges that his vehicle experienced catastrophic CP4 failure while driving approximately 70 miles per hour on the freeway when it suddenly quit in the middle of the road—a moving stall—and that he was ultimately forced to pay approximately $12,000 when FCA refused to cover the vehicle repair under warranty (even as the vehicle had only 31,500 miles on the odometer and was two years old). ¶ 12. Likewise, Plaintiff Nestor alleges that his vehicle suddenly and without warning shut off while driving and would not restart,

- 13 -

and that he was forced to incur approximately $7,600 worth of repair costs after FCA denied his warranty claim, citing its classic "fuel contamination" line. ¶ 15.

Withrow and Nestor have not driven their vehicles "**_without problems for years_**," as FCA claims. Recognizing this, FCA is left to chide Plaintiffs for continuing to drive their vehicles. But many have little choice: they cannot simply afford to park their $40,000–$50,000 trucks until FCA agrees to fix them. *See Click*, 2020 WL 3118577 at *11 (upholding CP4-defect-based IWM allegations substantially the same as those here, explaining, "[T]he alleged facts reasonably infer that all of the trucks have a defect rendering transportation unsafe. And if some Plaintiffs did not spend thousands of dollars on repairs, their vehicles would still be undriveable." (internal citations omitted)).

**D.  Plaintiffs' Fraud Claims are Adequately Pled.**

As the FAC details, the Class Vehicles' CP4 fuel pump is prone to catastrophic failure and particularly incompatible with U.S. diesel. The fragile pump design, combined with the low lubricity of U.S. diesel fuel, causes metal to rub against metal from the very first drive. ¶¶ 2-4. Resulting metal shards are then blown throughout the fuel-injection system, destroying the system and ultimately the entire engine. *Id.* The fuel-pump failures cause engine shutdowns, often while the vehicles are moving, with many drivers reporting trucks stalling at highway speeds. *E.g.*, ¶¶ 111, 113, 117. FCA knew of the defect and of the safety hazards it imposed, rendering FCA legally obligated to disclose the defect to customers. *E.g.*, ¶¶ 95-97. By choosing instead to actively conceal the defect, FCA injured Plaintiffs and other

- 14 -

Class members, incurred liability under all states' statutory fraud counts, and engaged in common-law fraud.[17]

### 1.    Plaintiffs' Fraud Claims Satisfy Rule 9(b).

Rule 9(b)'s requirements "are not meant to be an insurmountable barrier," but rather are meant to provide defendants with "enough specificity to put defendants on notice as to the nature of the claim." *In re Duramax Diesel*, 298 F. Supp.3d at 1057. The Rule "requires a plaintiff to plead the who, what, when, where, and how" of the alleged misrepresentation or omission. *In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618, 636 (E.D. Mich. 2019), *reconsideration denied*, 2019 WL 5696697 (E.D. Mich. Nov. 4, 2019) ("*In re GM Air*"). In the context of an allegedly defective product, a complaint need only allege "that a manufacturer knew of a defect before sale, the various venues the manufacturer used to sell the product failed to disclose the defect, and that the plaintiffs would not have purchased the product or would have paid less for it had they known of the defect." *Id.* (quotations omitted). The burden in alleging omission-based fraud is accordingly reduced. *Matanky*, 370 F. Supp. 3d at 789.

For example, in *In re GM Air*, this District held that plaintiffs sufficiently alleged fraudulent omission under Rule 9(b) where "Plaintiffs plausibly allege[d] the 'who' (GM), the 'what' (knowing about, yet failing to disclose, the alleged air conditioning system defect), the 'when' (from the time the vehicles were first placed on the market to the present day), the 'where' (various advertisements, window

---

[17] *See* Exhibit B (chart detailing validity of Plaintiffs' multistate fraud claims).

stickers on Class Vehicles, and discussions with GM dealers who did not disclose the defect), and the 'how' (if Plaintiffs had known of the alleged defect, they would not have purchased or leased the Class Vehicles, or they would have paid less for them)." 406 F. Supp. 3d at 641.

Plaintiffs make the same allegations here. Plaintiffs have identified the "who" (FCA) (¶¶ 21-23); the "what" (knowing about, yet failing to disclose, the CP4 fuel pump defect) (§ III.D.3, *infra*); the "when" (from the time of sale of the first vehicle to the present day) (¶ 125); the "where" (the various channels through which FCA sold the class vehicles) (¶¶ 13, 16, 18-20); and the "how" (if Plaintiffs had known of the alleged defect, they would have not purchased or leased the class vehicles, or would have paid less) (*id.*). As two federal district courts have already held in CP4-defect-based cases with fraud allegations synonymous to those here, Plaintiffs satisfy rule 9(b). *See In re GM CP4*, 393 F. Supp. 3d at 879 (upholding Plaintiffs' CP4-defect-based fraudulent concealment claims based substantially similar allegations; *Click*, 2020 WL 3118577, at *4-8 (same).

Numerous other courts have denied Rule 9(b) challenges where concealing an automotive defect was pled with similar specificity.[18] "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled

---

[18] *See, e.g.*, *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1003 (E.D. Mich. 2017); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007) (denying motion to dismiss fraud claims under Rules 12(b)(6) and Rule 9(b) where plaintiffs alleged that GM "was bound by a duty to disclose material facts about its speedometers from 2003 to 2007[,] GM failed to disclose this information, and plaintiffs reasonably claim that they suffered damages after justifiably relying on GM's failure to disclose any defects with the speedometers").

- 16 -

with enough specificity to put defendants on notice as to the nature of the claim." *In re Duramax Diesel.*, 298 F. Supp. 3d at 1055 (quoting *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788 (6th Cir. 2012)). FCA cannot plausibly contend that, in view of this Complaint, it does not know exactly what it is being charged with.

FCA contends that the FAC lacks specificity as to the exact advertisements upon which Plaintiffs relied, as well as "the persons [at FCA] responsible for the failure to disclose [and] the context of the omissions." Mot. at 39-40. However, in *In re GM Air*, the Court adopted the reasoning of *In re GM CP4* in explaining that specificity is not required in omissions cases:

> [T]he United States District Court for the Northern District of California's recent decision in *In re General Motors LLC CP4 Fuel Pump Litigation, supra*, further confirms that Plaintiffs' allegations are sufficient even though they did not identify specific advertisements. In that case, GM moved to dismiss the plaintiffs' fraud claims on the basis that the plaintiffs had failed to plead fraud with the required particularity in part because they did not identify the specific advertisements on which they allegedly relied. The Court disagreed. It held that where a plaintiff alleges fraudulent omissions, as opposed to affirmative misrepresentations, "the relevant questions are whether plaintiffs have adequately alleged (1) that GM had knowledge of the defect, and (2) that defect was material." [2019 WL 3315286] at *4 . . . . Plaintiffs therefore satisfy the pleading requirements of their fraud claims.

406 F. Supp. 3d at 641 (further citation and internal punctuation omitted); *see also Click*, 2020 WL 3118577, at *5 (noting that although "Plaintiffs do not specify an individual who made the representations . . . It is enough that Plaintiffs have identified specific GM publications—which contradict or omit information known to the company—on which to base their claims.") (internal citations omitted); *id.* at

- 17 -

*6 (quoting *True v. Am. Honda Motor Co.*, 520 F. Supp. 2d 1175 (C.D. Cal. 2007)) ("Defendant's argument that Plaintiff must demonstrate which particular advertisements induced him to purchase the [vehicle] is premature at the pleading stage").

FCA cites *Dawson v. General Motors LLC*, 2019 WL 3283046 (D.N.J. July 22, 2019), as having "dismiss[ed] fraud claims based on allegations nearly identical to those here about the same defect at issue here for failure to comply with Rule 9(b)" (Mot. at 41), but *Dawson* was applying a heightened standard inapplicable in this case because the *Dawson* plaintiffs' defects manifested after the expiration of the warranty period. *See Dawson*, 2019 WL 3283046 at *5-*6 (stating that plaintiffs' knowing omission theory was "hampered by the existing warranty" and that recovery was "available only in a narrow set of circumstances" where defendant "knew with certainty" that the CP4 fuel pump would fail).[19] Here, Plaintiff Withrow's failure occurred when the Vehicle was only two years old and had less than 32,000 miles. ¶ 12. And, "to the extent the certainty requirement exists, it contains a safety exception that saves Plaintiffs' NJCFA claims." *Baranco v. Ford Motor Co.*, 2018 WL 5474549, at *6 (N.D. Cal. Oct. 26, 2018) (applying New Jersey law). Plaintiffs do not need to plead that FCA "knew with certainty" that the CP4 fuel pump would fail because "failure to disclose a defect that might compromise

---

[19] In addition, the *Dawson* plaintiffs only asserted an NJCFA-based fraud claim, not common law fraud as Plaintiffs do here, and the allegations in the Amended *Withrow* complaint are substantially more detailed than those from the original *Dawson* complaint. *See, e.g.*, ¶¶ 40-62.

consumer safety constitutes a NJCFA violation, notwithstanding any certainty requirement." *Id.*

### 2.    FCA's Statements Were Not "Puffery."

FCA characterizes its representations of "enhanced durability," "reliability," "greater fuel economy," and "superior horsepower" as mere puffery. Mot. at 42 (quoting FAC ¶¶ 13, 16). However, in a CP4-defect-based case with allegations synonymous to those here, the court held that "[m]isrepresentations are not merely puffery or opinion if they are of a material fact," and "[e]ven an opinion may be actionable if: (1) it is intertwined with direct representations of present facts; (2) the speaker has knowledge of its falsity; (3) it is based on past or present facts; or (4) the speaker has special knowledge of facts that will occur or exist in the future." *Click*, 2020 WL 3118577, at *4 (internal citations omitted); *see also id.* ("[A] defendant's superior knowledge of the facts supports treating contrary representations and praise as actionable"). In *Click*, defendant GM characterized the same allegations FCA cites now as "mere puffery," but the court rejected that argument, underscoring the fact that "[n]one of the [Class Vehicles'] advertisement materials noted that the vehicles were incompatible with U.S. diesel fuel." *Id.* As with the *Click* Plaintiffs, each Plaintiff here alleges that, "in purchasing the vehicle, Plaintiff relied—to his detriment—on the representations by FCA that the Class Vehicle was compatible with American diesel fuel, and was durable and reliable," and that "absent these representations, [Plaintiff] would not have purchased the vehicle and/or would have paid less for it." *E.g.*, ¶ 13. In this context, FCA's representations are actionable non-puffery, just as those in *Click*. *See Click*, 2020

- 19 -

WL 3118577, at *5 ("Taking Plaintiffs' allegations as true under a 12(b)(6) review, GM knew that fuel pump malfunctions in GM diesel trucks could occur as early as the vehicle's first mile. Thus, GM's statements regarding the vehicles' 'superiority,' 'durability,' and 'reliability' were factual representations—not mere puffery."); *see also Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966 (N.D. Cal. 2018) (developer's statement that its software was "industry leading" was not mere puffery).

### 3.    FCA's Superior Knowledge Created a Duty to Disclose.

The Complaint alleges FCA has long known that the CP4 pump was particularly unsuitable for use with American diesel fuel such that FCA had a duty to disclose this fact to potential buyers. ¶ 8. At this stage, a general allegation of knowledge is sufficient because FCA's true level of knowledge can only be gleaned from discovery. *E.g.*, Fed. R. Civ. P. 9(b) ("[K]nowledge . . . may be alleged generally"); *see also Persad*, 2018 WL 3428690, at *3 ("the existence of a duty to disclose must be measured by the specific facts of the case revealed during discovery") (internal quotations omitted); *In re GM CP4*, 393 F. Supp. 3d at 878-79 ("GM's knowledge of the defect . . . . need only be alleged generally") (citations omitted). Indeed, courts have rejected defendants' attempts to force plaintiffs to identify information outside their control at the pleading stage. *See, e.g., Rubenstein v. Neiman Marcus Grp., LLC*, 687 F. App'x 564, 567–68 (9th Cir. 2017) (plaintiff "cannot reasonably be expected to have detailed personal knowledge of Neiman Marcus's internal pricing policies" and "need not specifically plead facts to which she cannot reasonably be expected to have access") (quotation omitted). Plaintiffs

- 20 -

have fairly put FCA on notice of their unlawful-omission claims, ***which is all the law requires***, and have adequately pled FCA's knowledge in several different ways.

*First*, FCA knew before it sold the first Class Vehicle that the CP4 pump would not work with low-lubricity American diesel fuel. *E.g.*, ¶¶ 8, 83. The fuel-incompatibility problem was known to FCA "well before FCA ever chose to implement the CP4" pump in the Class Vehicles. ¶ 8. The whole industry had "experience[d] . . . widespread catastrophic fuel injection pump failures when cleaner diesel standards were first implemented in the 1990s." *Id.* When low-sulfur diesel "first appeared in the American market in the 1990's," an "estimated . . . 65 million fuel injection pumps failed as a result." ¶ 65. "By 2002, the Truck & Engine Manufacturers Association ('EMA')—of which FCA is a member company—acknowledged" that low-sulfur, lower-lubricity American diesel "could cause catastrophic failure" in fuel-injection components, like the CP4, that "are made to European diesel specifications." ¶ 8. When FCA chose, years later, to use the CP4 pump, "[i]t was no secret to FCA that the Bosch CP4 Pump [was] inappropriate for diesel vehicles in the U.S." ¶ 83; *see also* ¶ 80 (discussing how water in diesel fuel "is a well-known and easily anticipatable problem for OEMs such as FCA"); ¶¶ 87-94 (discussing FCA's defect-tracking practices).

These *exact* allegations have been confirmed as adequately pleading an automotive defendant's knowledge. *See In re GM CP4*, 393 F. Supp. 3d at 879-81 (finding that these allegations against GM meant "that Plaintiffs have adequately pled knowledge"); *Click*, 2020 WL 3118577, at *4-8 (same). Other courts have similarly held that knowledge from pre-production testing and industry-wide

- 21 -

tracking of defects establishes knowledge. *See Mui Ho v. Toyota Motor Co.*, 931 F. Supp. 2d 987, 998 (N.D. Cal. 2013) (automaker had knowledge of defect through "pre-release testing data, early consumer complaints about the defect to Defendants' dealers who are their agents for vehicle repairs, dealership repair orders, testing conducted in response to those complaints, and other internal sources," sufficiently pled knowledge).[20]

*Second*, Plaintiffs also allege facts sufficient to show that FCA, as *the manufacturer of the Class Vehicles*, had "exclusive knowledge" of the CP4 defect within the meaning of accepted fraudulent non-disclosure case law. "Exclusive knowledge can be established where, for example, the defendant knew of a defect while the plaintiffs did not and, given the nature of the defect, it was difficult to discover." *Persad*, 2018 WL 3428690 at *3 (citation omitted); *see also Bledsoe*, 378 F. Supp. 3d at 643.

*Third*, Plaintiffs allege that they did not discover and could not have discovered the CP4's fuel-incompatibility defect on their own prior to purchase. ¶ 4; ¶ 206 (Plaintiffs "had no way of knowing . . . that an internal component of the Class Vehicles is devastatingly defective to the entire fuel and engine system, [and] that

---

[20] *See also Mantanky*, 370 F. Supp. 3d at 792 ("[I]t would be implausible to infer that GM was *not* aware of the car's alleged defective cooling system as a result of its testing") (emphasis added); *Robinson v. Kia Motors Am., Inc.*, 2015 WL 5334739, at *5–6 (D.N.J. Sept. 11, 2015); *Amato v. Subaru of Am., Inc.*, 2019 WL 6607148, at *16-17 (D.N.J. Dec. 5, 2019) (plaintiffs adequately alleged Subaru's knowledge where allegations included NHTSA complaints regarding defect and complaints available from other sources "which Defendants are required to monitor under[ the] TREAD Act").

- 22 -

the Class Vehicles were incompatible with the fuel FCA knew would be used to operate the Class Vehicles"); ¶ 350. The "specific workings and technological details" of the CP4 pump "are outside the realm of knowledge of the average consumer" ; even after a wholesale failure of the CP4, it would not be "readily apparent" to the ordinary consumer what had happened. *Edenborough v. ADT, LLC*, 2016 WL 6160174, at *4 (N.D. Cal. Oct. 24, 2016). FCA designed and built the Class Vehicles, and chose the CP4 pump for them; it was thus in a "superior position" to know the pump's characteristics and fatal limitations. These facts are sufficient to allege the fuel-incompatibility defect was within FCA's exclusive knowledge and therefore subject to a duty to disclose. *Norcia v. Samsung Telecomms. Am., LLC*, 2015 WL 4967247, at *7 (N.D. Cal. Aug. 20, 2015).

*Fourth*, the nature of the CP4 defect inherently put FCA in a "superior position" to have knowledge of the defect. *See, e.g.*, ¶ 84 (NHTSA requested "peer vehicle" documents from FCA, Ford, and GM in February 2011 in connection with its safety investigation into CP4 failures in pre-Class-Vehicle-era vehicles manufactured by Volkswagen and Audi, and documents produced by the OEMs were subsequently published on NHTSA's website); ¶ 90 (FCA's developmental, design, testing, service, and quality departments would have been aware of the data reported to NHTSA in 2011 regarding CP4 fuel pump failures in Audi and Volkswagen "peer" vehicles); ¶ 89 (the Federal Safety Act *requires* FCA to monitor field performance data and submit quarterly "early warning reporting" data to NHTSA, including consumer complaints concerning "failure, malfunction, lack of

durability, or other performance issues" in FCA-manufactured vehicles); ¶¶ 98-117 (CP4-defect-based customer complaints in Class Vehicles).

*Fifth*, Plaintiffs sufficiently allege facts from which the Court can infer that FCA actively concealed the CP4 defect. Courts have found active concealment sufficiently pled where, as here, the automaker "never made any attempt to notify other customers or effect a recall" in the face of various customer complaints and that defendant replaced the defective part with an "equally defective" one, suggesting that it "tried to gloss over the problems" and "giving the impression that any defects were unique cases." *Falk*, 496 F. Supp. 2d at 1097.

In disputing it had knowledge of the defective pump, FCA relies on *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012). Mot. at 25. But that case is readily distinguishable; in *Wilson*, allegations about HP's knowledge rested on undated complaints or complaints dated after plaintiffs purchased allegedly defective laptops. Other courts have had little difficulty distinguishing *Wilson* on that basis. For example, in *Digby Adler Group, LLC v. Mercedes-Benz U.S.A., LLC*, 2015 WL 5138080, at *4 (N.D. Cal. Sept. 1, 2015), the district court rejected defendant's reliance on *Wilson*, because *Digby* plaintiffs alleged that defendant "had access to multiple sources of information that support an inference of knowledge: replacement part sales and warranty repair requests, direct customer feedback (including Digby Adler's complaints), indirect complaints from consumers through online fora, at least six [NHTSA] complaints from as early as 2007, and . . . pre-release and subsequent testing and investigations undertaken by Defendant . . . ."

- 24 -

These are precisely the types of allegations Plaintiffs have here, and FCA never explains why they are insufficient.

### 4.   FCA Had a Duty to Disclose the Truth Based on the False Impression It Created.

Courts across the country have found that the law imposes a duty to disclose the truth when a defendant conveys a false impression. *See, e.g.*, *Amato*, 2019 WL 6607148, at *21 ("'ambiguous partial disclosures or statements by [manufacturers]' may impose such a duty" (alteration in original)); *see also Augustine v. Talking Rain Beverage Co., Inc.*, 386 F. Supp. 3d 1317, 1330 (S.D. Cal. 2019) (upholding fraud claim based on allegations that defendant intended to give consumers false impression that defendant's beverage was "natural" when it knew it was not); *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012) ("there is always a duty to correct one's own prior false or misleading statement"). By advertising the Class Vehicles as having "superior fuel-efficient performance" with "biodiesel (B20) capability" (¶ 137) while concealing the fact that the Class Vehicles are actually *incompatible* with U.S. diesel, FCA conveyed a false impression which it had a duty to correct. FCA has no response to this argument.

### 5.   FCA Had a Duty to Disclose Because the Defect is Material.

Under the UCL and CLRA, defects that affect a central function of a product are material for purposes of fraud by concealment. As detailed in the FAC, when CP4 fuel pumps fail, they not only destroy the vehicles' fuel-injection systems, they cause total engine inoperability, and a vehicle's engine is central to its functioning. *See, e.g.*, ¶¶ 1-4. The Northern District of California has already held that the CP4

fuel pump defect is a material defect. *See In re GM CP4*, 393 F. Supp. 3d at 881 (concluding that "the alleged defect is central to the vehicle's function and that Plaintiffs have therefore alleged a material defect"). This Court should do the same.

Independent of the defect's impact on the central functioning of Class Vehicles, FCA had a duty to disclose because the defect is dangerous. Courts have consistently held that consumers must be told about dangerous defects. *See, e.g.*, *Baranco*, 2018 WL 5474549 at *6 (applying New Jersey law); *Marsikian v. Mercedes Benz USA, LLC*, 2009 WL 8379784, at *7 (C.D. Cal. May 4, 2009) (upholding CLRA and UCL claims based on failure to disclose defect that could cause water damage to vehicle's electrical system); *Avedisian v. Mercedes-Benz USA, LLC*, 2013 WL 2285237, at *6 (C.D. Cal. May 22, 2013) (upholding claims alleging failure to disclose defect in chrome trim that could lead to sharp edges). This is why FCA's reliance on *Alban v. BMW of North America*, 2011 WL 900114 (D.N.J. Mar. 15, 2011), for the notion that an NJCFA claim is only cognizable if the manufacturer knew "with certainty" that the product would fail (Mot. at 45) is misplaced, because that case also held that safety concerns could trigger a duty to disclose. *See Alban*, 2011 WL 900114 at *11. And the fact that both named Plaintiffs here experienced catastrophic CP4 failure within the warranty period negates the argument that Plaintiffs have only alleged that the vehicles "*might*" fail. *See* ¶¶ 12, 15; *see also Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 569 (D.N.J. 2012) (upholding fraud and NJCFA claims where complaint alleged that transmission problems created dangerous condition, that plaintiff experienced transmission failure, and that plaintiff incurred charges of $1,200 to repair the problem).

- 26 -

Here, the FAC explains how the CP4's "catastrophic failure often causes the vehicle to shut off while in motion and renders it unable to be restarted." ¶ 4; *see also* ¶¶ 12, 15, 55, 111. Drivers repeatedly complained of their Class Vehicles dying when the CP4 pump failed. ¶ 113 ("while driving down highway @ 65 MPH"); ¶ 114 ("while traveling down highway . . . motor just [shut] down at 70 MPH"). Numerous courts recognize stalling defects are sufficiently dangerous to require disclosure. *See, e.g.*, *Matanky*, 370 F. Supp. 3d at 789-793 (upholding multiple states' consumer fraud claims based on alleged defect that caused car to lose power unexpectedly and holding that plaintiffs established car manufacturer's duty to disclose safety defects); *Borkman v. BMW of N. Am.*, 2017 WL 4082420, at *8 (C.D. Cal. Aug. 28, 2017) (defect resulting in sudden loss of power during vehicle operation constituted "unreasonable safety hazard").

Both named Plaintiffs experienced CP4-induced engine shutdown while driving at high speeds. ¶¶ 12, 15. The risk of stalling from this defect is itself a material hazard, and is enough "to survive a motion to dismiss." *Butler v. Porsche Cars N. Am., Inc.*, 2016 WL 4474630, at *4 (N.D. Cal. Aug. 25, 2016) (plaintiff adequately alleged "material safety hazard" where defect "could cause" car to "cease functioning").

**E.    Plaintiffs Plausibly Allege Breach of Contract.**

FCA characterizes Plaintiffs' breach of contract claim as "fantastical" (Mot. at 23), but neglects to mention a contrary case *in this District* in which FCA was the defendant. *See Bledsoe*, 378 F. Supp. 3d at 644-45. There, FCA made the same argument it does here—"that without direct contractual privity, there can be no

- 27 -

contractual breach," and that the plaintiffs failed to allege "which specific provisions of such contracts that FCA supposedly breached." *Id.* at 644. The Court found every sale constituted a contract between the plaintiffs and FCA. *Id.* at 644-45. And based on FCA's false statements and omissions, "consumers received a product other than the one for which they bargained consideration, thereby plausibly stating a claim for breach of contract." *Id.* at 645. Plaintiffs here allege the same. *E.g.*, ¶¶ 13, 16, 19.

Plaintiffs also allege contractual privity through a principal-agent relationship between FCA and its dealers. ¶¶ 147(i)-(xxiii). The Sixth Circuit has long recognized that contractual privity can be established between a consumer and a manufacturer when the consumer purchases a vehicle through an agent that is operating under the manufacturer's direction and on its behalf. *Joslyn v. Cadillac Auto. Co.*, 177 F. 863, 866 (6th Cir. 1910). Whether a principal-agent relationship exists is a question of fact. *Joslyn*, 177 F. at 866.

FCA argues that Plaintiffs seek economic losses arising only from the sale of a good, so that the UCC applies. Mot. at 49. But the FAC also seeks services that should have been provided under the contract, including replacement of the defective fuel pumps. *See, e.g.*, Prayer for Relief (C). Even if UCC provisions govern instead of common law, courts simply construe breach of contract claims as subject to the UCC. *See, e.g.*, *Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 531 (E.D.N.Y. 2012) (applying NYUCC to breach of contract claim). Finally, FCA contends that the breach of contract claim should be dismissed because it is simply a "repackaging" of the fraud claim. But in *Bledsoe*—a case with similar facts, unlike those cited by FCA (*see* Mot. at 50)—the Court allowed both breach of contract and

- 28 -

fraud claims to proceed. Common facts can underlie different claims, and here, Plaintiffs properly pled their breach of contract claim.

**F.    The UCL Claim is Valid.**

The FAC is clear that Plaintiffs have at least pled a claim under the UCL's "unlawful" prong. *See* ¶¶ 172–87 (FCA violated MMWA); *see also* ¶¶ 362–370 (FCA's warranty breached Cal. Civ. Code §§ 1791 and 1792). Moreover, and contrary to FCA's contention, Plaintiffs do invoke the "unfairness" prong of the UCL in the FAC. *See* ¶ 348 (detailing FCA's "fail[ure] to disclose" the CP4 defect despite knowing material facts that contradicted same), ¶ 4 (alleging that the defect "causes the vehicle to shut-off while in motion" which "present[s] an inherent risk to consumer safety"). Moreover, FCA has not made an argument about the utility of its conduct. In these circumstances, Plaintiffs have properly alleged the unfairness prong of the UCL because FCA has not attempted to argue that the utility of selling the defective pump outweighs the dangers of the defect, as it is required to do. *See Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965, 973 (C.D. Cal. 2014) (denying motion to dismiss UCL claim where Mazda's business practice outweighed the utility of selling vehicles "with a defective . . . assembly that Mazda knew was defective and likely to fail and result in a catastrophic engine failure"); *Haskins v. Symantec Corp.*, 2013 WL 6234610, at *8 (N.D. Cal. Dec. 2, 2013) ("unfair" conduct under the UCL is not coterminous with fraud).

Because Plaintiffs' breach of warranty claims survive, the Court should also deny FCA's motion with respect to the UCL. *See In re MyFord Touch*, 291 F. Supp. 3d at 960.

- 29 -

**G.    The Unjust Enrichment Claims are Valid.**

FCA moves to dismiss Plaintiffs' unjust enrichment claim under Connecticut law because Plaintiffs have alleged that there is an express warranty covering the vehicles. Mot. at 52. But, under Michigan law, "Rule 8(a)(3) permits pleadings in the alternative 'when, for instance, there is a dispute between the parties as to whether an express agreement exists.'" *Solo v. UPS Co.*, 819 F.3d 788, 796 (6th Cir. 2016); *see also Johnston v. PhD Fitness, LLC*, 2018 WL 646683, at *6 (E.D. Mich. Jan. 31, 2018) ("Even after dismissing the warranty claims, it might remain an open question whether an express agreement governs the parties' conduct."). Even if FCA concedes that the written warranty covers the vehicles at issue, which it has not yet done, a claim for unjust enrichment is still viable at this stage of the case. *See In re FCA*, 2020 WL 1285635, at *6 ("[A] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones . . . .").

Connecticut courts[21] have also established that plaintiffs can bring alternative theories of recovery. *See Walker v. People's United Bank*, 305 F. Supp. 3d 365, 379 (D. Conn. 2018) ("At this stage in the proceedings, the complaint's inconsistent allegations do not preclude [plaintiff] from alleging unjust enrichment in the alternative."). Moreover, "the existence of a contract between the parties does not necessarily bar recovery under a claim of unjust enrichment." *Cadle Co v. Multi Unit Services, Inc.*, 2003 WL 21213434, at *3 (Conn. Super. Ct. May 12, 2003).

---

[21] Withrow may bring claims under the CUTPA because he is a Connecticut resident. *See* Conn. Gen. Stat. Ann. § 42-110g(a)-(b).

- 30 -

FCA's contention that adequate legal remedies preclude unjust enrichment claims fails for the same reason. "Unjust enrichment claims routinely are allowed to proceed when pleaded in the alternative to other viable claims for relief." *In re FCA*, 280 F. Supp. 3d at 1009 (citing *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517 (D.N.J. 2004)) (denying motion to dismiss unjust enrichment claims pleaded under the laws of 50 states); *see also Click*, 2020 WL 3118577 at *9 (holding that dismissal of CP4 defect plaintiffs' unjust enrichment claims based on existence of valid contract would be "premature"). FCA's cited authority, *Town of Plainville v. Almost Home Animal Rescue & Shelter, Inc.*, 187 A.3d 1174 (Conn. App. Ct. 2018), is distinguishable because that court held that a statute provided the exclusive remedy for damages sought by the plaintiff.[22] That is not the case here.

## H.   Plaintiff Nestor's Claims are Not Time-Barred.

Plaintiffs' claims are timely because their vehicles contained a latent defect in the fuel injection system at the time of sale which was unknowable and undiscoverable to them prior to acquisition. Indeed, the date of Nestor's purchase does not determine whether his UCL, implied warranty, SB Act, CLRA, fraud, and MMWA claims are time-barred. Claims under the UCL are "governed by common law accrual rules," including the discovery rule and fraudulent concealment. *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1196 (Cal. 2013). The warranty claims are also subject to tolling based on fraudulent concealment. *Gerstle v. Am. Honda*

---

[22] FCA's Exhibit D is also unpersuasive and does not mandate dismissal of the other unjust enrichment claims pled in the FAC. *See* Exhibit C.1-C.5 attached hereto.

*Motor Co., Inc.*, 2017 WL 2797810, at \*12 (N.D. Cal. June 28, 2017); *Philips v. Ford Motor Co.,* 2016 WL 1745948, at \*14 (N.D. Cal. May 3, 2016) ("*Philips II*").

Nestor did not have the opportunity to discover the defect until *at least* April 2019, when his catastrophic failure occurred. *See* ¶ 15. Thus, Nestor did not know or have reason to investigate FCA's fraud until shortly before the action was filed. *See Philips v. Ford Motor Co.*, 2015 WL 4111448, at \*8 (N.D. Cal. July 7, 2015) ("*Philips I*") (holding that plaintiffs "were not charged with a duty to reasonably investigate until the alleged steering defect manifested in their vehicles" because prior to that point "there was no fact or circumstance to prompt an investigation"). Moreover, as alleged in the FAC, "the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease." ¶ 350. The same rationale from *Philips I* applies—until Plaintiffs experienced an adverse effect arising from the defect, or were informed by counsel, they had no reason to themselves investigate. Thus, the discovery rule applies, and Nestor's claims are all timely.

FCA's reliance on *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087 (N.D. Cal. 2014), and *Ferris v. Ford Motor Co.*, 2019 WL 1100376 (N.D. Cal. Mar. 8, 2019), for the argument that the limitations period is tolled from the time of sale regardless of the date of defect discovery "is contrary to applicable California law, which holds that the statute of limitations begins to run once a defect is discovered, not when a product is delivered." *Tanner v. Ford Motor Co.*, 424 F. Supp. 3d 666, 671 (N.D. Cal. 2019) (rejecting *MacDonald* as "unpersuasive" in light of the holding

in *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297 (Cal. Ct. App. 2009) that "Rule §1791.1 does not create a deadline for discovering latent defects"); *see also Ferris*, 2019 WL 1100376 at *2 (citing *Mexia* in noting that "Ford is incorrect to the extent it argues that the *timing* of Mr. Ferris's discovery of the defect . . . prohibits Mr. Ferris's breach of implied warranty claim" because "under *Mexia* section 1791.1 does not create a deadline for discovering a latent defect or giving notice to the seller of same").

In fact, FCA's arguments against tolling were already rejected last year in another CP4-defect case in the Northern District of California. *See In re GM CP4*, 393 F. Supp. 3d at 884 (the "discovery rule operates . . . to toll . . . claims" where "Plaintiffs did not have reason to discover the defects in their vehicles until they experienced adverse effects resulting from those defects or were informed by counsel of said defects").

Plaintiffs' claims are also tolled by the doctrine of fraudulent concealment, in which "a defendant, through deceptive conduct, has caused a claim to grow stale." *Philips I*, 2015 WL 4111448, at *7-8 (citing *Aryeh*, 55 Cal. 4th at 1191). Nestor plausibly alleges tolling based on fraudulent concealment for the same reasons that he plausibly states the underlying claim. *See supra* § III.D. FCA advertised the Class Vehicles' durability, efficiency, fuel economy, power, and performance, all while failing to disclose that the CP4 pump was incompatible with U.S. diesel fuel and could lead to sudden engine failure (*e.g.*, ¶¶ 8-9, 18-19, 55, 125-40, 148, 153), and Nestor alleges that he relied on such advertising (¶¶ 16-17). These allegations suffice to allege fraudulent concealment. *See Southland Sod Farms v. Stover Seed Co.*, 108

- 33 -

F.3d 1134, 1145 (9th Cir. 1997) (company's advertisement that its slow-growing grass required "50% Less Mowing" was an actionable statement of fact); *Sterling Drug, Inc. v. FTC*, 741 F.2d 1146, 1151-53 (9th Cir. 1984) (company's claim that its brand of aspirin was consistently better than other brands "for purity, stability, and speed of disintegration" was properly determined not to be puffery); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (Cal. 2009) ("where . . . a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements").

Beyond FCA's failure to disclose material information, FCA actively misled consumers with its advertising and by blaming them for fuel contamination—and rejecting warranty claims—rather than acknowledge the incompatibility of U.S. diesel fuel with that required by the pump FCA chose for its EcoDiesel vehicles. ¶¶ 6, 80, 108. Indeed, "FCA has refused to honor its warranties—even after its EcoDiesel customers presented the same fuel pump problem in the Class Vehicles two (or more) times for repair under warranty." ¶ 142. Moreover, Nestor has alleged "when and under what circumstances the fraud was discovered," and that he was "not at fault in failing to discover the fraud." *Aberin v. Am. Honda Motor Co.*, 2018 WL 1473085, at *4, 6 (N.D. Cal. Mar. 28, 2018). Specifically, he "only learned of the defective nature of the CP4 fuel injection pump . . . shortly before this action was filed," and he "did not know of facts that would have caused a reasonable person to suspect" prior thereto. ¶ 153. And FCA *still* continues to deny responsibility, instead placing blame on consumers and voiding their warranties, despite knowing that there

is no true "fix" because the vehicles will continue to fail so long as they are used with U.S. diesel. *E.g.*, ¶¶ 3, 148, 213. *Cf. In re MyFord Touch*, 46 F. Supp. 3d at 961–62 ("If, as Plaintiffs allege, Ford pretended to fix the problems with MFT instead of actually admitting that the problems could not be fixed, that would be active concealment."). This suffices to allege tolling based on fraudulent concealment.

**I.   FCA's Chart-Based Multi-State Arguments Do Not Merit Dismissal.**

FCA erroneously argues that certain implied warranty claims fail because consumers purchasing from dealers are not in privity with FCA. Mot. at 53. But contrary to FCA's contention, some states do not require privity at all. *See* Exhibit A.2 (Kansas, Michigan, Nevada, North Carolina, Oklahoma, Oregon, Rhode Island, and Virginia). And other states find the privity requirement satisfied where (1) consumers are the intended beneficiaries of the warranty (Alabama, Florida, Illinois, Ohio, Vermont, and Washington); (2) consumers purchase from an authorized agent (Florida, New York, and Ohio); (3) consumers have direct dealings with the manufacturer (Illinois and Tennessee); and/or (4) the product is a thing of danger (New York, Tennessee, and Washington). *See id.*; ¶¶ 147, 183. Moreover, "privity inquiries into the relationship between a purchaser, a seller, and a manufacturer are fact-intensive" and "not amenable to disposition on the pleadings." *In re FCA US LLC Monostable Elec. Gearshift Litig*., 355 F. Supp. 3d 582, 595 (E.D. Mich. 2018).

With respect to the fraud claims, FCA wrongly argues that Plaintiffs have not adequately alleged a duty to disclose omitted information. Some states have no such

requirement, and others recognize a disclosure duty based on, *inter alia*, a safety concern involving the product, a defect affecting the central function of the product, the defendant's superior knowledge regarding the defect, or the defendant's partial representations to the contrary—all of which are alleged here. *See* Exhibit B.6.

FCA also incorrectly asserts that the economic loss doctrine bars Plaintiffs' fraud claims in certain states. But "[c]ourts generally agree that fraud in the inducement, necessarily prior to the contract, is independent of the contract and therefore not barred by the economic loss doctrine." *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 885 (8th Cir. 2000). And courts have applied the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), to conclude that class actions are procedural and do not affect substantive rights, such that Rule 23 trumps state laws barring class actions. *See* Exhibit B.5.

With respect to the multi-state unjust enrichment claims, FCA wrongly argues that its written warranty precludes them. But as the Sixth Circuit has stated there must be "an express contract on the same subject matter." *Solo*, 819 F.3d at 796 (reversing dismissal of unjust enrichment claim). And the multi-state cases cited by FCA acknowledge as much. *See* Exhibit C.3. So there is no preclusion here because the subject matter is different: the unjust enrichment claims arise from FCA's pre-sale misrepresentations and omissions, whereas the warranty addresses the parties' post-sale rights and obligations. *See, e.g.*, *Glenn v. Hyundai Motor Am.*, 2016 WL 7507766, at *6 (C.D. Cal. Nov. 21, 2016) (denying motion to dismiss unjust enrichment claims arising from an undisclosed shattering-sunroof defect, because

- 36 -

"any fraudulent concealment before the contract is not within the scope of the warranty").

FCA also argues that the availability of legal remedies bars Plaintiffs' unjust enrichment claims. But Rule 8 allows parties to plead in the alternative. Indeed, the Sixth Circuit has held that plaintiffs can plead unjust enrichment claims in the alternative and that it is inappropriate to dismiss such alternative claims on a motion to dismiss.[23] *Solo*, 819 F.3d at 797. In *In re FCA US LLC Monostable Electronic Gearshift Litigation*, this District rejected the same argument that FCA once again makes here, because "unjust enrichment claims routinely are allowed to proceed" in the alternative. 280 F. Supp. 3d at 1009.

Finally, Plaintiffs need not interact directly with FCA in order for unjust enrichment claims to succeed. As Judge Edmunds observed in *Cardizem*: "Whether or not the benefit is directly conferred on the defendant is not the critical inquiry; rather, the plaintiff must show that his detriment and the defendant's benefit are related and flow from the challenged conduct." 105 F. Supp. 2d at 671 (applying, *inter alia*, law of Alabama, Illinois, Michigan, and New York);[24] Exhibit C.5. In short, all of FCA's multi-state chart-based arguments lack merit. *See* Exhibits A-C.

---

[23] *See also Persad*, 2018 WL 3428690 at *6 ("Rule 8(a)(3) specifically allows a party to plead in the alternative"); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 671 n.25 (E.D. Mich. 2000) ("Defendant HMRI also argues that Plaintiffs' unjust enrichment claims must be dismissed because Plaintiffs have not alleged that they lack an adequate remedy at law. Plaintiffs' ability to plead in the alternative renders this argument moot.").

[24] *See also In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 869, 897 (E.D. Mich. 2014) (same under, *inter alia*, Florida, Michigan, and New York law); *K-Dur*, 338 F. Supp. 2d at 543 (same under laws of fifty states).

**J.      Defendants' Remaining Arguments Fail.**

**1.      The Nationwide Class Claims Are Valid.**

The Court should not strike Plaintiffs' nationwide class claims for two reasons. First, most courts reserve judgment on whether a class is certifiable until the class certification stage. *See, e.g.*, *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 512 (S.D.N.Y. 2015) (citing *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011)) ("It is only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be granted"); *McPeak v. S-L Distribution Co.*, 2014 WL 4388562, at *4 (D.N.J. Sept. 5, 2014) (citation omitted) (same)); *In re Takata Airbag Prods. Liab. Litig.*, 2015 WL 9987659, at *2 (S.D. Fla. Dec. 2, 2015) (denying motion to strike the allegations of a national class action as premature).

Second, the law governing fraudulent concealment is materially uniform throughout the United States when applied to a case like this one. *See In re Takata Airbag Prod. Liab. Litig.*, 2017 WL 2406711, at *5 (S.D. Fla. June 1, 2017) ("Takata's own summary of fraudulent concealment law seems to contradict its argument that the law is not common across the states."); *see also Ebin v. Kangadis Family Mgmt. LLC*, 45 F. Supp. 3d 395, 398-99 (S.D.N.Y. 2014) (certifying nationwide class asserting common law fraud claims).

Unlike the Sixth Circuit case cited by FCA, the FAC's extensive allegations regarding FCA's active concealment of the CP4 defect operated the same way in every state of proposed class members. *Compare Pilgrim*, 660 F.3d at 946, *with* FAC

- 38 -

¶¶ 95-97, 125-26, 137-39. Therefore, *Pilgrim* is inapplicable and the Court should not strike Plaintiffs' nationwide class claims.

### 2. The Claims for Equitable Relief Are Well-Pled.

Plaintiffs have pled the equitable claims "in the alternative to any contract-based claim brought on behalf of Plaintiffs and Sub-Class members." *See, e.g.*, ¶ 564. Accordingly, FCA's argument that Plaintiffs have not pled they lack an adequate legal remedy is baseless. And as discussed above and at Exhibit C.3-C.4, the existence of an alleged express warranty does not bar unjust enrichment claims or other equitable relief when pled in the alternative. *See In re GM CP4*, 393 F. Supp. 3d at 884 (declining to dismiss unjust enrichment claim at the pleadings stage). Indeed, this Court routinely allows Plaintiffs to plead their claims for unjust enrichment in the alternative. *See Persad*, 2018 WL 3428690 at *6 (citing *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 182 (6th Cir. 1996)).

### 3. Plaintiffs Properly Allege Punitive Damages.

Plaintiffs have properly pled FCA's egregious conduct. Plaintiffs have included ample allegations that FCA maliciously shirked its duty to warn of the CP4 defect despite knowledge of same. Instead, FCA has placed blame on consumers despite its knowledge the Class Vehicles are unable to be repaired and will continue to fail so long as they are used with U.S. diesel fuel—continuing to put drivers at risk. *See* ¶¶ 3, 148, 213. Further, Plaintiffs included repeated complaints of stalling defects. *See* ¶¶ 113-14.

Even if Plaintiffs have merely alleged the conclusory right to punitive damages, any substantive pleading standard for punitive damages conflicts with and

- 39 -

is preempted by Fed. R. Civ. P. 8. *See Sloan v. Borgwarner Flexible Benefit Plans*, 2010 WL 1063723, at *2 (E.D. Mich. Feb. 12, 2010) (providing that "Plaintiff will be given some latitude to develop the facts of this case to show whether Defendants' conduct was sufficiently egregious or outrageous").

### 4.    The Claims for Seniors and the Disabled Are Well-Pled.

FCA's request to strike Plaintiffs' request for relief on behalf of senior citizens and disabled persons is premature. *See Ang v. Bimbo Bakeries USA, Inc.*, 2013 WL 5407039, at *10 (N.D. Cal. Sept. 25, 2013). As discussed *supra* (§ III.B), whether a class representative may present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation. *See, e.g.*, *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012).

## IV.    CONCLUSION

FCA's motion never confronts the reality that substantially similar allegations have recently been upheld by two different courts, following the logic and case law of decisions in this District and across the country. The FAC adequately alleges that the Class Vehicles have a common defect, FCA failed to disclose the defect, and Plaintiffs accordingly overpaid for their vehicles. FCA has no meaningful response to these three central allegations, and its motion to dismiss should be denied.

Dated: July 27, 2020            Respectfully submitted,

                                */s/ Steve W. Berman*
                                Steve W. Berman
                                Jerrod C. Patterson

HAGENS BERMAN SOBOL SHAPIRO
LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com


Robert C. Hilliard
Lauren Akers
HILLIARD MARTINEZ GONZALES LLP
719 S. Shoreline Blvd.
Corpus Christi, TX 78401
Telephone: (361) 882-1612
bobh@hmglawfirm.com
lakers@hmglawfirm.com

E. Powell Miller (P39487)
THE MILLER LAW FIRM, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
Fax: (248) 652-2852
epm@millerlawpc.com

Andrew Parker Felix, Esq.
MORGAN & MORGAN, P.A.
20 North Orange Ave., Ste. 1600
P.O. Box 4979
Orlando, FL 32801
Tel.: (407) 244-3204
Fax: (407) 245-3334
Andrew@forthepeople.com

- 41 -

**CERTIFICATE OF SERVICE**

I certify that on July 27, 2020, I caused the foregoing to be filed with the Clerk of the Court via CM/ECF, which will deliver notice of such filing to all counsel of record.

s/ Steve W. Berman
Steve W. Berman

010784-22/1330165 V1

- 1 -