# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| JEFF WITHROW and KEVIN NESTOR, *individually, and on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> FCA US LLC, <br><br> Defendant. | Case No. 2:19-cv-13214-LJM-KGA <br><br> Hon. Laurie J. Michelson <br><br> Magistrate Kimberly G. Altman |

## FCA US LLC'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

**KING & ASSOCIATES, PLLC**
Stephen W. King (P56456)
355 S. Old Woodward, Suite 100
Birmingham, Michigan 48009
(248) 792-2398
sking@kingandmurray.com

**THOMPSON COBURN LLP**
Kathy A. Wisniewski (MO/38716)
Stephen A. D'Aunoy (MO/54961)
Thomas L. Azar, Jr. (MO/56634)
One US Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000
(314) 552-7000 (fax)
kwisniewski@thompsoncoburn.com
sdaunoy@thompsoncoburn.com
tazar@thompsoncoburn.com

*Attorneys for FCA US LLC*

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUE PRESENTED.................................................................. iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. iv

     I.      INTRODUCTION....................................................................1

     II.     LEGAL STANDARD ..............................................................1

     III.    OBJECTIONS AND ARGUMENTS ......................................2

              OBJECTION NO. 1:  The Report & Recommendation
Applies An Incorrect Legal Standard Which Improperly Shifts
The Burden To FCA US To Prove The Contents Of The File
Nestor Admits He Deliberately Destroyed During This Case. .............2

              OBJECTION NO. 2:  The Report & Recommendation
Misconstrues The Evidence Showing Nestor Was Already
Planning To File A Lawsuit When He Discarded The Receipt
For The Fuel He Purchased Right Before His Vehicle's Fuel
Pump Failed.............................................................................................8

              OBJECTION NO. 3:  The Report and Recommendation
Sets A Problematic Precedent Regarding Nestor's Sale of His
Vehicle During This Lawsuit, But Before Discovery Had Even
Begun......................................................................................................10

     I.      CONCLUSION.............................................................................11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adkins v. Wolever*, 692 F.3d 499 (6th Cir. 2012) ........................................................8

*Applebaum v. Target Corp.*, 2015 WL 13021688 (E.D.Mich. 2015).......................5

*Coach, Inc. v. Dequindre Plaza, LLC*, 2013 WL 2152038 (E.D.Mich. 2013) ............................................................................................................1

*Estate of Romain v. City of Grosse Pointe Farms*, 2016 WL 7664226 (E.D.Mich. 2016) ........................................................................................5, 6, 7

*Flagg v. City of Detroit*, 2011 WL 4634249 (E.D.Mich. 2011), *aff'd* 715 F.3d 165 (6th Cir. 2013) .........................................................................5, 6

*Grief v. Nassau County*, 2022 WL 307154 (E.D.N.Y. 2022).................................6

*In re Abell*, 2016 WL 1556024 (Bkrtcy.D.Md. 2016) ..............................................6

*In re Correra*, 589 B.R. 76 (Bkrtcy.N.D.Tex. 2018)..............................................6

*In re Global Technovations*, 431 B.R. 739 (Bkrtcy.E.D.Mich. 2010) .....................8

*Passlogix, Inc. v. 2FA Technology, LLC*, 708 F.Supp.2d 378 (S.D.N.Y. 2010) ........................................................................................................6

*Provience v. City of Detroit*, 2011 WL 7445088 (E.D.Mich. 2011) ......................6

*Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172 (D.Md. 2008) ......................6

*Siggers v. Campbell*, 2014 WL 4978648 (E.D.Mich. 2014) ...................................5

**Statutes and Constitutional Provisions**

28 U.S.C. § 636 ....................................................................................................1, 2

**Rules**

Fed.R.Civ.P. 72 .......................................................................................................1

## <u>STATEMENT OF ISSUE PRESENTED</u>

Should the Court overrule the Magistrate Judge's Report and Recommendation and impose some sanction on Plaintiff Kevin Nestor for spoliation of evidence where:  (1) Nestor admits he deliberately threw a "file" of records about his vehicle "in the garbage" shortly after filing this case, and those records are now lost; (2) Nestor also disposed of the receipt for the fuel he purchased immediately before his vehicle's fuel pump failed, which could have confirmed the dealership's diagnosis the pump failed because of misfuelling with gasoline instead of diesel, and Nestor was already anticipating litigation at that time; and (3) Nestor also disposed of his vehicle shortly after this case was filed, and before discovery had begun?

The Court should respond "Yes."

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

*Estate of Romain v. City of Grosse Pointe Farms*, 2016 WL 7664226 (E.D.Mich. 2016)

*Flagg v. City of Detroit*, 2011 WL 4634249 (E.D.Mich. 2011), *aff'd* 715 F.3d 165 (6th Cir. 2013)

## I.     INTRODUCTION

As set forth herein, FCA US LLC respectfully objects to the Report and Recommendation (ECF #85) entered by the Honorable Magistrate Judge Kimberly G. Altman on November 21, 2022, recommending that FCA US's motion for spoliation sanctions (ECF #65) be denied.[1]  Review is particularly appropriate here because the Magistrate, in issuing her Report and Recommendation, applied an incorrect legal standard that improperly shifted the burden to FCA US to prove the contents of a file of repair, service, and other records Plaintiff Kevin Nestor admits he kept about his vehicle, but then intentionally discarded (into the trash) shortly after filing this case.  If the correct legal standard is applied, it is clear that all of the elements of spoliation are satisfied, and some sanction (either dismissal or, at a minimum, a permissive or mandatory adverse inference jury instruction regarding the materials Nestor discarded) is warranted here.

## II.     LEGAL STANDARD

"A district court judge reviews de novo the portions of [a magistrate judge's] report and recommendation to which objections have been filed."  *Coach, Inc. v. Dequindre Plaza, LLC*, 2013 WL 2152038, *1 (E.D.Mich. 2013); *see also* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b).  The district court "may accept, reject, or modify,

---

[1]*See*, *generally*, Report and Recommendation to Deny Defendant's Motion for Sanctions for Spoliation of Evidence (ECF No. 65), ECF #85 (herein "Report & Recommendation").

in whole or in part, the findings or recommendations made by the magistrate judge. The [district court] judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

### III.   OBJECTIONS AND ARGUMENTS

**OBJECTION NO. 1:**   **The Report & Recommendation Applies An Incorrect Legal Standard Which Improperly Shifts The Burden To FCA US To Prove The Contents Of The File Nestor Admits He Deliberately Destroyed During This Case.**

The clearest spoliation raised in FCA US's motion relates to a "file" in which Nestor kept "anything related to [the model-year 2014 Jeep Grand Cherokee] vehicle" he is suing over, including the "service records" and "work order receipts" pertaining to that vehicle. *See* ECF #65-3, pp. 22, 110 (PageID.2348, 2363); *see also*, *generally*, ECF #65, pp. 5-7 (PageID.2316-18). Nestor kept this file because, as a retiree, he spent years driving his vehicle (and having it repaired and serviced) across the entire country. *See* ECF #65-3, pp. 45-46, 79-80, 100-01 (PageID.2355-2356, 2358-59, 2360-61). And, as Nestor explained, without the file and the records contained within it, there is no way to determine where his vehicle had been serviced, what repairs/work had been done, or even what states Nestor had the vehicle repaired or serviced in. *See id.* at pp. 45-46, 79-80, 100-01 (PageID.2355-56, 2358-61). In fact, without his file of vehicle records, Nestor cannot even say which repair shops and service facilities just in California (where he lives) have worked on his vehicle. *See, e.g.*, *id.* at p. 114-15 (PageID.2367-68).

- 2 -

Nestor admits that, after filing this case, he went to his filing cabinet, took out his file of vehicle records, and ***deliberately*** threw it "into the garbage." *See id.* at pp. 22-23, 25-26 (PageID.2348-49, 2351-52) (timing of spoliation, location of the file); *id.* at p. 23 (PageID.2349) ("I threw them away"); *id.* at p. 26 (PageID.2352) ("I disposed [of] the documents into the garbage..."). His only explanation for why he decided to intentionally dispose of this file just as discovery began was that he had sold his vehicle (buying a newer model of the same vehicle) and wanted to "[m]ake room for more files." *Id.* at pp. 25, 37 (PageID.2351, 2354).

While Nestor recalls some of things he saw in the file when he threw it away (like a sales brochure), he admits he did ***not*** go through the file before disposing of it, and that there is now no way to determine all of the different records that were discarded. *See id.* at p. 24 (PageID.2350) ("Q. Before disposing of those documents, did you go through … to determine what was in them or did you just toss them out? A. I just tossed them out."); *id.* at p. 26 (PageID.2352) ("Q. Is there any way to know what exactly is in that file without somehow finding it in the garbage somewhere? … A. I don't know how I'd do that."); *id.* ("Q. I'm just asking if [] there was some other record or there's some other notes or something else that could tell us what was contained in that file. And as I understand your testimony, there is not? A. There is not."). While Nestor did not review the file's contents when he discarded

it, he nevertheless offered a vague, self-serving assertion at deposition that what he threw away "didn't seem relevant to the issue at hand." *Id.* at p.23 (PageID.2349).

In analyzing FCA US's motion, the Magistrate Judge concluded that FCA US successfully demonstrated the first two elements for an award of spoliation sanctions – *i.e.*, that Nestor (1) "had an obligation to preserve [the file] at the time it was destroyed" and (2) "the records were destroyed with a culpable state of mind." *See* Report & Recommendation, pp. 9, 20-22 (PageID.3363,3374-76) (quoting *Adkins v. Wolever*, 692 F.3d 499, 503-04 (6th Cir. 2012)). However, the Magistrate concluded that FCA US had not sufficiently demonstrated the third element – *i.e.*, (3) "that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id.*

The Magistrate reasoned that this third and final element was lacking because FCA US could not prove precisely what the discarded records showed (since the file was now lost and Nestor could not recall what it contained), Nestor testified he did not think the file was "relevant" (even though he admits he did not review the file before discarding it), and Nestor seemed "credible" at his deposition since he was "willing[] to disclose damaging information" by admitting he had fueled his diesel vehicle with gasoline on one occasion. *Id.* at pp. 22-23 (PageID.3376-77). On this last point, the Magistrate appears to have given Nestor some unearned points for truthfulness, as Nestor and his counsel were already aware, prior to his deposition,

that FCA US had subpoenaed one of the few repair shops Nestor could identify and obtained (and shared in discovery) a repair record detailing Nestor's prior admission of the misfuelling incident.  *See* Exhibit LL to Nestor's deposition, attached hereto, at AutoNation (Nestor)_026.  But, in any event, a far more fundamental error lies at the core of the Magistrate Judge's analysis.

In determining whether the third "relevance" element for spoliation sanctions is satisfied, courts make a critical distinction between (1) situations where materials are negligently, accidentally, or inadvertently lost or discarded versus (2) situations where materials are ***intentionally or willfully*** discarded.  *See, e.g.*, *Estate of Romain v. City of Grosse Pointe Farms*, 2016 WL 7664226, *5 (E.D.Mich. 2016) (collecting cases).  This is because "[t]he more culpable the state of mind, the easier it is for the party seeking a spoliation [sanction] to demonstrate the third element—relevance." *Flagg v. City of Detroit*, 2011 WL 4634249, *17 (E.D.Mich. 2011), *aff'd* 715 F.3d 165 (6th Cir. 2013) (internal quotation omitted).

Crucially, courts agree that ***"[w]hen evidence is destroyed in bad faith (i.e. intentionally or willfully), that fact <u>alone</u> is sufficient to demonstrate relevance."*** *Id.* (emphasis added, internal quotation omitted); *see also Estate of Romain*, 2016 WL 7664226, at *5 (same); *Applebaum v. Target Corp.*, 2015 WL 13021688, *5 (E.D.Mich. 2015) ("Relevance is presumed when the evidence is destroyed in bad faith—i.e., intentionally or willfully."); *Siggers v. Campbell*, 2014 WL 4978648, *4

(E.D.Mich. 2014) ("[W]hen evidence is destroyed in bad faith (i.e., intentionally or willfully), that fact alone is sufficient to demonstrate relevance."); *Provience v. City of Detroit*, 2011 WL 7445088, *10 (E.D.Mich. 2011) ("When evidence is destroyed [or rendered unavailable] in bad faith (i.e., intentionally or willfully), that fact alone is sufficient to demonstrate relevance" (bracketed insert in original, internal quotation omitted)).[2]  Indeed, courts in this District have held that even where the destruction of evidence is merely "reckless," this also warrants a presumption that the third "relevance" element is met.  *See, e.g.*, *Flagg*, 2011 WL 4634249, at *18. And, when evidence is lost or destroyed due to intentional or willful conduct, and the presumption of relevance applies, ***the burden shifts to the alleged spoliator*** who "must present ***clear and convincing evidence*** demonstrating that the spoliated materials were of minimal or little import" to avoid sanctions.  *Estate of Romain*,

---

[2]*See also, e.g.*, *Grief v. Nassau County*, 2022 WL 307154, *3 (E.D.N.Y. 2022) ("When evidence is destroyed in bad faith (*i.e.*, intentionally or willfully), that fact alone is sufficient to demonstrate relevance." (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)); *In re Correra*, 589 B.R. 76, 127 (Bkrtcy.N.D.Tex. 2018) ("When evidence is either willfully or intentionally destroyed … that fact alone is sufficient to demonstrate the third prong of relevance."); *In re Abell*, 2016 WL 1556024, *23 (Bkrtcy.D.Md. 2016) ("when the party alleging spoliation shows that the other party acted willfully in failing to preserve evidence, the relevance of that evidence is presumed"); *Passlogix, Inc. v. 2FA Technology, LLC*, 708 F.Supp.2d 378, 411 (S.D.N.Y. 2010) ("To have a sufficiently culpable state of mind warranting a relevance inference, the spoliator must have acted in bad faith – that is, intentionally or willfully"); *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 179 (D.Md. 2008) ("A failure to preserve documents in bad faith, such as intentional or willful conduct, alone establishes that the destroyed documents were relevant.").

2016 WL 7664226, at *5 (emphasis added, collecting cases).

The logic behind this presumption is obvious, and compelling.  Without it, "spoliators would almost certainly benefit by having destroyed the documents, since the opposing party could probably muster little evidence concerning the value of papers it never saw." *Id.* (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 803 F.Supp.2d 469, 499 (E.D.Va. 2011)).  And, that is precisely what would result if the Magistrate Judge's Report and Recommendation is adopted.

The Magistrate acknowledged the file Nestor discarded may very well have contained "powerful" evidence pertaining to both FCA US's defenses and class certification (for example, evidence showing other instances where Nestor filled his vehicle with gasoline instead of diesel, vehicle abuse or neglect, *etc.*).  *See* Report & Recommendation, pp. 21-22 (PageID.3375-76).  But, the Magistrate rejected FCA US's arguments because it could not produce "direct evidence" proving what, exactly, was in Nestor's file.  As FCA US explained in its original briefing,[3] and here again in these objections, this approach erroneously flips the burden of proof from Nestor (to show by "clear and convincing evidence … that the spoliated materials were of minimal or little import"[4]) onto FCA US, even though it was entirely Nestor's own intentional conduct which created the spoliation issue.

---

[3]*See, e.g.*, ECF #65, pp. 11-12, 16 (PageID.2322-23, 2327).

[4]*Estate of Romain*, 2016 WL 7664226, at *5

A critical purpose underlying spoliation sanctions is not just to punish those who choose to destroy evidence, but also to *"level[] the evidentiary playing field"*[5] and *"plac[e] the risk of an erroneous judgment o the party that wrongfully created that risk."*[6]  Applying an incorrect legal standard, and placing the burden on FCA US to prove the contents of the file that Nestor destroyed, would completely undermine this purpose and the entire discovery process.  FCA US carried its burden on the third "relevance" prong of its spoliation charge by submitting Nestor's unequivocal admission the file was intentionally (not accidentally) destroyed, and Nestor obviously cannot show by "clear and convincing evidence" the file was irrelevant when he admitted there is (now) no way to determine everything it contained.

The Magistrate Judge's Report & Recommendation should be overruled, and this Court should hold FCA US has established spoliation with regard to the file of vehicle records and then proceed to determine what type of sanction (a permissive inference, a mandatory inference, dismissal) is appropriate here.

**OBJECTION NO. 2:**    **The Report & Recommendation Misconstrues The Evidence Showing Nestor Was Already Planning To File A Lawsuit When He Discarded The Receipt For The Fuel He Purchased Right Before His Vehicle's Fuel Pump Failed.**

---

[5]*Adkins*, 554 F.3d at 653 (emphasis added).

[6]*In re Global Technovations*, 431 B.R. 739, 778-79 (Bkrtcy.E.D.Mich. 2010) (emphasis added).

A second, separate incident of spoliation relates to the receipt for the fuel Nestor purchased immediately before the fuel pump in his vehicle failed – critical evidence in the parties' dispute over whether the fuel pump failure was the result of Nestor misfuelling with gasoline instead of diesel (as the dealership found) or some issue with the fuel pump itself. *See* ECF #65, pp. 7-8 (PageID.2318-19).

The Magistrate concluded FCA US had not established Nestor's duty to preserve the receipt (*i.e.*, that he was considering litigation at the time it was discarded). *See* Report & Recommendation, pp. 23-24 (PageID.3377-78). But, the sequence of events was not controversial, or disputed: (1) Nestor bought the fuel, kept the receipt, and immediately experienced a fuel pump failure after refueling on April 19, 2019; (2) Nestor had his vehicle taken to a dealership for a repair that same day; (3) once the dealership told Nestor how much a repair could cost, Nestor started considering a lawsuit; and (4) Nestor's vehicle was fully repaired ten days later, on April 29, 2019. *See* ECF #65-3, pp. 141-42, 174 (PageID.2369-70, 74); *see also id.* at PageID.2378-79 (repair order showing it was opened at 9:10 a.m. on April 19, 2019 and vehicle was ready on April 29, 2019).

As Nestor explained, he meticulously ("always") kept fuel receipts at least until he receives his monthly credit card statement and he and his wife reconcile each item in the statement with his receipts. *See* ECF #65-3, pp. 142 (PageID.2370). While the Magistrate faulted FCA US because it could now show "the precise date

on which Nestor gave his wife the receipt" or "the precise date on which Nestor's wife discarded the receipt," it is difficult to even imagine any scenario where Nestor somehow received a credit card statement, reconciled that statement with a month's worth of receipts, and then discarded the fuel receipt – all before he was quoted a price for a repair he sought *the same day* he purchased the fuel. And, even if Nestor was not told a price for several days after taking his vehicle to the dealership, that certainly occurred well before he picked up the repaired vehicle ten days later. In any scenario, by Nestor's own admission, he was anticipating litigation when he discarded the single most important piece of evidence to the fuel misuse issue.[7]

**OBJECTION NO. 3:** **The Report and Recommendation Sets A Problematic Precedent Regarding Nestor's Sale of His Vehicle During This Lawsuit, But Before Discovery Had Even Begun.**

Finally, FCA US also respectfully seeks review of the Magistrate's conclusion that no sanction was appropriate with regard to Nestor's sale of his vehicle shortly after he filed this case, but before discovery began or FCA US had a fair opportunity to gather information regarding the vehicle. *See* Report & Recommendation, pp. 19-20 (PageID.3373-74). The Magistrate's analysis essentially flips the burden onto FCA US to affirmatively prevent Nestor from engaging in spoliation (suggesting it

---

[7]While the Magistrate also questions "whether the receipt would have specified what type of fuel Nestor purchased" (Report & Recommendation, p. 24 fn.3), this again erroneously flips the burden of proof from Nestor, who admittedly discarded the fuel receipt, onto FCA US. *See* Objection No. 1, *supra*.

should have "request[ed] court intervention to stop the sale of the Jeep until such time as FCA was ready to inspect it" (*id.*)), rather than "placing the risk of an erroneous judgment" on the party engaged in the destruction of evidence.  And, indeed, it could set a dangerous precedent in vehicle defect cases if any plaintiff can simply announce they intend to sell their vehicle, or discard evidence, and then escape any consequences by simply saying "you should have stopped me."

## I.    CONCLUSION

For the reasons set forth herein and in its underlying briefs, FCA US LLC respectfully requests that this Court conduct a *de novo* review of the Magistrate's Report and Recommendation and impose sanctions on Plaintiff Nestor in the form of dismissal or an adverse inference instruction to be given at trial.

Respectfully submitted,

**THOMPSON COBURN LLP**

By:  */s/ Thomas L. Azar, Jr.*
      Kathy A. Wisniewski (MO/38716)
      Stephen A. D'Aunoy (MO/54961)
      Thomas L. Azar, Jr. (MO/56634)
      One US Bank Plaza
      St. Louis, Missouri  63101
      (314) 552-6000
      kwisniewski@thompsoncoburn.com
      sdaunoy@thompsoncoburn.com
      tazar@thompsoncoburn.com

**KING & ASSOCIATES, PLLC**
Stephen W. King (P56456)
355 S. Old Woodward, Suite 100
Birmingham, Michigan  48009
(248) 792-2398
sking@kingandmurray.com

*Counsel for Defendant, FCA US LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 5, 2022, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

I further certify that, pursuant to Eastern District of Michigan LR 72.1(d)(2), a copy of the foregoing was served via U.S. mail, postage prepaid, on the following:

The Honorable Kimberly G. Altman, Magistrate Judge
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd., Room 605
Detroit, MI 48226

*/s/ Thomas L. Azar, Jr.*