UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JEFF WITHROW and KEVIN NESTOR,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US LLC,<br><br>Defendant. | Case No. 19-13214<br>Honorable Laurie J. Michelson |

**ORDER ADOPTING REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE [65, 85]**

## I. BACKGROUND

This putative class action involves allegedly defective CP4 fuel-injection pumps in vehicles manufactured by FCA US LLC. This includes Jeff Withrow's diesel-powered Dodge Ram 1500 and Kevin Nestor's diesel-powered Jeep Grand Cherokee. Nestor and Withrow believe that their CP4 pumps failed due to the CP4's fragile design and incompatibility with U.S. diesel fuel. They have sued FCA, alleging fraud, breach of the implied warranty of merchantability, and violation of state consumer protection acts (among other claims). (ECF No. 26.)

This case is presently in discovery, and FCA seeks sanctions for Nestor's alleged destruction of evidence.

Before the lawsuit was filed, Nestor's wife discarded a receipt for the fuel purchase he made just three days before the CP4 pump in his Jeep Grand Cherokee

failed. This April 19, 2019 receipt may have revealed whether Nestor purchased diesel fuel or gasoline, the latter of which could have contributed to the vehicle damage he now attributes to the fuel pump. During the lawsuit, Nestor threw away much of the file in which he stored documents about the purchase and maintenance of the Jeep. Nestor also traded in the Jeep for a new one while this suit was pending— but only after advising FCA of his intent and giving FCA multiple opportunities to inspect the vehicle.

FCA believes that Nestor should be sanctioned for this "spoliation" of evidence. The relevant law is not disputed. "[A] federal court's inherent powers include broad discretion to craft proper sanctions for spoliated evidence." *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009) (en banc). A party seeking a spoliation sanction because evidence was destroyed must establish "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (internal quotation marks omitted). The court "may impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 513 (6th Cir. 2014) (internal quotation marks omitted). Whether to issue a sanction and its severity is determined on a case-by-case basis,

2

depending in part on the spoliating party's level of culpability. *Flagg v. City of Detroit*, 715 F.3d 165, 178 (6th Cir. 2013).

FCA filed a motion seeking either dismissal of Nestor's claims or a mandatory, adverse-evidence jury instruction for Nestor's disposal of the Jeep Grand Cherokee, file materials pertaining to the vehicle, and the fuel receipt. (ECF No. 65, PageID.2301–2302). FCA also asked the Court to find that Nestor is an inadequate representative of the class and to disqualify his counsel as class counsel. (*Id.* at PageID.2602).

The Court referred the motion to Magistrate Judge Kimberly G. Altman for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). (ECF No. 69.) Magistrate Judge Altman received extensive briefing and conducted oral argument. She issued a comprehensive report and recommends that FCA's motion be denied. (ECF No. 85.)

FCA objects. (ECF No. 86.) The focus of the objections is Nestor's discarding of the file materials. FCA believes the Magistrate Judge applied an "incorrect legal standard that improperly shifted the burden to FCA US to prove the contents of [the] file." (ECF No. 86, PageID.3387.) And when the correct standard is applied, says FCA, some sanction—either dismissal or an adverse inference jury instruction—is warranted. (*Id.*) FCA believes incorrect standards were also applied to Nestor's discarding of the fuel receipt and the trade-in of the Jeep.

The objections are fully briefed (ECF No. 89, 90), and no further argument is needed, *see* E.D. Mich. LR 7.1(f).

3

## II. STANDARD OF REVIEW

When a party objects to a magistrate judge's report and recommendation, a district judge reviews the issues raised by the objections de novo; there is no obligation to review un-objected to issues. *See* Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Garrison v. Equifax Info. Servs. LLC*, No. 10-13990, 2012 U.S. Dist. LEXIS 52942, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (cleaned up). Objections should be "specific in order to focus the busy district court's attention on only those issues that were dispositive and contentious." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

## III. THE OBJECTIONS

FCA has raised three specific objections. They revolve around the same three pieces of "discarded" evidence the Magistrate Judge considered: Nestor's file, the fuel receipt, and the vehicle. The Court will consider them in turn.

### A. The File

There is no dispute that Nestor kept a file at his home with records pertaining to the Jeep he is suing over. And there is no dispute that after Nestor filed this lawsuit, he threw away portions of that file. (ECF No. 65-3, PageID.2348–2349, 2351–2352.)

Why Nestor committed this unfortunate act is a primary focus of this dispute. The parties each rely on the portions of Nestor's deposition that are most favorable

to their position. Nestor recalled that the file included a brochure he received at the time of the Jeep's purchase, oil change records, and records related to the purchase of a base plate and tow bar. (ECF No. 65-3, PageID.2349–2350). He explained that he had sold the Jeep and wanted to "make room for more files." (*Id*. at PageID.2351, 2354.) He further testified that the discarded paperwork "didn't seem relevant to the issue at hand." (*Id*. at PageID.2348–2349.) FCA, however, focuses on the fact that "Nestor admit[ed] he did not even look through his 'file' of vehicle records before throwing it away, and d[id] not know all of the various records that were included within it." (ECF No. 90, PageID.3434.) Thus, says FCA, "there is now no way to determine all of the different records that were discarded." (ECF No. 86, PageID.3389). Nestor further acknowledged that without the file records, there is no way to determine where his vehicle had been serviced or what repairs or work had been done. (*Id*. at PageID.3388.)

Ultimately, in analyzing the three spoliation factors, Magistrate Judge Altman found that Nestor had a duty to preserve records concerning the Jeep and that throwing away portions of the file "was at the very least negligent and could potentially be viewed as intentional." (ECF No. 85, PageID.3374–3375.) Indeed, "[t]he 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently." *Beaven*, 622 F.3d at 554. With respect to the third spoliation factor, however, Judge Altman found that FCA "failed to establish by sufficient evidence that the discarded file contained evidence relevant to a potential defense." (ECF No.

5

85, PageID.3376.) The relevance factor, said Judge Altman, requires the moving party to "adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction." (*Id.* at PageID.3375.) In support, she cited *Automated Solutions Corp. v. Paragon Data Systems*, 756 F.3d 504 (6th Cir. 2014). That was a case where the alleged spoliator was found to have been negligent in its failure to preserve. *Id.* at 513.

According to FCA, a different standard applies in analyzing the relevance factor when information is destroyed intentionally or willfully. There, "[c]ourts must take care not to 'hold[ ] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence,' because doing so 'would subvert the . . . purposes of the adverse inference, and would allow parties who have . . . destroyed evidence to profit from that destruction.'" *Forest Labs, Inc. v. Caraco Pharm. Labs, Ltd.*, No. 06-CV-13143, 2009 WL 998402, at *7 (E.D. Mich. Apr. 14, 2009) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108–09 (2d Cir. 2002)). And FCA points out that numerous courts in this District (and elsewhere) have held "that when evidence is destroyed in bad faith (i.e., intentionally or willfully), that fact alone is sufficient to demonstrate relevance." *Siggers v. Campbell*, No. 07-12495, 2014 WL 4978648, at *4 (Mar. 25, 2014), *aff'd*, 2014 WL 4978655 (E.D. Mich. Oct. 6, 2014); *see also Applebaum v. Target Corp.*, No. 11-CV-15035, 2015 WL 13021688, at *5 (E.D. Mich. Mar. 9, 2015) ("Relevance is presumed when the evidence is destroyed in bad faith—i.e., intentionally or willfully"), *aff'd*,

6

831 F.3d 740 (6th Cir. 2016). And another of those courts further stated, "[i]n order to rebut the presumption of relevance, the alleged spoliator must present clear and convincing evidence demonstrating that the spoliated materials were of minimal or little import." *Estate of Romain v. City of Grosse Pointe Farms*, No. 14-12289, 2016 U.S. Dist. LEXIS 181170, at *15–16 (E.D. Mich. Nov. 22, 2016).

From this, FCA contends that Magistrate Judge Altman applied an incorrect standard by not presuming relevance of the discarded file materials and placing the burden on Nestor to rebut the presumption. This, says FCA, would have resulted in the imposition of a spoliation sanction. The Court disagrees.

First, Judge Altman did not find that Nestor acted with the requisite bad faith. She merely found that Nestor's conduct "could potentially be viewed as intentional." (ECF No. 85, PageID.3375.) And even if she had, or should have found bad faith, FCA does not cite any binding precedent that says the district court is required to apply a presumption of relevance. Indeed, far from supporting a presumption of relevance as FCA suggests, the Sixth Circuit in *Automated Solutions Corp*, said "we have declined to impose bright-line rules, leaving it instead to a case-by-case determination whether sanctions are necessary." 756 F.3d at 516. And even in cases of knowing failures to preserve, the Sixth Circuit has expressed that the relevance prong is satisfied when the *party asserting spoliation* "make[s] 'some showing indicating that the destroyed evidence would have been relevant to the contested issue.'" *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts*, LLC, 774 F.3d 1065, 1070 (6th Cir. 2014) (quoting *Beaven*, 622 F.3d at 554) (affirming district court's denial of spoliation sanction because

7

defendant had not made a sufficient showing of relevance of plaintiff's destroyed bidding software and host server). Other district courts in this Circuit have also not presumed relevance where evidence was knowingly destroyed and instead required the party seeking the discovery sanction to make a sufficient showing of relevance. *See, e.g., Brewer v. All. Coal, LLC*, No. 20-CV-00041, 2022 U.S. Dist. LEXIS 182266, at *31 (E.D. Ky. Oct. 5, 2022) (declining to impose spoliation sanction on defendants who admitted to purging data requested by plaintiff during the litigation where plaintiff failed to adequately establish relevance of the data).

And even if a presumption of relevance should have been applied here, the law is clear that "[i]t is within a district court's inherent power to exercise broad discretion in imposing sanctions based on spoliated evidence." *Adkins v. Wolever* (*Adkins I*), 554 F.3d 650, 653 (6th Cir. 2009) (en banc). "[A] proper spoliation sanction should serve both fairness and punitive functions." *Id*. at 652. And here, Magistrate Judge Altman "properly considered the facts and evidentiary posture of the case in addition to the degree of fault." *Flagg v. City of Detroit*, 715 F.3d 165, 178 (6th Cir. 2013).

Those facts included that Nestor had some recollection of the nature of the records he discarded and did not believe they were relevant to the case. In other words, he did not "destroy[] evidence while knowing of its value to the litigation at the time of the destruction." *In re Black Diamond Mining Co., LLC v. Genser*, 514 B.R. 230, 240 (E.D. Ky. 2014). Nestor also forthrightly provided discovery regarding an instance in which he put gasoline in his Jeep instead of diesel fuel and the resulting repairs that were needed. The Magistrate Judge reasonably found this

8

bolstered Nestor's credibility when he likewise said that he did not destroy other records revealing instances of improper fueling or fuel contamination. Also, FCA has all of the records pertaining to the repair when Nestor's fuel pump failed. So Magistrate Judge Altman did not think it fair to impose a spoliation sanction on Nestor for discarding portions of his file.

Even on de novo review, this Court, while in no way condoning Nestor's conduct, cannot find this to be error. The record does not suggest that FCA has been intentionally deprived of relevant evidence to disprove Nestor's claims or has been significantly foreclosed from further developing its defenses. Additionally, FCA will have the opportunity at trial to inform the jury that Nestor discarded documents from the file and to cross-examine him on his recollection and motives. In other words, FCA will be free to try to create an inference similar to the one it seeks as sanction.

The first objection is overruled.

### B. The Fuel Receipt

Nestor's Jeep Grand Cherokee "experienced a catastrophic failure of its CP4 fuel pump" on April 22, 2019. (ECF No. 26, PageID.801). Nestor took the car to a dealership in California and was advised that the repair would be nearly $7,000. Nestor testified that is "[t]he first time it crossed [his] mind" to bring a lawsuit. (ECF No, 65-3, PageID.2374.) This was "sometime between [April 19 and April 29, 2019]." (*Id.*)

A few days before the fuel pump failed, on April 19, 2019, Nestor refueled the Jeep. (ECF No. 65-3, PageID.2369.) He testified that he filled it with diesel fuel. (*Id.*)

9

He paid with a credit card and gave his wife the receipt. (*Id.* at PageID.2369–2370.) After she had reconciled the receipt with the credit card bill, she discarded the receipt. (*Id.*) The precise date this occurred is unknown.

FCA says this too is an "incident of spoliation." (ECF No. 86, PageID.3395.) This receipt, says FCA, is "critical evidence in the parties' dispute over whether the fuel pump failure was the result of Nestor misfuelling with gasoline instead of diesel (as the dealership found) or some issue with the fuel pump itself." (*Id.*)

But Magistrate Judge Altman found that FCA did not establish Nestor's duty to preserve the receipt. (ECF No. 85, PageID.3378.) On the record before her, it was unknown precisely when Nestor's wife discarded the receipt and thus, unclear whether the receipt was discarded before or after Nestor contemplated litigation. (*Id.*)

FCA objects to this ruling. (ECF No. 86, PageID.3395.) FCA argues that "it is difficult to even imagine any scenario where Nestor somehow received a credit card statement, reconciled that statement with a month's worth of receipts, and then discarded the fuel receipt—all before he was quoted a price for a repair he sought the same day he purchased the fuel." (ECF No. 86, PageID.3396.)

The Court does not need to get bogged down on the issue of the duty to preserve. Magistrate Judge Altman also questioned the relevance of the receipt in the absence of any showing that it would reveal the type of fuel Nestor purchased. (ECF No. 85, PageID.3378.) FCA's only response is that "this again erroneously flips the burden of proof from Nestor, who admittedly discarded the fuel receipt, onto FCA." (ECF No. 86, PageID.3396.) But there has been no showing that his failure to

10

preserve the receipt was intentional or willful, as opposed to merely negligent. Indeed, it was Nestor's wife—not Nestor—who discarded the receipt. So even assuming a presumption of relevance where evidence is destroyed in bad faith, it would not apply to the fuel receipt.

And it may be that FCA can still obtain Nestor's full credit card statement for the month of April 2019. If Nestor typically paid for fuel with his credit card and typically purchased a similar amount of fuel, the amount charged on April 19, 2019, should provide at least some insight into the type of fuel purchased, given the noticeable price difference between regular fuel and diesel fuel. In other words, Nestor's Jeep required diesel fuel. That is what he usually purchased. If the April 19, 2019, charge is consistent with his other purchases and not significantly cheaper, it could be a fair inference that he purchased diesel fuel.

FCA also has the dealership records for the repair of Nestor's CP4 fuel pump failure from which it can present its theory that Nestor's vehicle contained contaminated fuel.

Thus, there was no error in Magistrate Judge Altman's recommendation that the discarding of the April 19, 2019 fuel receipt did not warrant the severe spoliation sanctions being sought by FCA.

### C. The 2014 Jeep Grand Cherokee

That leaves the vehicle. Well after the litigation began, Nestor's counsel advised FCA's counsel of Nestor's desire to trade in his 2014 Jeep for a new one. They offered FCA repeated opportunities to inspect the vehicle. FCA declined. After

11

reviewing the competing case law provided by the parties, Magistrate Judge Altman found that Nestor's sale of the vehicle before discovery but after providing FCA the opportunity to arrange an inspection, did not warrant any spoliation sanctions. (ECF No. 85, PageID.3365–3374.)

FCA objects to this finding as well. FCA again believes that the Magistrate Judge improperly flipped the burden of risk by suggesting that FCA should have been the one to seek a court order to stop the sale of the vehicle. (ECF No. 86, PageID.3397.) This, says FCA, "could set a dangerous precedent in vehicle defect cases if any plaintiff can simply announce they intend to sell their vehicle, or discard evidence, and then escape any consequences by simply saying 'you should have stopped me.'" (*Id.*)

But that is not what occurred here. Nestor did not simply sell his vehicle after telling FCA he was going to do so. The parties' lawyers engaged in several email communications about FCA inspecting the vehicle prior to any sale—presumably to avoid any spoliation issue. The Court does not view it as a dangerous precedent for a party who repeatedly declines opportunities to inspect a vehicle to be responsible for seeking a protective order to prevent the sale or to extend the date of the inspection.

Thus, this objection does not impact Magistrate Judge Altman's recommendation.

12

**IV.**

The Court understands FCA's frustrations with Nestor's conduct but finds no error in the Magistrate Judge's ruling that his conduct does not warrant spoliation sanctions.

Thus, the Court OVERRULES FCA's objections to the report and recommendation (ECF No. 86) and ADOPTS it in full (ECF No. 85).

SO ORDERED.

Dated: January 19, 2023

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
